No. 24-50826

# In the United States Court of Appeals for the Fifth Circuit

La Unión del Pueblo Entero et al.,

*Plaintiffs-Appellees,*

*v.*

Gregory W. Abbott et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## STATE DEFENDANTS-APPELLANTS' AND INTERVENOR-DEFENDANTS-APPELLANTS' EMERGENCY MOTION TO STAY DISTRICT COURT ORDER AND PERMANENT INJUNCTION PENDING APPEAL AND FOR A TEMPORARY ADMINISTRATIVE STAY

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

Kateland R. Jackson
Assistant Solicitor General

Counsel for State Defendants-
Appellants

John M. Gore
E. Stewart Crosland
Louis J. Capozzi, III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

Counsel for Intervenor-Defendants-
Appellants

# Certificate of Interested Persons

No. 24-50826

La Unión del Pueblo Entero et al.,
*Plaintiffs-Appellees,*

*v.*

Gregory W. Abbott et al.,
*Defendants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, State Appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ Aaron L. Nielson
Aaron L. Nielson
*Counsel of Record for*
*State Defendants-Appellants*

i

## Introduction and Nature of Emergency

Just three days ago, this Court reiterated in a published decision that lower courts should not "unduly delay ordering changes to election law until the eve of an election." *La Union Del Pueblo Entero v. Abbott* (*LUPE*), No. 24-50783, 2024 WL 4487493, at *1 (5th Cir. Oct. 15, 2024) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 6 (2006) (per curiam)). Yet, as it did only three weeks ago with respect to one of the *same provisions* of S.B.1, the district court again held "unconstitutional a law that has been on the books for over three years, but that the court did not see fit to enjoin until now." *Id.* Last time, the district court enjoined S.B.1's vote-harvesting ban just over three weeks before the start of early voting; this time, in addition to that same vote-harvesting ban, the court also enjoins S.B.1's voter-assistance provisions *in the middle of mail* voting and only days before early voting starts on October 21, 2024. And as before, this injunction creates different voting rules for voters participating in the same election.

Absent an emergency stay by this Court, this latest injunction will also irreparably injure Texas's sovereignty and confuse voters, potential voter assistors, and election officials. Therefore, Appellants respectfully urge this Court to again promptly enter a temporary administrative stay and a stay pending appeal, as it did earlier this week, *see id.*, and last December, *see* Unpublished Order, *United States v. Paxton*, No. 23-50885 (5th Cir. Dec. 6, 2023), ECF 31 (granting administrative stay); Order Granting Stay Pending Appeal, *Paxton*, No. 23-50885 (Dec. 15, 2023), ECF 80 (granting stay pending appeal).

# Background

As this Court is now well aware, Texas enacted S.B.1 in 2021. Relevant to this appeal, S.B.1 (1) requires voter assistors to disclose certain information for verification; (2) amends the voter-assistor oath; (3) amends the ban on compensated voter assistance; and (4) bans paid vote harvesting.

Appellees, a coalition of organizations and individuals, facially challenged dozens of S.B.1's provisions as unconstitutional and, at issue here, preempted by §208 of the Voting Rights Act (VRA). On September 28, 2024, seven months after concluding its bench trial, the district court enjoined State-Appellants and the county officials from enforcing S.B.1's vote-harvesting ban. *See LUPE*, 2024 WL 4487493, at *1. Then on October 11, 2024, while State-Appellants' motion for a stay was pending before this Court, the district court issued an even broader decision addressing the following five provisions:

1. Section 6.03 requires assistors to "complete a form stating: (1) the name and address of the person assisting the voter; (2) the relationship to the voter of the person assisting the voter; and (3) whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee." Tex. Elec. Code §64.0322(a).

2. Section 6.04 requires assistors to state that (1) the voter represented that he or she was eligible for assistance and (2) they did not "pressure or coerce the voter into choosing [them] to provide assistance." *Id.* §64.034. Section 6.04 also informs assistors that the oath is under penalty of perjury—something which has been true since 1974. *See* Tex. Penal Code §37.02.

3. Section 6.05 requires assistors of individuals voting by mail to disclose their relationship with the voter and whether they received compensation from a political entity. Tex. Elec. Code §86.010(e).

4. Section 6.06 criminalizes compensating voter assistors; offering to compensate voter assistors; and soliciting, receiving, and accepting compensation for assisting voters. *Id.* §86.0105. The provision does not apply

if the assistor is an "attendant" or "caregiver" previously known to the voter. *Id.*

5. Section 7.04 bars vote harvesting, defined as "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id.* §276.015. This provision was at issue in *LUPE*. *See* 2024 WL 4487493, at *1.

The district court concluded that §208 preempts each of these provisions, but—citing *Purcell*—stayed its injunction against the Secretary and the county officials respecting Sections 6.03, 6.04, 6.05, and 6.07. *See* Findings of Fact & Conclusions of Law (App.A.106-11). The court, however, immediately enjoined *enforcement* proceedings—including investigations and civil suits to compel election officials' compliance—for all these provisions except Sections 6.06 and 7.04. *Id.* This injunction came 20 days *after* counties sent out mail-in ballots, *see* Tex. Elec. Code §86.004(b), and just days before early voting starts on October 21, 2024. On October 15, 2024, Appellants asked the district court to stay its injunction, citing *LUPE*.[1]

## Statement of Jurisdiction

The Court has jurisdiction under 28 U.S.C. §1292.

## Argument

The *Purcell* principle controls here because the district court enjoined enforcement of state provisions that have "been on the books for over three years, but that the court did not see fit to enjoin until" the middle of an ongoing election.

---

[1] Appellants' motion for stay requested a decision by 5:00 p.m. on October 17, 2024. At the time of this motion's filing, the district court has neither granted nor denied a stay. Defendants' Motion for Stay (App.B.19-20).

*LUPE*, 2024 WL 4487493, at *1. Under *Purcell*, "federal courts ordinarily should not enjoin a state's election laws in the period close to an election," *id.* at *2 (quoting *Merrill v. Milligan*, 142 S.Ct. 879, 881 (Kavanaugh, J., concurring)), and must focus on "the potential for an injunction issued close to an election 'to confuse voters, unduly burden election administrators, or otherwise sow chaos or distrust in the electoral process,'" *id.* (quoting *Robinson v. Ardoin*, 37 F.4th 208, 228 (5th Cir. 2022) (per curiam)). Here, just as in *LUPE*, this analysis requires staying the district court's injunction.

Regardless, even apart from *Purcell*, each factor favors a stay: (1) Appellants are likely to succeed on the merits; (2) they will suffer irreparable harm absent a stay; (3) Appellees will not be substantially harmed; and (4) the public interest favors a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). Given this Court's decision in *LUPE*, *see* 2024 WL 4487493, Appellants begin with the equities.

## I.    The Equities Overwhelmingly Favor a Stay.

Here, especially after *LUPE*, the equities favor staying the district court's injunction that disrupts rules governing an election that has already begun. Worse still, the injunction does so for some counties but not for others, creating confusion.

## A. The State and the public interest will suffer irreparable injury without a stay.

**1.**    Under *Purcell*, federal courts "should not alter state election laws in the period close to an election." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S.Ct. 28, 30 (2020) (Kavanaugh, J., concurring). Elections are complex affairs, and unplanned changes to the rules—even minor ones—risk chaos that will neither

ensure election integrity nor engender public confidence. *See, e.g.*, *Purcell*, 549 U.S. at 5-6; *see also Robinson*, 37 F.4th at 228. Accordingly, even if "a district court has issued a 'thorough order' explaining why an election law should be enjoined," this Court "should carefully guard against judicially altering the status quo on the eve of an election." *LUPE*, 2024 WL 4487493, at *3 (Ramirez, J., concurring in the judgment) (quoting *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014)). And all of this is in addition to the injury the State *always* suffers when its law is enjoined. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

Here, Texas is "'close to an election' under *Purcell*" because counties have "already begun issuing mail-in ballots for the 2024 general election cycle," *LUPE*, 2024 WL 4487493, at *2, and because early voting begins in less than a week, *see* Tex. Elec. Code §85.001(a), (c). Yet the district court issued an injunction—with respect to some but not all counties—addressing how people may assist voters in casting ballots that have already been mailed-out. Leaving aside the *months* of training that counties must undertake to ensure that election judges and clerks know the rules they are to apply, the fact that they have *already* started mailing out absentee ballots cannot be brushed aside. *See LUPE*, 2024 WL 4487493, at *2. And the risk of confusion and disruption continues to increase as the "election draws closer." *Purcell*, 549 U.S. at 5.

**2.**    The district court acknowledged the *Purcell* principle, but—as it did three weeks ago—dismissed that principle's relevance. App.A.99-106. Recycling some the same analysis from its last injunction, the district court again asserted that *Purcell* only applies to "mechanics and procedures" of voting. *Id*. at 100. But this Court now

has squarely rejected that assertion in a published opinion, explaining that the district court "cited nothing to support this understanding of *Purcell*, and established law is to the contrary." *LUPE*, 2024 WL 4487493, at *2 (citing *Merrill*, 142 S.Ct. at 879-80 (Kavanaugh, J., concurring)).

The Court further held that "S.B. 1 does regulate the mechanics of voting," *id.*, because Section 7.04 protects mail-in voting's privacy. That same analysis applies here, especially because the district court once again enjoined Section 7.04. Indeed, all the provisions at issue here protect the integrity of ballots cast by voters who need assistance. The only time such assistance is necessary is during voting. Furthermore, the Court also noted that because neither the Attorney General nor the Secretary enforces S.B.1, "the practical effect" of the district court's previous injunction was "to prevent enforcement of S.B.1, but only in certain counties in Texas." *Id.* at *3 (citations omitted). Precisely the same analysis applies here. It cannot be that voters in the same election will be subject to different rules.

The risk of confusion, moreover, is even more significant now than it was last time. The district court again issued an injunction that only applies to certain counties, but this injunction covers five provisions instead of just one. The court also stayed parts of the multifarious injunction but not others. Whether to stay an injunction of election laws under *Purcell* requires weighing "considerations specific to election cases." *Purcell*, 549 U.S. at 4. "Chief amongst those considerations is the potential for an injunction issued close to an election 'to confuse voters, unduly burden election administrators, or otherwise sow chaos or distrust in the electoral process.'" *LUPE*, 2024 WL 4487493, at *2 (quoting *Robinson*, 37 F.4th at 228). An

eve-of-the-election injunction against multiple election provisions that can only apply during voting and that may or may not apply to a voter depending on time or place is precisely the "chaos" *Purcell* forbids. And to top it all off, the district court again enjoined enforcement of Section 7.04 despite this Court's opinion addressing that very provision and explaining that "the Supreme Court has upheld voter privacy and security protections at the voting booth on the ground that States have a compelling interest 'in protecting voters from ... undue influence.'" *Id.* at *3 (quoting *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality opinion)). Unless this Court definitively holds—again—that S.B.1 applies to this election, voters will suffer (understandable) confusion from conflicting judicial decisions.

**3.** The district court's attempt to carve out from *Purcell* enforcement of the challenged provisions—by investigations or even mere referrals—fails. Neither the Supreme Court nor this Court has adopted such a carve-out. In fact, just a few months ago, the Supreme Court stayed an injunction against an Arizona election rule backed by criminal penalties. *See Republican Nat'l Comm. v. Mi Familia Vota*, No. 24A164, 2024 WL 3893996, at *1 (U.S. Aug. 22, 2024) (permitting enforcement of Ariz. Rev. Stat. Ann. §16-121.01(C)). Furthermore, enjoining enforcement of a challenged rule is functionally equivalent to enjoining the rule's application. An injunction against enforcement of a challenged rule thus necessarily violates *Purcell* because it "den[ies] the public interest in enforcement of [the State's] laws." *Perry*, 769 F.3d at 895; *see also Veasey v. Perry*, 135 S.Ct. 9, 10 (2014) (Ginsburg, J., dissenting) (dissenting from majority's upholding of stay "of the District Court's final judgment enjoining the *enforcement* of Senate Bill 14" (emphasis added)).

Finally, enjoining investigations and referrals as "enforcement" directly contravenes this Court's holding in *Ostrewich v. Tatum*. 72 F.4th 94, 100-01 (5th Cir. 2023) (holding that neither the Secretary nor the Attorney General "enforce" criminal electioneering statutes, notwithstanding the former's training and advisory duties and the latter's investigatory powers triggered by Secretary-of-State referral).

Here, the district court's injunction will leave individuals free to violate key election laws with impunity, nullifying the protections the Texas Legislature judged essential. The court recognized this but answered it by doubling down on the merits. *See* App.A.106. *Purcell* prohibits that move because it applies regardless of a court's view of the merits. *See Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (approving stay "where an impending election [was] imminent" even though Supreme Court agreed that the challenged rule was unlawful); *Purcell*, 549 U.S. at 4-5; *see also Perry*, 769 F.3d at 895. And for all the reasons explained in Part II, *infra*, the district court's analysis is wrong on the merits, and, at a minimum, ignores that this is not a case where the merits are "entirely clearcut in favor of the plaintiff[s]." *See LUPE*, 2024 WL 4487493, at *3 (citation omitted). Thus, under *Purcell* alone, and without regard to any of the other stay factors, this Court can and should stay the district court's injunction. *See id.* at *2 (explaining that the traditional "test" for stays pending appeal "does not apply ... when a lower court has issued an injunction of a state's election law in the period close to an election" (quoting *Merrill*, 142 S.Ct. at 880 (Kavanaugh, J., concurring))).

**4.** Even if other factors were relevant, the threat of irreparable harm to the State's sovereign interests—plus the importance of avoiding confusion—also mean

that the public interest favors a stay. "Because the State is the appealing party, its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam).

## B. Appellees will suffer no lawful injury from a stay.

The harm to the State and the public outweighs any supposed harm to Appellees. An injunction requires a showing of *likely*, not merely possible, "irreparable harm." *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Crown Castle Fiber, LLC v. City of Pasadena*, 76 F.4th 425, 441 (5th Cir. 2023) (applying *Winter* standard in context of permanent injunction). And the threatened harm must be "imminent." *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). In considering whether a plaintiff will be irreparably harmed, "the maintenance of the status quo is an important consideration." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021). Here, a stay would maintain the status quo that has existed since 2021 when S.B.1 became law. S.B.1's rules have governed many elections—including at least six statewide primary, general, and constitutional-amendment elections. There is no reason to change the status quo while litigation is ongoing and certainly no reason to do so in the middle of a presidential election.

In deciding to the contrary, the district court reasoned that S.B.1's voter-assistance provisions injured Appellees "by interfering with voters' rights and ability to vote with help from their chosen assistors." App.A.99. The court's reasoning—which is tied to its merits analysis—is both legally and factually wrong for many reasons. And it is precisely the sort of open-ended, speculative analysis that this

Court considered earlier this week with respect to the district court's prior decision and that this Court concluded does not justify an injunction on the eve of an election.

## II.    The State Will Likely Succeed on the Merits.

Because the "balance of the equities weighs *heavily* in favor of granting the stay," even a "*serious legal question*" is sufficient. *Tex. Dem. Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Here, however, the standard is of no moment. Appellees lack standing to challenge most of the provisions at issue, and §208 does not preempt any of them.

## A. Appellees lack standing.

1.    At the outset, Appellees' claims run headlong into Article III. They have standing only if they have suffered an injury in fact that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668-69 (2021). To prove traceability, they must show that the Attorney General's and Secretary's "actual or threatened *enforcement*" of the voter-assistance provisions caused Appellees' alleged injury. *Id.* at 669-70; *accord City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (recognizing "significant overlap" between *Ex parte Young* and Article III).

Here, Appellees cannot make that showing because "[n]either the Secretary of State nor the Attorney General enforces S.B. 1." *See LUPE*, 2024 WL 4487493, at *3 (citations omitted). Therefore, "the practical effect of the injunction is to prevent enforcement of S.B.1, but only in certain counties in Texas," *id.*—thus confirming both that *Purcell* applies and that Appellees' claims will fail on the merits. Appellees

continue to wrongly sue the Attorney General and the Secretary, and the district court's failure—again—to address this Court's precedent speaks volumes.

**2.**   Next, all Appellees lack standing to challenge Sections 6.03, 6.05, and 6.07. These provisions merely require would-be assistors to provide a few pieces of information on a form. The obligation to provide such information is not a cognizable injury because it has no "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (cleaned up). Although constitutional violations can satisfy traceability, *see id.* at 424-25, an assistor's obligation to provide information on a form does not violate any right to vote. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (explaining that "usual burdens of voting" do not impose constitutional injury).

Furthermore, the district court's holding that Appellees suffered organizational injuries because certain individuals were unwilling to assist voters is also incorrect. The district court claimed that the disclosure requirements caused would-be assistors to fear prosecutions and be less willing to assist, *see* App.A.71-72, but this is baseless. Not a single witness said the disclosures alone would prevent them from assisting voters.  Nor could they. Any such claim depends on the premise that assistors will not fill out forms because they fear prosecution and is thus incredible and far too speculative to confer standing. *See, e.g.*, *Tex. State LULAC v. Elfant*, 52 F.4th 248, 256-57 (5th Cir. 2022). After all, Appellees cited *zero* examples of relevant investigations or prosecutions since S.B.1 was passed, and their speculation about future prosecutions is impermissibly dependent "on the actions of third-

part[ies]." *See Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). The district court also suggested Appellees have suffered an organizational injury because form requirements delay assisting voters. App.A.71-72. Yet no witness quantified those alleged delays. Moreover, common sense suggests any delays would be *de minimis*. It does not take long to write one's name and relationship to the voter on a paper and check a box about whether one received compensation. That is not a cognizable injury. *See TransUnion*, 594 U.S. at 417.

Similar analysis applies to Section 6.04, as fear of prosecution is far too "speculative." *Elfant*, 52 F.4th at 256-57. No plaintiff has alleged an intent to engage in conduct "arguably proscribed" by this provision. *Id.* at 256. And any fear of perjury charges is not *caused* by Section 6.04 because the voter-assistance oath has been subject to penalty of perjury since 1974. *See* Tex. Penal Code 37.02. Appellees thus have not shown a likelihood of success, and certainly not that "the underlying merits are entirely clearcut in [their] favor." *LUPE*, 2024 WL 4487493, at *3.

## B. Section 208 does not preempt S.B.1's voter-assistance provisions.

**1.**    Under §208 of the VRA, "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by *a* person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. §10508 (emphasis added). The district court construed this provision to permit a voter to choose "*any*" person to assist him. App.A.78, 91. But that construction would mean that §208 effectively preempts all voter-assistance regulations, no matter how reasonable. That is error for at least three reasons.

*First*, §208's plain text gives a voter the right to assistance from "*a* person of the voter's choice," 52 U.S.C. §10508 (emphasis added)—not *the* or *any* person of the voter's choice. If §208 rendered Texas categorically powerless to regulate the class of persons who may assist voters, or even the basic requirements for that assistance, then Texas could never prohibit any individual from assisting a voter—even if the chosen assistor himself is ineligible to vote and has a history of intimidating voters. Texas thus could not ban even convicted felons from assisting voters because a voter who needs assistance may well choose such a person. That is not a reasonable interpretation of the statute—and, regardless, that argument is certainly not a "clearcut" winner for Appellees.

Instead, if that is what Congress wanted, it would have said "*any* person" of the voter's choice, but it did not. *Cf. VanDerStok v. Garland,* 86 F.4th 179, 183-84 & n.5 (5th Cir. 2023). Because §208 "does not say that a voter is entitled to assistance from *the* person of his or her choice or *any* person of his or her choice," the statute thus allows for reasonable "state law limitations on the identity of persons who may assist voters." *Priorities USA v. Nessel*, 487 F.Supp.3d 599, 619 (E.D. Mich. 2020), *rev'd and remanded on other grounds*, 860 F.App'x 419 (6th Cir. 2021); *Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008) (holding that §208 permits "reasonable and non-discriminatory" regulations).

*Second*, to the extent §208 is unclear or ambiguous, courts should interpret it *not* to preempt state law. After all, courts "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*,

331 U.S. 218, 230 (1947); *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023). This presumption "applies with particular force when Congress legislates in a field traditionally occupied by state law." *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 236 (5th Cir. 2012). That is the case here, where election regulation is a heartland duty of the state legislature. *See Storer v. Brown*, 415 U.S. 724, 730 (1974). Thus, the Court must respect the "State's authority to set its electoral rules and the considerable deference to be given to election procedures so long as they do not constitute invidious discrimination." *Vote.Org v. Callanen*, 89 F.4th 459, 481 (5th Cir. 2023).

*Third*, courts should not create conflict where it does not exist. S.B.1's requirements do not limit the scope of assistance voters may receive; once the assistor satisfies the procedural prerequisites of Sections 6.03 and 6.05, he may assist the voter. And Section 6.07 merely requires the carrier envelope to have space for an assistor to provide information. Section 6.04's oath requirement, moreover, does not prevent anyone from assisting—which no doubt is why no one has challenged pre-existing state laws that already prohibited assisting ineligible voters and subjected the oath to penalty of perjury. Section 6.04, moreover, merely prohibits the assistor from accepting compensation unless he knows the voter. And for its part, Section 7.04 does not apply to mere voter assistance at all.

Thus, under S.B.1, a voter who requires assistance "may be given assistance by a person of the voter's choice." *See* 52 U.S.C. §10508. That person must simply disclose his relationship to the voter and whether he received compensation for his assistance. And the idea that S.B.1 may fail "obstacle" preemption—a very "high

threshold," *see Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023)—is even less likely. Indeed, rather than impede federal policy, those requirements help enforce it by having assistors articulate their relationship to the voter, which lets county election officials flag election-law violations.

    **2.** The district court did not apply these principles. Instead, it reasoned that, because §208 says "a person of the voter's choice" cannot include "the voter's employer or agent of that employer or officer or agent of the voter's union," 52 U.S.C. §10508, those are the only limitations. App.A.79-80. But that language *limits* the §208 right. It is not a floor prohibiting any State regulation at all—let alone in the required "clear and manifest" way. *See Rice*, 331 U.S. at 230.

    The district court also reasoned that *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), already decided that §208 preempts regulations on voter assistance. App.A.78, 81-83. But that case "at bottom" concerned "how broadly to read the term 'to vote' in Section 208," *OCA-Greater Houston*, 867 F.3d at 614, not whether "a person of the voter's choice" means "*any* person of the voter's choice," even someone who cannot satisfy general requirements to prevent intimidation. The case thus does not resolve—let alone definitively resolve—the question here via stray language picked up from an "example[]" offered by a party attempting to explain its argument. *See id.* at 614-15 (agreeing that "to vote" means more than "the literal act of marking the ballot," and observing with OCA's examples such as "navigating the polling location and communicating with election officials" that "[u]nder OCA's reading, Section 208 guarantees to voters the right to choose any person they want"). Such dictum cannot justify ignoring *Purcell*.

The district court also warned that Appellants' proposed test would "eviscerate Section 208." App.A.83. Not so. In fact, Appellants *agree* with cases adopting and enforcing reasonable constructions of §208. *See, e.g.*, *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F.Supp.3d 158, 233-36 (M.D.N.C. 2020). Nothing in S.B.1 imposes weighty burdens on voters; instead, they have broad flexibility to pick assistors, so long those assistors meet minimal requirements to prevent coercion.

To support its analysis, the district court relied on snippets of legislative history. App.A.77-78. To start, legislative history is inappropriate here, especially because the statute is plain and—to the extent it is not—the presumption against preemption applies. *Cf. Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014). In any event, legislative history *disproves* the district court's conclusion. Even in the language the district court identified, Congress was clear that States must allow voters assistance only "from *a* person of their own choosing." S. Rep. No. 97-417, at 2 (1982) (emphasis added). Moreover, the Senate Judiciary Committee emphasized that §208 preempts state election laws "only to the extent that they *unduly* burden the right recognized in [§208], with that determination being a practical one dependent upon the facts." *Id.* at 63 (emphasis added). In fact, it acknowledged that voters who need assistance "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Id.* at 62. Thus, the committee recognized that §208 does not interfere with "the legitimate right of any State to establish necessary election procedures" that are "designed to protect the rights of voters." *Id.* at 63.

**3.** Based on its erroneous preemption analysis, the district court misapplied §208 to virtually every voter-assistance provision at issue. To start, it incorrectly

ruled that §208 preempts Sections 6.03, 6.05, and 6.07 because they have "deterred voters from requesting assistance and narrowed the universe of willing assistors." App.A.91. But S.B.1's disclosure requirements merely require a person who chooses to assist a voter to disclose his relationship to the voter and whether he received compensation for his assistance. Such a minor requirement cannot reasonably trigger preemption.

For the same reason, §208 does not preempt Section 6.04's amendments to the existing oath requirement. A person who does not desire to take the oath may simply decline to assist. The district court relied upon speculative concerns that the oath might have a "chilling effect" on assistors. App.A.90. But in the almost two years since S.B.1 took effect, Appellees could not identify a single person who was investigated or prosecuted under this requirement—let alone wrongly prosecuted. *See, e.g.*, Transcript of Bench Trial (App.D.2467, 2496-97).

The district court again misapplied §208 in concluding that it preempts S.B.1's amendments to the ban on compensated voter assistance by incorrectly reasoning that §208 entitles voters to assistance from strangers. App.A.95-97. S.B.1, however, merely prevents complete strangers from seeking out voters to assit while being paid specifically to do so. *See* Transcript of Bench Trial (App.C.1902). Nor does S.B.1 prevent individuals from being reimbursed for their expenses, *id.* at 1903-04, or individuals with paid jobs, such as canvassing, from assisting voters in due course, *see, e.g.*, Transcript of Bench Trial (App.E.3994).

Finally, the district court's conclusion with respect to Section 7.04 is also wrong. The vote-harvesting ban does not prohibit anyone from assisting voters; it merely

prevents would-be assistors paid by political entities from simultaneously urging support for candidates and measures while assisting voters. Here again, §208 does not prohibit Texas from enacting reasonable regulations for voting assistance to prevent paid persuaders from advocating while in a ballot's physical presence—a moment when the risk of pressure is highest. *See also LUPE*, 2024 WL 4487493, at *3; *Veasey*, 830 F.3d at 239.

### III.    The Court Should Enter an Administrative Stay.

For the reasons set out above, Appellants are entitled to a stay pending appeal. They respectfully urge this Court to enter an order granting a stay pending appeal **as soon as possible**—given that ballots have already been mailed and early voting begins on October 21, 2024—and by no later than **October 20, 2024**. Appellants also request that this Court immediately enter an administrative stay while it considers this motion. Such stays "freeze legal proceedings until the court can rule on a party's request for expedited relief." *United States v. Texas*, 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring in denial of application to vacate stay) (citation omitted). They are a common "docket-management" tool. *Id.* In fact, the Court administratively stayed the district court's vote-harvesting injunction earlier this month.

As noted above, because mail voting has already started, time is of the essence. At the same time, this case involves an extensive record and a trial that spanned six weeks, about which the district court contemplated findings of fact and conclusions of law for more than seven months. An administrative stay would preserve the status

quo long enough to allow this Court to adequately consider whether a full stay pending appeal is appropriate before Texas's ongoing election is further disrupted.

## Conclusion

The Court should enter a stay pending appeal by **October 20, 2024**, because early voting starts October 21, 2024. The Court should also immediately enter an administrative stay.

Respectfully submitted,

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Aaron L. Nielson
Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

Kateland R. Jackson
Assistant Solicitor General

Counsel for State Defendants-Appellants

John M. Gore
E. Stewart Crosland
Louis J. Capozzi, III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

Counsel for Intervenor-Defendants-Appellants

## Certificate of Compliance with Rule 27.3

I certify the following in compliance with Fifth Circuit Rule 27.3:

- Before filing this Motion, counsel for Appellants contacted the Clerk's Office and opposing counsel to advise them of the intent to file this Motion. Counsel for Appellant also made telephone calls to the Clerk's Office before filing this Motion.

- The facts stated herein supporting emergency consideration of this motion are true and complete.

- The Court's review of this motion is requested as soon as possible, but no later than **October 20, 2024,** because early voting starts October 21, 2024. In addition, or alternatively, Appellant respectfully requests an immediate administrative stay while the Court considers this motion.

- True and correct copies of relevant orders and other documents are attached as an appendix to this motion.

- This motion is being served at the same time it is being filed.

/s/ Aaron L. Nielson
Aaron L. Nielson

## Certificate of Conference

On October 17, 2024, counsel for State Defendants-Appellants conferred with counsel for all Plaintiff-Appellees, who indicated they are opposed to this motion. The filing of this motion was also preceded by telephone calls to the Clerk's Office on October 18, 2024, advising of the intent to file the emergency motion.

/s/ Aaron L. Nielson
Aaron L. Nielson

## CERTIFICATE OF SERVICE

On October 18, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
AARON L. NIELSON

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,181 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
AARON L. NIELSON