# In the United States Court of Appeals for the Fifth Circuit

La Unión del Pueblo Entero et al,

*Plaintiffs–Appellees,*

*v.*

Gregory W. Abbott et al.,

*Defendants–Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
5:21-cv-844

## BRIEF FOR DEFENDANT-APPELLANT THE HARRIS COUNTY DISTRICT ATTORNEY

Eric J.R. Nichols
Cory R. Liu
Butler Snow LLP
1400 Lavaca Street, Suite 1000
Austin, TX 78701
(737) 802-1800

*Counsel for Defendant-Appellant
the Harris County District
Attorney*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made so that this Court may evaluate possible disqualification or recusal.

### Plaintiffs-Appellees:

La Unión del Pueblo Entero
Friendship-West Baptist Church
Southwest Voter Registration Education Project
Texas Impact
Mexican American Bar Association of Texas
Texas Hispanics Organized for Political Education
JOLT Action
William C. Velasquez Institute
James Lewin
FIEL Houston, Inc.
Delta Sigma Theta Sorority, Inc.
The Arc of Texas
League of Women Voters of Texas
OCA-Greater Houston
LULAC Texas
Voto Latino
Texas Alliance for Retired Americans
Texas AFT
Houston Area Urban League
Mi Familia Vota
Marla Lopez
Marlon Lopez
Paul Rutledge
REVUP-Texas

**Appellants:**

Governor Gregory W. Abbott
Attorney General Kenneth Paxton Jr.
Secretary of State Jane Nelson
State of Texas
Dallas County Republican Party
Harris County Republican Party
Republican National Committee
National Republican Congressional Committee
National Republican Senatorial Committee
Harris County District Attorney

**Counsel for Plaintiffs-Appellees La Unión del Pueblo Entero; Southwest Voter Registration Education Project; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velasquez Institute; and FIEL Houston, Inc.:**

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
Mexican American Legal Defense & Educational Fund

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
Fried Frank, Harris, Shriver & Jacobson LLP

**Counsel for Plaintiffs-Appellees Friendship-West Baptist Church; Texas Impact; and James Lewin:**

Sean Morales-Doyle
Leah J. Tulin
Jasleen K. Singh
Patrick A. Berry
Brennan Center for Justice at NYU Law School

Zachary D. Tripp
Aaron J. Curtis
Alexander P. Cohen
Charles Gehnrich
Natalie Howard
Augustus Ipsen
Elizabeth Ryan
Weil, Gotshal & Manges LLP

**Counsel for League of Women Voters of Texas and OCA-Greater Houston:**

Zachary Dolling
Sarah X. Chen
Texas Civil Rights Project

Adriel I. Cepeda Derieux
Ari J. Savitzky
Sophia Lin Lakin
Dayton Campbell-Harris
American Civil Liberties Union Foundation

Adriana C. Pinon
Thomas Paul Buser-Clancy
Edgar Saldivar
Savannah Kumar
Ashley A. Harris
ACLU Foundation of Texas

Christopher McGreal
Peter Hofer
Lucia Romano
Disability Rights Texas

Jessica R. Amunson
Jenner & Block LLP

**Counsel for Delta Sigma Theta Sorority, Inc. and The Arc of Texas:**

Evan Monod
The Arc of the United States
Derek H. Ha
J. Michael Showalter
Eitan G. Berkowitz
James David Cromley
Ann Helen MacDonald
ArentFox Schiff LLP

Jennifer A. Holmes
Victor Genecin
Mohammed A. Badat
Kathryn Sadasivan
Uruj Sheikh
Maria Cole
Ciarra A. Sisco
Breanna Della Williams
NAACP Legal Defense and Educational Fund, Inc.

**Counsel for LULAC Texas; Voto Latino; Texas Alliance for Retired Americans; and Texas AFT:**

Uzoma N. Nkwonta
Christopher D. Dodge
Marcos Mocine-McQueen
Julie Zuckerbrod
Elias Law Group LLP

**Counsel for Mi Familia Vota:**

Courtney M. Hostetler
Ben Clements
John Bonifaz
Amira Marcella Mattar
Free Speech for People

Wendy J. Olson
Mark L. Bieter
Bradley R. Prowant
Laura E. Rosenbaum
Stoel Rives LLP

Sean M. Lyons
Clem Lyons
Lyons & Lyons, PC

**Counsel for State Appellants:**

Ken Paxton
Aaron L. Nielson
Brent Webster
Kateland R. Jackson
Lanora C. Pettit
William D. Wassdorf
Kathleen Theresa Hunker
Ryan Glen Kercher
Office of the Attorney General of Texas

Louis J. Capozzi III
E. Stewart Crossland
John M. Gore
Jones Day LLP

**Counsel for the Harris County District Attorney:**

Eric J.R. Nichols
Cory R. Liu
Victoria A. Giese
Butler Snow LLP

**Counsel for Other Interested Parties:**

Kenneth E. Broughton, Jr.

Roswill Mejia
Sarah C. Stewart
Reed Smith LLP

Keely Dulaney Pippin
Reed Smith/Houston

*/s/ Cory R. Liu*
Cory R. Liu

*Counsel for Defendant-Appellant
the Harris County District
Attorney*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant the Harris County District Attorney believes oral argument would assist the Court in resolving this appeal.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED ...........................................................................2

STATEMENT OF THE CASE ...............................................................3

    I.     The HCDAO Was Not Originally a Party to This Litigation and Offered to Stipulate to Non-Enforcement Pending Its Outcome ......................................................................................3

    II.    The District Court Dismissed Plaintiffs' Claims Against the Harris County District Attorney That Did Not Involve Criminal Laws, and This Court Additionally Dismissed Plaintiffs' Constitutional Claims Against the HCDAO ............5

    III.    The District Court Does Not Conduct a Claim-by-Claim, Provision-by-Provision Standing Analysis ...............................7

SUMMARY OF THE ARGUMENT .......................................................10

ARGUMENT ........................................................................................11

    I.     Plaintiffs Did Not and Could Never Establish Standing to Sue the HCDAO Over Sections of S.B. 1 That Are Not Criminal Laws Enforced by Prosecutors................................13

    II.    Plaintiffs Did Not Establish Standing to Bring Claims Under Section 208 of the Voting Rights Act Against the HCDAO Over Section 7.04 of S.B. 1.......................................17

    III.    Plaintiffs Did Not Establish Standing to Bring Claims Under Section 208 of the Voting Rights Act Against the HCDAO Over Section 6.06 of S.B. 1.......................................22

IV.   The District Court's Universal Injunction of Texas
      Prosecutors Is Not Supported by the Factual Record
      and Law ............................................................................ 26

CONCLUSION ...................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
96 F.3d 1390 (Fed. Cir. 1996) ............................................................ 26

*Babbitt v. Farm Workers*,
442 U.S. 289 (1979) ............................................................................ 18

*Cameron Cnty. Housing Authority v. City of Port Isabel*,
997 F.3d 619 (5th Cir. 2021) ............................................................. 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................ 11, 12, 23, 26

*Coleman v. State*,
246 S.W.3d 76 (Tex. Crim. App. 2008) ........................................ 30, 31

*FDA v. Alliance for Hippocratic Medicine*,
144 S. Ct. 1540 (2024) ........................................................................ 23

*Havens Realty Corp v. Coleman*,
455 U.S. 363 (1982) ............................................................................ 24

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) .................................................. 10, 12, 13

*La. Fair Housing Action Ctr., Inc. v. Azalea Garden Props., LLC*,
82 F.4th 345 (5th Cir. 2023) .............................................................. 24

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................ 11

*Luwisch v. Am. Marine Corp.*,
956 F.3d 320 (5th Cir. 2020) ............................................................. 12

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (5th Cir. 2024) ..................................................... *passim*

*Planned Parenthood Ctr. for Choice v. Abbott*,
    No. A-20-cv-323, 2020 WL 1815587 (W.D. Tex. Apr. 9, 2020) .............. 4

*Power-One, Inc. v. Artesyn Techs., Inc.*,
    No. CIV. A. 2:05-CV-463,
    2008 WL 1746636 (E.D. Tex. Apr. 11, 2008) ..................................... 26

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) ................................................................ 31

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) .............................................................................. 14

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ............................................................... 20

*State ex rel. Hill v. Pirtle*,
    887 S.W.2d 921 (Tex. Crim. App. 1994) ...................................... 28, 29

*State v. Rosenbaum*,
    852 S.W.2d 525 (Tex. Crim. App. 1993) ............................................ 31

*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021) ................................................ 3

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...................................................................... 18, 21

*Texas v. Dep't of Labor*,
    929 F.3d 205 (5th Cir. 2019) ............................................................... 27

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .............................................................. 19, 20, 22

## Statutes and Constitutional Provisions

28 U.S.C. § 1292(a)(1)....................................................................1

28 U.S.C. § 1331 .........................................................................1

52 U.S.C. § 10508 ......................................................................8

TEX. CODE CRIM. PROC. art. 2.01 ............................................27

TEX. CODE CRIM. PROC. art. 2A.104(b) ............................ 30, 31

TEX. CONST. art. V, § 21............................................................27

TEX. ELEC. CODE § 276.015.......................................................21

TEX. ELEC. CODE § 64.034.........................................................15

TEX. ELEC. CODE § 86.010(e)(2) ...............................................16

TEX. ELEC. CODE § 86.0105.......................................................25

TEX. GOV'T CODE § 41.102(a) ...................................................29

TEX. GOV'T CODE § 41.102(b) ...................................................29

## Rules

FED. R. CIV. P. 65(d)(2) .......................................................26, 31

# JURISDICTIONAL STATEMENT

The district court exercised federal-question jurisdiction over Plaintiffs' Voting Rights Act claims at issue in this appeal under 28 U.S.C. § 1331. Defendant-Appellant the Harris County District Attorney respectfully maintains that there is no subject-matter jurisdiction on those claims as asserted against the Harris County District Attorney's Office (the "HCDAO"), due to lack of standing.

Although various of the Plaintiffs have as-yet-unresolved claims remaining at the district court, this Court has appellate jurisdiction to review an interlocutory order from a district court granting an injunction under 28 U.S.C. § 1292(a)(1).

The district court entered the injunction order at issue in this appeal on October 11, 2024. ROA.37670. The Harris County District Attorney filed a notice of appeal from that injunction order on November 8, 2024, ROA.82361, within the 30-day deadline set forth in Federal Rule of Appellate Procedure 4(a)(1)(A).

# ISSUES PRESENTED

1. Did Plaintiffs meet their burden of establishing standing to sue the HCDAO over sections of S.B. 1 that are not criminal laws enforced by prosecutors, including Sections 6.04 and 6.05?

2. Did Plaintiffs meet their burden of establishing standing to sue the HCDAO over Section 7.04 of S.B. 1?

3. Did Plaintiffs meet their burden of establishing standing to sue the HCDAO over Section 6.06 of S.B. 1?

4. Did the district court err by enjoining the elected prosecutors in all 254 Texas counties, most of whom are not parties to this litigation?

**STATEMENT OF THE CASE**

**I.    The HCDAO Was Not Originally a Party to This Litigation and Offered to Stipulate to Non-Enforcement Pending Its Outcome.**

This consolidated case began as several different lawsuits challenging an election law bill ("S.B. 1") that the Texas Legislature passed during its second special session in 2021.  The HCDAO was not a party to any of the lawsuits as initially filed.  After a Texas Court of Criminal Appeals decision held that the Texas Attorney General lacks jurisdiction to initiate criminal prosecutions without the expressly conveyed authority of a local prosecutor, *State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021), various of the Plaintiffs amended their complaints to include as defendants the district attorneys of several major urban counties, including the HCDAO.  ROA.6235 (HAUL and MFV Plaintiffs' operative complaint); ROA.6369 (OCA Plaintiffs' operative complaint); ROA.6643 (LULAC Plaintiffs' operative complaint).  The LUPE Plaintiffs have not brought any claims against the HCDAO.  ROA.6708.

Plaintiffs did not allege, and no evidence was introduced at trial, that the HCDAO had ever:  (1) supported the passage of S.B. 1; (2)

interpreted any provision of S.B. 1 as prohibiting much less criminalizing any of the Plaintiffs' activities; or (3) taken or threatened any investigative or enforcement actions under any provision of S.B. 1 against anyone engaging in conduct similar to Plaintiffs, much less against any of the Plaintiffs or one or more of its members.

Shortly after the HCDAO was joined in the litigation, the HCDAO offered to stipulate to the non-enforcement of any of the challenged S.B. 1 provisions pending the litigation in exchange for Plaintiffs' agreement not to "seek attorneys' fees, penalties, damages, expert fees, court costs, or other expenses" and to allow the HCDAO to avoid the costs and burdens of litigating the case. ROA.30333–38.[1] Plaintiffs' counsel responded: "Thanks for reaching out with the draft and for your patience. After internal consultation, however, we have decided not to agree to a stipulation." ROA.30333.

---

[1] This type of stipulation had been agreed to in prior civil rights litigation involving the HCDAO. *E.g.*, *Planned Parenthood Ctr. for Choice v. Abbott*, No. A-20-cv-323, 2020 WL 1815587, at *7 (W.D. Tex. Apr. 9, 2020), *mandamus granted in part*, *In re Abbott*, 956 F.3d 696 (5th Cir. 2020), *vacated as moot*, *Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (holding that a temporary restraining order did not apply to a defendant district attorney based on a non-participation stipulation).

To be clear, the HCDAO never withdrew its offer to stipulate on the non-participation terms agreed to in other litigation. Indeed, the HCDAO reasserts its good faith offer. Unfortunately, the Plaintiffs have decided not to agree to the proposed stipulation. Thus, the HCDAO and Harris County have incurred costs and expenses associated with this litigation.

## II. The District Court Dismissed Plaintiffs' Claims Against the Harris County District Attorney That Did Not Involve Criminal Laws, and This Court Additionally Dismissed Plaintiffs' Constitutional Claims Against the HCDAO.

The HCDAO filed a motion to dismiss the claims about provisions of S.B. 1 that did not establish new criminal law provisions or amend existing ones, based on Plaintiffs' lack of standing to bring such claims against the HCDAO and sovereign immunity. These non-criminal-law claims included challenges to S.B. 1 provisions addressing drive-through voting (Section 3.04), voting hours (Section 3.09), and straight-ticket voting (Section 3.15).[2] The district court partially granted the HCDAO's motion, stating: "Any and all claims that the Private Plaintiffs have

_____

[2] Consistently throughout this lawsuit, Plaintiffs have framed their claims as challenges to various provisions of S.B. 1 rather than as to particular sections of the Texas Election Code that were added or amended through that legislation.

asserted against [the Harris County District Attorney] that do not challenge criminal offenses under the Election Code are **DISMISSED WITHOUT PREJUDICE**." ROA.10919. The court stated that claims "challenging sections 4.06, 4.09, 6.04, 6.05, 6.06, 7.02, and 7.04 of S.B. 1 against [the Harris County District Attorney] may proceed," although the HCDAO contends in this appeal that some of the provisions identified by the district court also do not concern criminal laws and should not have been allowed to proceed to trial against the HCDAO. *Id.*

The HCDAO filed an interlocutory appeal to this Court from the partial denial of its motion to dismiss, raising the arguments based on lack of standing and sovereign immunity. This Court issued its decision after the district court conducted a bench trial in September and October of 2023, but before any rulings were issued. This Court's decision partially reversed the district court, ordering the additional dismissal of the constitutional claims against the HCDAO based on sovereign immunity. *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024).

In making that ruling, this Court noted:

> Finally, it may be necessary for the district court to reexamine the issue of standing in light of our decision today. Our holding requires the district court to dismiss the Plaintiffs' constitutional claims against [the Harris County District

Attorney] because she is immune from them. Neither the Plaintiffs' amended complaints nor their briefs provide a clear delineation of how their injuries are attributable to their statutory claims independent of their constitutional claims. . . . Now that their constitutional claims can no longer be asserted against [the Harris County District Attorney], a new determination on standing may be needed.

*Id.* at 334.

## III. The District Court Does Not Conduct a Claim-by-Claim, Provision-by-Provision Standing Analysis.

Rather than addressing separately this Court's suggestion that the district court reconsider the issue of standing for the remaining statutory claims, the district court proceeded to a decision on the merits following the bench trial. On September 28, 2024, the district court issued a decision holding that Section 7.04 of S.B. 1 was unconstitutional. That ruling and injunction did not include the HCDAO, because this Court dismissed the constitutional claims against the HCDAO. ROA.37508.[3]

---

[3] Without corresponding analysis of whether the evidence adduced at trial was sufficient to meet the *Ex parte Young* exception to an elected prosecutor's sovereign immunity from Plaintiffs' claims, the district court nonetheless enjoined a wide class of prosecutors other than the Harris County District Attorney from enforcing Section 7.04, on constitutional grounds. ROA.37585. The district court's September 28, 2024 decision is the subject of a separate appeal filed by various parties that were included in that order. That appeal is currently before this Court, under Case No. 24-50783.

On October 11, 2024, the district court issued the decision that is the subject of this appeal by the Harris County District Attorney. In the October 11, 2024 injunction order, the district court held that Sections 6.03, 6.04, 6.05, 6.06, 6.07, and 7.04 of S.B. 1 are preempted by Section 208 of the Voting Rights Act. ROA.37777–82.[4] In a manner consistent with the district court's earlier rulings on the Harris County District Attorney's motion to dismiss, the court did not reach Plaintiffs' claims under Sections 6.03 or 6.07 of S.B. 1 against the HCDAO. Thus, the parts of the court's permanent injunction specified as applying to the HCDAO are those addressing S.B. 1 Sections 6.04, 6.05, 6.06, and 7.04.[5]

---

[4] Section 208 of the Voting Rights Act states: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

[5] There are no portions of the district court's injunction that apply to the HCDAO *only*. In other words, as to each finding and conclusion addressed to the Harris County District Attorney, there were state officials—the Texas Secretary of State and the Texas Attorney General—also named in those findings of fact and conclusions of law. As addressed below and has been addressed by this Court and the Supreme Court, to invoke federal court jurisdiction over a particular defendant, a complaint about the validity of a law must be accompanied by a legally sufficient showing of proper Article III standing against each defendant each Plaintiff chooses to sue. Under the district court's order, Plaintiffs *have* obtained relief

There are other parts of the district court's October 11, 2024 order that are addressed to "all county and local prosecutors, as agents of the State of Texas." ROA.37778–82. The order's prosecutor-as-agents-of-the-State provisions "permanently enjoin[]" the following described conduct:

- "[D]eputizing the Attorney General";

- "[A]ppointing [the Attorney General] *pro tem*"; or

- "[S]eeking [the Attorney General's] appointment pro tem from or by a district judge";

"[T]o prosecute alleged violations" of S.B. 1 provisions that the district court found to be preempted by the Voting Rights Act. ROA.37778; ROA.37780–82.

In its written decision, the district court did not conduct a "claim-by-claim," "provision-by-provision" breakdown of which of the Plaintiffs had standing to sue the HCDAO over particular provisions of S.B. 1,

---

about provisions of S.B. 1 against parties for whom they adduced proof of involvement in enacting or enforcing provisions of S.B. 1. On the other hand, the record in this case is devoid of evidence that the HCDAO was involved in the promulgation of S.B. 1 or the investigation or enforcement of any provision of S.B. 1 that is the subject of the district court's injunction against the HCDAO. ROA.39761–62; ROA.40424–25; ROA.40479–80; ROA.40544–45; ROA.40582; ROA.42401.

despite this Court's requirement of such an analysis in *In re Gee*, 941 F.3d 153, 165, 170 (5th Cir. 2019), and despite this Court's statement in this litigation that "a new determination on standing may be needed," *Ogg*, 105 F.4th at 334. Instead, the district court repeatedly states in the October 11, 2024 order that "all county and local prosecutors are agents of the State of Texas in prosecuting crimes" and are permanently enjoined from enforcing the provisions of S.B. 1 that the court held to be preempted by Section 208 of the Voting Rights Act. ROA.37778–82.

This appeal follows that October 11, 2024 order.

## SUMMARY OF THE ARGUMENT

Rather than engaging in a "claim-by-claim," "provision-by-provision" analysis of standing as is required by Article III of the Constitution, *In re Gee*, 941 F.3d 153, 165, 170 (5th Cir. 2019), the district court issued a sweeping injunction of the elected prosecutors of all 254 Texas counties, most of whom are not parties to this lawsuit. The district court enjoined those prosecutors from enforcing various provisions of S.B. 1, an omnibus election-procedure bill that took effect in 2021.

Two of those S.B. 1 provisions, Sections 6.04 and 6.05, are not even criminal laws within those prosecutors' enforcement jurisdiction. As for

the remaining provisions of S.B.1 invoked by the district court in the injunction against the HCDAO—Sections 6.06 and 7.04—the plaintiffs challenging those provisions failed to establish standing at trial, because they did not show an "imminent" and "certainly impending" threat of prosecution or any other injury in fact sufficient to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Court should reverse the district court with respect to the limited relief awarded against the HCDAO and hold that all claims against the HCDAO fail due to lack of standing.

## ARGUMENT

A plaintiff who invokes federal jurisdiction bears the burden of establishing the requirements of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The requirements of standing "are an indispensable part of the plaintiff's case," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* In an appeal following a bench trial, this Court reviews legal issues *de novo* and

findings of fact for clear error. *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020).

Standing is established by proving an injury in fact that is (1) "concrete, particularized, and actual or imminent," (2) "fairly traceable to the challenged action" of the defendant," and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). This Court has explained that the requirements of standing must be analyzed "claim-by-claim," "provision-by-provision," even when the plaintiff has framed its case in a manner that makes "analyzing standing at this level of granularity" a "tedious" task. *In re Gee*, 941 F.3d 153, 165, 170 (5th Cir. 2019) (per curiam).

At various stages of this litigation, Plaintiffs struggled to organize their sweeping challenges to S.B. 1 in a manner targeted at individual defendants. This left the district court with the unenviable task of sifting through which of the Plaintiffs' myriad challenges to provisions of S.B. 1 were being raised by which of the Plaintiffs, and against whom. ROA.27000 (seeking extension of time to file final a joint pretrial order); ROA.28155 (final joint pretrial order). At the end of the day, however, the district court issued an injunction against the HCDAO (and offices of

other elected Texas prosecutors) without holding Plaintiffs to the applicable standards of establishing Article III standing that apply to them as litigants seeking affirmative relief.

## I. Plaintiffs Did Not and Could Never Establish Standing to Sue the HCDAO Over Sections of S.B. 1 That Are Not Criminal Laws Enforced by Prosecutors.

For purposes of this Court's standing analysis, the question for each challenged provision of S.B. 1 is whether the statutory changes made by that provision cause an injury in fact traceable to the HCDAO that is redressable by the court. *E.g.*, *In re Gee*, 941 F.3d at 165, 170. As a threshold matter, Plaintiffs could never satisfy these standing requirements of traceability and redressability for claims against any Texas elected prosecutor challenging provisions of S.B. 1 that are not criminal laws. There is no showing, nor could there be, that the HCDAO or other Texas elected prosecutor plays any role in the administration of elections, and many of the provisions of S.B. 1 challenged by Plaintiffs concern elections administration. Any alleged injury caused by a non-criminal law could never be traced to the HCDAO (or any other Texas elected prosecutor), much less redressed by an injunction against such a prosecutor. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42

(1976) (holding that standing exists only when the court can "redress injury that fairly can be traced to the challenged action of the defendant"); *Cameron Cnty. Housing Authority v. City of Port Isabel*, 997 F.3d 619, 624 (5th Cir. 2021) (dismissing a case for lack of standing because "Plaintiffs' injury is not fairly traceable to the [Defendant] City").

The district court agreed that it lacked jurisdiction to hear claims against the HCDAO that do not involve criminal law when it partially granted the HCDAO's motion to dismiss. ROA.10919. The order identified certain provisions of S.B. 1 that the Plaintiffs could challenge in claims against the HCDAO and dismissed the rest of the claims for lack of jurisdiction. *Id.* The arguments in this appeal, therefore, focus on the district court's injunction against enforcement of S.B. 1 Sections 6.04, 6.05, 6.06, and 7.04, pursuant to Section 208 of the Voting Rights Act.[6]

---

[6] Although the district court also declared Sections 6.03 and 6.07 preempted by federal law and unenforceable, it did not purport to enjoin the HCDAO with respect to those provisions, ROA.37779, nor could it have, given that these provisions do not involve criminal law and the district court's previous dismissal of any claims against the HCDAO challenging those provisions.

Of these four remaining provisions at issue in the Plaintiffs' claims against the HCDAO, two of them—Sections 6.04 and 6.05—do not involve criminal laws at all. The district court should have dismissed the claims over those provisions against the HCDAO (and other state prosecutors) for substantially the same reason it declined to assert jurisdiction over claims challenging other provisions at the motion-to-dismiss stage. The alleged injuries caused by those provisions are not traceable to the HCDAO and thus also could not be redressed through an injunction against the HCDAO. ROA.10919.

This appropriate outcome is based on the text of the statute and the trial record. S.B. 1 Section 6.04 modifies the text of the oath that in-person assistors must take before providing assistance at a polling place. TEX. ELEC. CODE § 64.034. Various county election officials are named as co-defendants in this lawsuit, for the asserted reason that these officials have responsibility for administering elections in their jurisdictions. This includes the Harris County Clerk and the elections administrators of numerous other counties. ROA.37699. On the other hand, Plaintiffs never alleged, much less proved, that the HCDAO plays any role in administering elections in Harris County or elsewhere. By plain Texas

law, the Harris County District Attorney has the authority to prosecute Texas criminal laws within the jurisdictional confines of Harris County. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 328 (5th Cir. 2024). Plaintiffs did not show, nor could they, that S.B. 1 Section 6.04 effected a change to a criminal law within that enforcement jurisdiction.

The second such S.B. 1 provision is Section 6.05. This change in law relates to additional information that a mail-ballot assistor must enter on a carrier envelope for a mail-in ballot. The portion of the additional-information requirement enjoined by the district court requires an assistor to disclose "the relationship of the person providing the assistance to the voter." TEX. ELEC. CODE § 86.010(e)(2). The Secretary of State and various county election officials are named as co-defendants in this lawsuit, and Plaintiffs themselves assert that these officials have responsibility for creating, distributing, and receiving the carrier envelopes for mail-in ballots. On the other hand, Plaintiffs neither pled nor proved that the HCDAO has any such responsibilities.

Because there is no showing—nor could there be—that Sections 6.04 and 6.05 of S.B. 1 are laws that the HCDAO could ever implement or enforce, Plaintiffs did not and could never meet their burden of

establishing standing to bring claims over either of these provisions against the HCDAO. Any alleged injuries caused by these provisions to any of the Plaintiffs or any of their members could never be traced to the HCDAO, nor ever redressed by an injunction against the HCDAO.

Plaintiffs' claims against the HCDAO challenging these two provisions fail due to lack of standing.[7] The two remaining challenges incorporated into the district court's injunction order against the HCDAO fare no better.

## II. Plaintiffs Did Not Establish Standing to Bring Claims Under Section 208 of the Voting Rights Act Against the HCDAO Challenging Section 7.04 of S.B. 1.

According to the joint pretrial order filed with the district court, the only parties who brought Section 208 claims against the HCDAO challenging Section 7.04 of S.B. 1 were the LULAC Plaintiffs (LULAC Texas, Voto Latino, Texas AFT, and Texas Alliance for Retired Americans). ROA.28162. Although other Plaintiffs also brought

---

[7] Furthermore, as discussed below in Parts II and III, none of the plaintiffs with claims against the HCDAO could identify any evidence of the HCDAO making any statement or taking any action to enforce any provision of S.B. 1, including Sections 6.04 and 6.05 of S.B. 1. ROA.39761–62; ROA.40424–25; ROA.40479–80; ROA.40544–45; ROA.40582; ROA.42401.

constitutional challenges to Section 7.04, those claims were dismissed by this Court based on sovereign immunity, *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024), and they are not at issue in this appeal. Instead, this portion of the appeal relates to the district court's Section 7.04 injunction against the HCDAO, based on the LULAC Plaintiffs' presentation at trial.

As a threshold matter, although courts have recognized a right to pre-enforcement standing when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution," neither the Supreme Court nor this Court has held that a plaintiff has pre-enforcement standing to assert a statutory cause of action under Section 208 of the Voting Rights Act. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Given that as concluded by this Court, neither the LULAC Plaintiffs nor any other of the Plaintiffs had a federal *constitutional* claim over Section 7.04 to make, *Ogg*, 105 F.4th 313, the LULAC Plaintiffs were left with only an asserted *statutory* cause of action.

The Supreme Court has stated that when it comes to statutory causes of action: "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). This is indisputably a pre-enforcement case in which no investigative or enforcement action involving S.B. 1 on the part of the HCDAO has occurred. The LULAC Plaintiffs did not adduce at trial any evidence of actual or threatened enforcement by the HCDAO of Section 7.04. The LULAC Plaintiffs thus failed to establish that any of them or their members suffered any concrete harm traceable to the HCDAO related to the enactment of the challenged provision of S.B. 1.

This Court recognized the standing-to-bring-statutory-claims issue when it heard the HCDAO's interlocutory appeal from the partial denial of its motion to dismiss. Though this Court declined to exercise pendant appellate jurisdiction over the issue of standing to bring these statutory claims, it observed that the "district court relied on a diversion-of-resources theory to find the Plaintiffs had organizational standing." *Ogg*, 105 F.4th at 334. The "district court found the Plaintiffs sufficiently alleged the challenged provisions of S.B. 1 will force them to divert

resources from their ordinary activities to counteract the law's effects, thereby causing them organizational injury." *Id.* This Court observed that "neither the Plaintiffs' amended complaints nor their briefs provide a clear delineation of how their injuries are attributable to their statutory claims independent of their constitutional claims." *Id.* This Court thus recognized that for such a statutory claim—unlike a constitutional claim—the issue of standing turns on whether an actual statutory violation causing concrete harm has occurred. *See TransUnion*, 594 U.S. at 427; *cf. Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020) (noting that "unique standing issues" give rise to pre-enforcement standing in the First Amendment context).

Even if the LULAC Plaintiffs' Section 7.04 claims could survive this threshold issue—which they cannot—the evidence at trial did not establish that they had standing to pursue the claims against the HCDAO. There is no evidence that the HCDAO has ever interpreted Section 7.04, much less enforced it, in a manner that would ever limit the ability of voters to receive assistance under Section 208 of the Voting Rights Act. Instead, Section 7.04 regulates compensated "in-person interactions with one or more voters" in the "physical presence of a ballot"

with the intent to "deliver votes for a specific candidate or measure." TEX. ELEC. CODE § 276.015. Section 7.04 regulates only the conduct of those who are paid to advocate for a political candidate or measure, and it does not apply to a person who is assisting voters in casting a ballot.

The right to voter assistance in Section 208 of the Voting Rights Act is thus not implicated by the LULAC Plaintiffs' evidence offered in support of their challenge to Section 7.04. In fact, the LULAC Plaintiffs did not establish any threatened or actual enforcement or any other evidence indicating that the HCDAO has misinterpreted Section 7.04 of S.B. 1 to limit voter assistance or enforced that provision in a manner that limits voter assistance. ROA.39761–62 (cross-examination of Zeph Capo, Texas AFT); ROA.40479–80 (cross-examination of Domingo Garcia, LULAC Texas); ROA.40582 (cross-examination of Judy Bryant, Texas Alliance for Retired Americans); ROA.42401 (cross-examination of Ameer Patel, Voto Latino). Thus, even if the LULAC Plaintiffs can bring a pre-enforcement claim under Section 208 of the Voting Rights Act against other defendants—which they have—they were unable to prove a "credible threat of prosecution" to establish standing for that claim against the HCDAO. *Susan B. Anthony List*, 573 U.S. at 159.

## III. Plaintiffs Did Not Establish Standing to Bring Claims Under Section 208 of the Voting Rights Act Against the HCDAO Challenging Section 6.06 of S.B. 1.

The last injunction provision naming the HCDAO involves S.B. 1 Section 6.06. According to the joint pretrial order filed with the district court, the only parties who brought Section 208 claims against the HCDAO challenging Section 6.06 of S.B. 1 are two of the OCA Plaintiffs: OCA-Greater Houston and the League of Women Voters of Texas. ROA.28159.

As with the claims challenging Section 7.04 of S.B. 1, the lack of standing proof to bring pre-enforcement claims against the HCDAO over Section 6.06 is established under the authority of *TransUnion LLC v. Ramirez*. Again, *TransUnion* held that for statutory causes of action, only "those plaintiffs who have been *concretely harmed* by a defendant's statutory violation" have Article III standing to sue. 594 U.S. at 427. As with the LULAC Plaintiffs' Section 6.04 claims, the two OCA Plaintiffs did not support their Section 6.06 claims with any evidence that the HCDAO had engaged in any investigative or enforcement action related to the provision at issue. Accordingly, the lack of a concrete harm from a

violation of Section 208 of the Voting Rights Act negates the two OCA Plaintiffs' standing to sue the HCDAO.

Even if these two OCA Plaintiffs could bring a pre-enforcement claim under Section 208 of the Voting Rights, the requirements of Article III standing are met only by a showing of an "imminent" injury that is "*certainly impending*" rather than merely "*possible*." *Clapper*, 568 U.S. at 409. In the absence of a certainly impending injury, a party's "costs that they have incurred" based on an unsubstantiated "fear" of government action are "self-inflicted injuries" that do not confer standing. *Id.* at 417–18. Parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416.

The Supreme Court recently reaffirmed the prohibition on self-inflicted injuries. *See FDA v. Alliance for Hippocratic Medicine*, 144 S. Ct. 1540 (2024). In that case, the Court rejected the argument that medical associations were "forced" to "expend considerable time, energy, and resources" to "the detriment of other spending priorities." *Id.* at 1563. As the Court explained, "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into

standing." *Id.* at 1563–64. "An organization cannot manufacture its own standing in that way." *Id.* at 1564. The medical associations cited *Havens Realty Corp v. Coleman*, 455 U.S. 363 (1982), for the proposition that "standing exists when an organization diverts its resources in response to a defendant's actions." *Id.* But the Court rejected that argument, stating: "That is incorrect. Indeed, that theory would mean that all the organizations in America would have standing to challenge almost every . . . policy that they dislike." *Id.*

This Court also recently elaborated that "'diverting' resources from one core mission activity to another, i.e., prioritizing which 'one-mission' projects, out of many potential activities, an entity chooses to pursue, dues not suffice" to establish standing. *La. Fair Housing Action Ctr., Inc. v. Azalea Garden Props., LLC*, 82 F.4th 345, 355 (5th Cir. 2023). This is because "organizations daily must choose which activities to fund, staff, and prioritize." *Id.*

As with the LULAC Plaintiffs' Section 6.04 claims, the two OCA Plaintiffs could never overcome these threshold standing principles in order to obtain relief against the HCDAO. Section 6.06 bars the provision or acceptance of compensation for assistance with mail-in voting but

creates an exception for when "the person assisting a voter is an attendant or caregiver previously known to the voter." TEX. ELEC. CODE § 86.0105. First and foremost, neither of the two OCA Plaintiffs who made the Section 6.06 claim against the HCDAO adduced any evidence that the HCDAO had threatened or taken any action against any person providing voter assistance under this challenged S.B. 1 provision, much less that the HCDAO had ever interpreted—through investigation, prosecution, or even statements—this provision as covering any of the activities of these two Plaintiffs or their members (or anyone else for that matter) engaged in such activities. ROA.40424–25 (cross-examination of Grace Chimene, League of Women Voters of Texas); ROA.40544–45 (cross-examination of Deborah Chen, OCA-Greater Houston). These two OCA Plaintiffs furthermore did not establish at trial that any person who wishes to assist a voter could not readily avoid any violations of criminal law simply by making him or herself known to the voter and asking that voter to designate him or her as an attendant before providing assistance.

These two OCA Plaintiffs failed to establish an "imminent" and "*certainly* impending" harm sufficient to meet the injury in fact

requirement for standing to make claims against the HCDAO. *Clapper*, 568 U.S. at 409.

## IV. The District Court's Universal Injunction of Texas Prosecutors Is Not Supported by the Factual Record and Law.

"When crafting [an] injunction, the Court must remain mindful of the long-standing tradition, rooted in the common law and codified in the Federal Rules of Civil Procedure, that non-parties generally must not be named in an injunction without having their own rights first adjudicated." *Power-One, Inc. v. Artesyn Techs., Inc.*, No. CIV. A. 2:05-CV-463, 2008 WL 1746636, at *2 (E.D. Tex. Apr. 11, 2008), *aff'd*, 599 F.3d 1343 (Fed. Cir. 2010). "Courts have carefully" noted that an "injunction against a non-party" is "forbidden." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996).

Federal Rule of Civil Procedure 65(d)(2) states that an injunction "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2). This Court has previously applied that rule to

reverse a district court's finding of a nonparty in contempt of court because the nonparty was not bound by the injunction. *Texas v. Dep't of Labor*, 929 F.3d 205, 210–13 (5th Cir. 2019).

Under Texas law, each elected prosecutor is a separate official vested with independent prosecutorial discretion under the Texas Constitution and laws. *See* TEX. CONST. art. V, § 21 (providing that county attorneys and district attorneys if they exist in a particular county "shall represent the State in all cases in the District and inferior courts in their respective counties . . . ."); TEX. CODE CRIM. PROC. art. 2.01 ("Each district attorney shall represent the State in all criminal cases in the district courts of his district . . . ."); *Ogg*, 105 F.4th at 326 (noting that each elected district attorney has "complete discretion" over whether to bring criminal charges in a matter).[8]

There are other legal deficiencies in the portions of the district court's injunction addressed to "all county and local prosecutors" in Texas. ROA.37778–82. As indicated above in the statement of the case,

---

[8] This independence was evident from the differing positions that Texas elected prosecutors who *were* named as defendants in the litigation took (or did not take) with respect to Plaintiffs' claims. *E.g.*, ROA.28311–13 (Travis County DA stipulation); ROA.28314–17 (Dallas County DA stipulation); ROA.28430–33 (Hidalgo County DA stipulation).

*supra* at 9, there are three categories of conduct listed by the district court in these portions. Each provision does not accord with the laws governing Texas prosecutors.

First, as indicated above, the district court's description of "all county and local prosecutors" as being "agents of the State"—if intended to mean that such prosecutors are "agents" of other state officials or actors—does not comport with Texas law. Again, under Texas law, each elected prosecutor is a separate official vested with independent prosecutorial discretion under the Texas Constitution and laws. The Harris County District Attorney, for example, is not an "agent" of the Texas Attorney General, the Texas Secretary of State, or any other state official. Each district and county attorney with criminal jurisdiction is vested with independent authority to represent the State of Texas within the territorial bounds set by Texas law. *See, e.g.*, *State ex rel. Hill v. Pirtle*, cc, 926–29 (Tex. Crim. App. 1994) (discussing the independent authority of Texas prosecutors under the Texas Constitution and laws). Each of those district and county attorneys is an independent official

elected by constituents within the territorial jurisdiction in which he or she serves.[9]

Second, the district court's description of Texas prosecutors "deputizing the Attorney General" is inconsistent with Texas law. Under Texas law, the prosecutor with independent authority to represent the State in criminal matters within the territorial jurisdiction set by the Legislature has the authority to "employ the assistant prosecuting attorneys . . . and other office personnel that in the prosecuting attorney's judgment are required for the proper and efficient operation and administration of the office." TEX. GOV'T CODE § 41.102(a); *State ex rel. Hill*, 887 S.W.2d at 927. A prosecuting attorney may also request the assistance of the attorney general "in the prosecution of all manner of criminal cases or in performing any duty imposed by law on the prosecuting attorney." TEX. GOV'T CODE § 41.102(b). But if such assistance is provided, an assistant prosecuting attorney acts under the direction and control of the elected district attorney. *E.g.*, *State ex rel.*

---

[9] The Texas criminal justice system thus operates under a different model than the federal criminal justice system, in which the United States Attorney General has supervisory authority over the United States Attorney's Offices in federal judicial districts.

*Hill*, 887 S.W.2d at 928.  Thus, a district attorney or county attorney in Texas has no authority to "deputiz[e] the Attorney General," and this part of the district court's order is not specified in a manner that could ever be properly enforced against a district attorney or county attorney with criminal jurisdiction in Texas.

Third, the district court's references to a "county and local prosecutor[]" "appointing [the Attorney General] *pro tem*" have no basis in Texas law or procedure.  Under Texas law, a Texas court may in specified circumstances appoint an attorney *pro tem* to perform one or more duties of the elected attorney for the state.  TEX. CODE CRIM. PROC. art. 2A.104(b);[10] *e.g.*, *Coleman v. State*, 246 S.W.3d 76, 81–82 (Tex. Crim. App. 2008).  An elected district attorney or county attorney with criminal jurisdiction has no such authority to appoint an attorney *pro tem* under

---

[10] On January 1, 2025, H.B. 4504 from the regular session of the 88th Texas Legislature recodified many provisions of the Texas Code of Criminal Procedure and made nonsubstantive revisions. The provision dealing with the appointment of an "attorney *pro tem*" was Texas Code of Criminal Procedure art. 2.07, but that provision was repealed and recodified as Texas Code of Criminal Procedure 2A.104, entitled "temporary appointment of attorney."  This brief will continue to use the phrase "attorney *pro tem*" because the district court used that language, even though the phrase was eliminated to simplify and modernize the language of the new provision.

Texas law. Again, the district court's language does not set out a reasonably detailed provision that could be properly enforced against a Texas prosecutor.

Finally, the district court's language about "seeking [the Attorney General's] appointment *pro tem* from or by a district judge" suffers from the same lack of clear foundation in Texas law. Under Texas law, a district attorney or county attorney with criminal jurisdiction may recuse himself or herself from a particular case, but it is the "judge of the court in which [the elected prosecutor] represents the state" who makes a *pro tem* appointment. TEX. CODE CRIM. PROC. art. 2A.104(b); *Coleman*, 246 S.W.3d at 81; *State v. Rosenbaum*, 852 S.W.2d 525, 527 (Tex. Crim. App. 1993) (en banc). The district court's order does not purport to enjoin Texas state judges from carrying out their judicial functions.

Because of these infirmities in the district court's orders with respect to "all county and local prosecutors"; because not all county and local prosecutors in the state were parties to this lawsuit; and because of Plaintiffs' failure to prove standing to sue "all county and local prosecutors," these parts of the district court's order should likewise be reversed. Doing so would affirm the importance of not only Article III

standing principles but also the protections set out in the Federal Rules of Civil Porcedure and applicable law against parties being enjoined in cases in which they are not a party and against injunction orders that do not provide in "reasonable detail" the act or acts restrained.  Fed. R. Civ. P. 65(d); *e.g.*, *Scott v. Schedler*, 826 F.3d 207, 211–12 (5th Cir. 2016).

## CONCLUSION

The HCDAO has the utmost respect for the Plaintiffs whose claims against the HCDAO led to portions of the district court's order awarding relief against the HCDAO.  However, the HCDAO is simply not the proper party for these claims.  Accordingly, this Court should reverse the district court's October 11, 2024 injunction order with respect to all relief granted against the HCDAO specifically, and against "all county and local prosecutors" generally, and dismiss the claims underlying the district court's grant of relief as made against the HCDAO.

Respectfully submitted,

**BUTLER SNOW LLP**

_/s/ Eric J.R. Nichols_
Eric J.R. Nichols
Cory R. Liu
1400 Lavaca Street, Suite 1000
Austin, TX 78701
(737) 802-1800
eric.nichols@butlersnow.com
cory.liu@butlersnow.com

_Counsel for Defendant-Appellant the_
_Harris County District Attorney_

# CERTIFICATE OF SERVICE

On January 24, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Microsoft Defender and is free of viruses.

*/s/ Cory R. Liu*
Cory R. Liu

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B), because excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 5,712 words.

This filing complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, Size 14.

*/s/ Cory R. Liu*
Cory R. Liu