No. 24-50826

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

LA UNION DEL PUEBLO ENTERO; SOUTHWEST VOTER REGISTRATION EDUCATION
PROJECT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS
ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ
INSTITUTE; FIEL HOUSTON, INCORPORATED; FRIENDSHIP-WEST BAPTIST CHURCH;
TEXAS IMPACT; JAMES LEWIN; MI FAMILIA VOTA;
*Plaintiffs-Appellees*,
*v.*
GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS;
WARREN K. PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS;
STATE OF TEXAS; JANE NELSON, IN HER OFFICIAL CAPACITY AS TEXAS SECRETARY
OF STATE; HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN
PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE;
SEAN TEARE, HARRIS COUNTY DISTRICT ATTORNEY,
*Defendants-Appellants*,
*v.*
REPUBLICAN NATIONAL COMMITTEE,
*Movant-Appellant.*

———

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS,
*Plaintiffs-Appellees,*
*v.*
KEN PAXTON, TEXAS ATTORNEY GENERAL,
*Defendant-Appellant.*

———

LULAC TEXAS; TEXAS ALLIANCE FOR RETIRED AMERICANS;
TEXAS AFT; VOTO LATINO,
*Plaintiffs-Appellees,*
*v.*
KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,
*Defendant-Appellant.*

———

DELTA SIGMA THETA SORORITY, INCORPORATED; THE ARC OF TEXAS,
*Plaintiffs-Appellees,*
*v.*
GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS THE GOVERNOR OF TEXAS;
WARREN KENNETH PAXTON, JR., IN HIS OFFICIAL CAPACITY AS THE
ATTORNEY GENERAL OF TEXAS,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas
San Antonio Division - No. 5:21-cv-00844

---

# BRIEF OF PLAINTIFFS-APPELLEES OCA-GREATER HOUSTON AND LEAGUE OF WOMEN VOTERS OF TEXAS

*Counsel on Next Page*

Zachary Dolling
Sarah Chen
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073
zachary@texascivilrightsproject.org
schen@texascivilrightsproject.org

Ashley Harris
Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
ACLU FOUNDATION
OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
aharris@aclutx.org
apinon@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org

Christopher McGreal
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, TX 78758-1024
(512) 454-4816
cmcgreal@drtx.org

Sophia Lin Lakin
Ari J. Savitzky
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
slakin@aclu.org
asavitzky@aclu.org
dcampbell-harris@aclu.org

Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Patrick Stegemoeller
ASIAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
pstegemoeller@aaldef.org

Jessica Ring Amunson
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

*Counsel for OCA-Greater Houston and*
*League of Women Voters of Texas*

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

LA UNION DEL PUEBLO ENTERO ET AL.,
*Plaintiffs-Appellees,*
*v.*
GREGORY W. ABBOTT ET AL.,
*Defendants-Appellants.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**

- OCA-Greater Houston
- League of Women Voters of Texas
- La Union del Pueblo Entero
- Southwest Voter Registration Education Project
- Mexican American Bar Association of Texas
- Mi Familia Vota
- Arc of Texas
- Delta Sigma Theta Sorority, Incorporated
- Texas Hispanics Organized for Political Education

**Counsel**

- Zachary Dolling
- Sarah Xiyi Chen
- Adriel I. Cepeda Derieux
- Ari Savitzky
- Sophia Lin Lakin
- Dayton Campbell-Harris
- Adriana Pinon
- Thomas Buser-Clancy
- Edgar Saldivar
- Savannah Kumar
- Ashley Harris
- Christopher McGreal
- Patrick Stegemoeller

- JOLT Action
- William C. Velasquez Institute
- Fiel Houston, Incorporated
- Friendship-West Baptist Church
- Texas Impact
- James Lewin
- LULAC Texas
- Texas Alliance for Retired Americans
- Texas AFT
- Voto Latino

- Nina Perales
- Julia Renee Longoria
- Leah J. Tulin
- Jessica Ring Amunson
- Michael C. Keats
- Rebecca L. Martin
- Sean Morales-Doyle
- Jason S. Kanterman
- Jasleen K. Singh
- Parick A. Berry
- Zachary D. Tripp
- Aaron J. Curtis
- Megan Cloud
- Charles Gehnrich
- Natalie Howard
- Uzoma N. Nkwonta
- Christopher D. Dodge
- Marcos Mocine-McQueen
- Julie Zuckerbrod
- Courtney Marie Hostetler
- Victor Genecin
- Jennifer Holmes
- Michael J. Showalter
- Elizabeth Ryan
- Bradley R. Prowant
- Derek Ha
- Shira Wakschlag
- Evan Monod
- Uruj Sheikh
- Breanna Della Williams
- Maia Cole
- Amira Mattar

**Defendants-Appellants**

- Gregory W. Abbott
- Warren K. Paxton
- Jane Nelson

**Counsel**

- Brent Webster
- William F. Cole
- Garrett Greene

ii

- Ken Paxton
- Sean Teare
- Harris County Republican Party
- Dallas County Republican Party
- Republican National Committee
- National Republican Senatorial Committee
- National Republican Congressional Committee

- Meagan Corser
- Mark A. Csoros
- Kathleen Theresa Hunker
- Kateland R. Jackson
- Ryan Glen Kercher
- Aaron Lloyd Nielson
- William D. Wassdorf
- John M. Gore
- Louis Joseph Capozzi, III
- Zachary Austin
- John M. Gore
- E. Stewart Crosland
- Louis J. Capozzi, III
- Cory Liu
- Eric Nichols

**Other Interested Persons or Groups Not Party to this Appeal**

- REVUP-Texas
- Houston Area Urban League
- Marla Lopez
- Marlon Lopez
- Paul Rutledge
- REVUP-Texas
- Houston Area Urban League
- Houston Justice
- Jeffrey Lamar Clemmons

- Lisa Wise
- Michele Carew
- Teneshia Hudspeth
- Michael Scarpello
- Dyana Limon-Mercado
- Hilda Salina
- Joe Gonzales
- John Creuzot
- Jose Garza
- Sean Teare
- James Montoya
- Toribio Palacios

Dated: March 26, 2025

*/s/ Zachary Dolling*
Counsel of Record for Plaintiffs-Appellees OCA-Greater Houston and League of Women Voters of Texas

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees OCA-Greater Houston and League of Women Voters of Texas respectfully request oral argument. *See* Fed. R. App. P. 34; 5th Cir. R. 28.2.3. This appeal raises legally and practically significant questions regarding the legality of a provision of the Texas Election Code. Oral argument will assist this Court in answering those questions.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS ..................................................................................... v

TABLE OF AUTHORITIES ............................................................................. vii

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION ..................................................................... 3

STATEMENT OF THE CASE ............................................................................. 3

    A.   Section 6.06's Coverage ......................................................................... 3

    B.   Section 6.06's Interference with and Chilling Effect on
        Plaintiffs-Appellees' Core Activities. ..................................................... 5

    C.   The HCDA's Role in Enforcing Section 6.06 ........................................ 11

    D.   Plaintiffs-Appellees' Lawsuit and the Trial. ......................................... 13

SUMMARY OF THE ARGUMENT .................................................................. 14

ARGUMENT ..................................................................................................... 16

   I.   PLAINTIFFS-APPELLEES HAVE STANDING AGAINST
       THE HCDA ........................................................................................... 16

    A.   Plaintiffs-Appellees have established both organizational and
        associational injury in fact based on a credible threat of prosecution. ...... 19

    B.   Plaintiffs-Appellees have established organizational injury in fact
        because Section 6.06 directly affects and interferes with their core
        activities. .............................................................................................. 30

    C.   Each of Plaintiffs-Appellees' and its members' injuries is traceable
        to, and redressable by, enjoining the HCDA. ......................................... 36

    D.   Plaintiffs-Appellees satisfy the other requirements for associational
        standing. ............................................................................................... 38

  II.     THE DISTRICT COURT'S INJUNCTION IS PROPER ........................ 39

    A.   The District Court properly enjoined the State of Texas and its
        agents, including the HCDA and other local prosecutors. ....................... 39

    B.   The portions of the District Court's injunction relating to the
        deputization or appointment of AG attorneys are legally sound. .............. 42

CONCLUSION .................................................................................................. 46

CERTIFICATE OF SERVICE ...............................................................................49

CERTIFICATE OF COMPLIANCE......................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
  96 F.3d 1390 (Fed. Cir. 1996) .................................................................41

*Adler v. State*, No. 10–13–00312–CR, 2014 WL 5421050
  (Tex. App.—Waco Oct. 23, 2014, pet. ref'd).............................................45

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) ...........................................................39

*Ass'n of Cmty. Organizations for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) .................................................. 35, 36

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979)..................................19

*Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986)................................35

*Bond v. United States,* 564 U.S. 211 (2011) .....................................26

*Bryant v. Woodall,* 1 F.4th 280 (4th Cir. 2021) ..................................19

*Cayuga Nation v. Tanner,* 824 F.3d 321 (2d Cir. 2016).................... 19, 26

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013)...............................30

*Consumer Data Industry Association v. Texas through Paxton*,
  No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023)....... 20, 26, 27, 37

*Del. Valley Citizens' Council for Clean Air v. Commonwealth
  of Pennsylvania*, 533 F. Supp. 885 (E.D. Pa. 1982).....................................41

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019)...........................35

*Doe v. Bolton*, 410 U.S. 179 (1973).......................................................19

*E. F. Transit, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 2016 WL 4761438
  (S.D. Ind. Sept. 13, 2016), *rev'd in part on different grounds sub nom.*
  *E.F. Transit, Inc. v. Cook*, 878 F.3d 606 (7th Cir. 2018) ..............................26

vii

*Ex parte Uvukansi*, No. WR-88,493-02, 2020 WL 5649459
(Tex. Crim. App. Sept. 23, 2020) ......................................................45

*FDA v. Alliance for Hippocratic Medicine* ("*AHM*"),
602 U.S. 367 (2024)......................................................... *passim*

*Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*,
517 U.S. 544 (1996).................................................. 38, 39

*Ga. Latino All. for Human Rights v. Governor of Georgia*,
691 F.3d 1250 (11th Cir. 2012) ....................................26

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982).............................................. 18, 30

*Hejira Corp. v. MacFarlane*,
660 F.2d 1356 (10th Cir. 1981) ....................................21

*In re Gee*, 941 F.3d 153 (5th Cir. 2019) ........................... 19, 26

*Kareem v. Cuyahoga Cty. Bd. of Elections*,
95 F.4th 1019 (6th Cir. 2024) ......................................37

*Kentucky v. Yellen*,
54 F.4th 325 (6th Cir. 2022) .........................................26

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)............................... 27, 28

*KVUE, Inc. v. Moore*,
709 F.2d 922 (5th Cir. 1983),
*aff'd sub nom. Tex. v. KVUE-TV, Inc.*, 465 U.S. 1092 (1984) .....................20

*League of Women Voters of Ohio v. LaRose*,
741 F. Supp. 3d 694 (N.D. Ohio 2024) ................................. 21, 25

*Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties,
L.L.C.* ("*LFHAC*"), 82 F.4th 345 (5th Cir. 2023)...................... 18, 31, 32, 33

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .............................21

*Match-E-Be Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012).......................................................25

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ........................... 19, 28

*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) ................................. *passim*

*Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*,
    940 F.2d 73 (4th Cir. 1991) ..................................................... 21, 26

*Monson v. Drug Enf't Admin.*,
    589 F.3d 952 (8th Cir. 2009) .........................................................28

*Nat'l Press Photographers Ass'n v. Higgins*,
    145 S. Ct. 140 (2024)...................................................................36

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) .........................................................36

*National Rifle Association of America, Inc. v. McCraw*,
    719 F.3d 338 (5th Cir. 2013) ................................................. 20, 27

*Nat'l Treasury Employees Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996).....................................................35

*New Hampshire Hemp Council, Inc. v. Marshall*,
    203 F.3d 1 (1st Cir. 2000)..............................................................28

*New Hampshire Lottery Comm'n v. Rosen*,
    986 F.3d 38 (1st Cir. 2021)............................................................28

*OCA Greater Houston v. Texas*,
    2022 WL 2019295 (W.D. Tex. June 6, 2022) ...............................41

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ............................................... *passim*

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ....................................37

*Peace Ranch, LLC v. Bonta,* 93 F.4th 482 (9th Cir. 2024).....................28

*Power-One, Inc. v. Artesyn Techs., Inc.*, No. CIV. A. 2:05-CV-463,
    2008 WL 1746636 (E.D. Tex. Apr. 11, 2008) ..............................41

*Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018) ........................... 19, 27, 29

*Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005) ............................27

*Siders v. City of Brandon, Mississippi*, 123 F.4th 293 (5th Cir. 2024) ..................29

ix

*Spokeo, Inc. v. Robins,* 1 578 U.S. 330 (2016) ........................................................16

*State ex rel. Hill v. Pirtle,*
    887 S.W.2d 921 (Tex. Crim. App. 1994) ....................................................42

*State v. Stephens,* 663 S.W.3d 45 (Tex. Crim. App. 2021) ............................. 11, 40

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard*
    *Coll.,* 600 U.S. 181 (2023)..........................................................................38

*Susan B. Anthony List v. Driehaus* ("*SBA List*"),
    573 U.S. 149 (2014)................................................................... *passim*

*Texas v. Dep't of Labor,*
    929 F.3d 205 (5th Cir. 2019) .......................................................................41

*Texas v. Yellen,*
    105 F.4th 755 (5th Cir. 2024) ......................................................................27

*Travelhost, Inc. v. Blandford,*
    68 F.3d 958 (5th Cir. 1995) .........................................................................43

*United States v. State of Alabama,* No. 2:06-cv-392-WKW,
    2006 WL 1598839 (M.D. Ala. June 7, 2006).............................................41

*United States v. Texas,* No. EP-21-CV-173-KC,
    2024 WL 3593683 (W.D. Tex. July 30, 2024)...........................................26

*United States v. Texas,*
    557 F. Supp. 3d 810 (W.D. Tex. 2021) .......................................................41

*United States v. Texas,*
    586 F. Supp. 3d 574 (W.D. Tex. 2022) .......................................................40

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013), *cert. denied,* 134 S. Ct. 1876 (2014) ..........26

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2013) .......................................................................25

*Yick Wo v. Hopkins,*
    118 U.S. 356 (1886)....................................................................................25

x

**Tex. Elec. Code**

§ 86.010(g) ...................................................................................3

§ 86.0105 ............................................................................ 1, 3, 29

§ 86.0105(a) ...............................................................................3

§ 86.0105(e) ...............................................................................4

§ 86.0105(f) ........................................................................ 4, 29

§ 271.001 ...................................................................................23

§ 273.001(a) ...............................................................................12

**Statutes**

28 U.S.C. § 1292(a)(1) ...............................................................3

28 U.S.C. § 1331 .........................................................................3

52 U.S.C. § 10508 .......................................................................1

Tex. Code Crim. Pro. art. 2A.102 ...........................................11

Tex. Code Crim. Pro. art. 2A.104 ..................................... 43, 45

Tex. Code Crim. Pro. art. 2.01 .................................................42

Tex. Code Crim. Pro. art. 2.07 .................................................45

Tex. Gov't Code § 43.180 .........................................................11

Tex. Gov't Code § 402.028 ............................................... 43, 44

Tex. Local Gov't Code § 87.011(3)(B) ............................. 12, 23

Tex. Local Gov't Code § 87.011(3)(B)(i) .................................12,

Tex. Local Gov't Code § 87.015 ....................................... 12, 23

Tex. Penal Code § 12.35 .............................................................5

Tex. Penal Code § 38.01(3) ....................................................1, 4

## Rules

Fed. R. Civ. P. 65(d)(1)(c) .........................................................43

Fed. R. Civ. P. 65(d)(2).................................................. 40, 41

Fed. R. Civ. P. 65(d)(2)(C) ......................................................43

## Constitutional Provisions

Tex. Const. art. V , § 21 ................................................ 11, 42

U.S. Const. art. VI, § 2................................................................26

## Other Authorities

13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.5 (3d ed. 2021)................................................27

Acts 2023, Texas Acts of the 88th Leg.- Regular Session, ch. 765 (H.B. 4504), Sec. 3.001, eff. 1/1/2025 ...............................................45

S. Rep. No. 97-417 (1982) ........................................................1

# INTRODUCTION

Section 208 of the Voting Rights Act provides:

> Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

52 U.S.C. § 10508. Congress enacted Section 208 because it recognized that "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance[.]" S. Rep. No. 97-417, at 62 (1982). It secures the right of a qualified voter to receive assistance from a person of their choice, subject to employment-related limits imposed by Congress, as necessary "to limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote[.]" *Id.*

This appeal involves Section 6.06 of Texas's sweeping 2021 election law known as "S.B.1." Section 6.06 makes it a felony to give, offer, or receive "compensation"—defined to include "anything of value"—for providing mail-voting assistance. Tex. Elec. Code ("TEC") § 86.0105; Tex. Penal Code § 38.01(3). As written, Section 6.06 is a flat ban on compensated mail-ballot assistance, applicable to voter and assistor alike, even when there is no fraud in the assistance and the assistor simply marks the ballot consistent with the wishes of the voter.

After a six-week trial involving almost 80 witnesses and 1000 exhibits, the District Court determined that Section 6.06 violates and is preempted by Section 208 of the Voting Rights Act because it has deprived qualified voters of assistance from a person of their choice and interferes with and frustrates the substantive right Congress created in Section 208. That decision rests soundly on the trial evidence and black-letter legal principles. It contains no reversible error.

The facts established at trial showed, and the District Court found, that before S.B.1, voter-outreach and assistance organizations including OCA-Greater Houston ("OCA-GH") and League of Women Voters of Texas ("LWVTX") (collectively, "Plaintiffs-Appellees") were well-known in their communities for providing mail-voting assistance during outreach activities like door-to-door canvassing, hosting candidate forums, tabling at community events, and visiting assisted care centers. This was carried out both by paid staff, and by other members and volunteers, some of whom were paid, and some of whom received modest benefits like food or T-shirts for their efforts. The trial evidence also showed, and the District Court found, that Section 6.06's criminalization of this assistance has caused Plaintiffs-Appellees and others to no longer provide it, thereby depriving qualified voters of assistance from their chosen assistors in clear violation of Section 208.

Defendants-Appellants fail to offer meaningful evidence or argument to rebut the District Court's conclusions. This Court should affirm.

***

Plaintiffs-Appellees brought Section 208 challenges to S.B.1 Section 6.06 against multiple appellants in this appeal: the Texas Secretary of State ("Secretary"), Texas Attorney General ("AG"), and Harris County District Attorney ("HCDA"). Their Section 208 claims against the Secretary and the AG overlap with those brought by the LUPE Plaintiffs. Pursuant to Federal Rule of Appellate Procedure 28(i), Plaintiffs-Appellees therefore adopt in whole the LUPE Plaintiffs' brief for purposes of responding to the arguments raised by the State-Appellants and Intervenor-Appellants, while this brief focuses primarily on responding to the HCDA's opening brief.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1331 because Plaintiffs-Appellees' claims arise under federal law. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the District Court entered a permanent injunction.

## STATEMENT OF THE CASE

### A.      Section 6.06's Coverage.

Section 6.06 became effective on December 2, 2021. TEC § 86.0105. It makes it a state jail felony when a person "compensates or offers to compensate another person for assisting voters" with mail voting, or "solicits, receives, or accepts compensation" for providing such assistance. *Id.* §§ 86.0105(a), 86.010(g).

"Compensation" is statutorily defined as "anything reasonably regarded as an economic gain or advantage, including accepting or offering to accept employment for a fee, accepting or offering to accept a fee, entering into a fee contract, or accepting or agreeing to accept money or anything of value." Tex. Penal Code § 38.01(3); TEC § 86.0105(e).

Section 6.06 "does not apply if the person assisting a voter is an attendant or caregiver previously known to the voter," but the statute does not define "attendant," "caregiver," or what it means to be "previously known to the voter." TEC § 86.0105(f). Nor has the Secretary published any guidance or training on how to interpret these terms. ROA.37683, 40707-40710. At trial, the former Chief of the AG's Election Integrity Division agreed that Section 6.06 makes it a state jail felony to offer or accept compensation for mail ballot assistance "*even if there is no fraud in the assistance and the assistor marks the ballot consistent with the wishes of the voter*." ROA.37723 (emphasis in original), 42797-42798. He further agreed that Section 6.06 "'appear[s] to apply to [the] scenario' in which a paid canvasser for a nonprofit Get Out the Vote organization engages with voters and provides mail ballot assistance at the voter's request." ROA.37724 (citing ROA.42794-42796). Similarly, the former Director of Elections for the Secretary confirmed that a blind voter who offered to buy a friend lunch in exchange for the friend's assistance with

their mail ballot would be liable under Section 6.06, as would a voter who offered a volunteer $20 to help them with their mail ballot. ROA.40705-40707, 37724.

As a state jail felony, a violation of Section 6.06 is punishable by confinement in a state jail for up to two years and a fine of up to $10,000, with a mandatory minimum imprisonment of 180 days. Tex. Penal Code § 12.35.

**B.      Section 6.06's Interference with and Chilling Effect on Plaintiffs-Appellees' Core Activities.**

Plaintiffs-Appellees are both membership-based nonprofit organizations whose core activities include Get Out the Vote ("GOTV"), voter registration, voter education and, prior to S.B.1, mail-voting assistance services. They accomplished these activities via paid staff, members, or volunteers, or by compensating those individuals for their services with food, beverages, T-shirts, and the like. Because Section 6.06 exposes Plaintiffs-Appellees and their members to criminal liability for providing compensated mail-voting assistance, however, they and their members have stopped assisting mail voters. They have also been forced to divert their time and other resources away from their other core activities in order to mitigate Section 6.06's real-world impact on themselves, their members, and the public.

OCA-GH is a membership-driven organization with hundreds of both dues-paying and volunteer members. ROA.37688, 40487-40488. Its mission is to "embrace the hopes and aspirations" of Asian American and Pacific Islanders ("AAPIs") in the Greater Houston area through civic engagement, participation,

education, leadership, and the promotion of cultural heritage. ROA. 40490-40491, 40486-40487, 37688-37689. The AAPI community it serves, as well as its membership, range in age from middle schoolers to 80-plus seniors, including many recently-naturalized and limited English proficient voters. ROA.40488, 40490-40492. Many of its volunteers are young people because a "fundamental part of [its] mission is to educate and develop a po[o]l of future leaders." ROA.40522.

OCA-GH's civic engagement work includes a broad array of GOTV, voter registration, voter education, and community outreach activities. ROA.40490-40491. Before S.B.1, this included regularly hosting in-person voting-related events like AAPI candidate meet-and-greets and candidate forums. ROA.37688-37689, 40490-40491, 40494-40503. Hundreds of people attended these events, some of whom were limited English proficient seniors bringing their mail ballots to seek (and receive) language assistance from OCA-GH, which set up tables with bilingual members or volunteers at each event for that purpose. ROA.37688-37689, 40488, 40495-40503. OCA-GH also engaged in door-to-door canvassing and trained its canvassers to provide language assistance to voters who brought their mail ballots to the door. ROA.37689, 40503-40504. It even provided language assistance while tabling at polling places and conducting exit-polling because senior voters occasionally brought their mail ballots "wanting help right then and there," especially after learning that they would otherwise have to "go through the whole

process" of cancelling the mail ballot to vote in person. ROA.40533, 40505-40507. OCA-GH accomplished these activities through paid staff, paid members, and paid volunteers, as well as by giving members or volunteers bottles of water, food, Gatorade, or T-shirts in exchange for their services. ROA.37689, 40488-40489, 40494-40495, 40515, 40518-40519, 40531. Historically, OCA-GH has been the largest provider of Chinese language assistance in the Greater Houston area. ROA.40508-40509.

LWVTX is a statewide organization with over 3,000 dues-paying members, including members in Harris and Travis Counties, whose mission is "to empower voters and defend democracy." ROA.37689, 40381, 40386-40388. It comprises approximately 34 "local leagues," including multiple leagues in Harris County. ROA.40386-40387. Like OCA-GH, LWVTX works to register new voters, GOTV, ensure that voters' ballots count, educate voters, help voters vote by mail, and provide voter assistance when requested. ROA.37689, 40381-40391, 40394-40395, 40407-40408. It has many members who are over 65 and/or have disabilities, some of whom use assistors to help them vote by mail. ROA.40388-40390. It also has members who assist others with mail-voting, including voters who are family, friends, in nursing homes, in assisted living centers, or in homes where voters with disabilities live. ROA.37690, 40390-40391. During these interactions, LWVTX members or other voters receiving assistance often offer benefits like tea, coffee, or

water to the LWVTX members providing assistance. ROA.37690, 40390-40393. LWVTX's work is particularly important to older members and voters, and members and voters with disabilities, in the communities that it serves. ROA.40388-40389, 40393.

Since S.B.1's passage, OCA-GH has entirely ceased providing mail-voting assistance, ROA.37726, 40527-40528, because, in its representative's words, "[w]e compensate people to help people," and it "would be illegal and unconscionable" to stop paying its staff and members for their labor. ROA.40515, 40518. Because OCA-GH is no longer available to help those who otherwise would have asked it for language assistance, those voters won't "necessarily be able to get help in the language that they need[]." ROA.40509. This also means that OCA-GH no longer recruits voter assistors, which in turn makes it more difficult to retain volunteers, because when "most people come to volunteer, they want to have that feel-good feeling of having helped somebody" versus "just . . . stuff[ing] some envelopes or stuff[ing] some bags." ROA.40525-40526. Now that OCA-GH members and volunteers "no longer have that opportunity to have that kind of experience" assisting elderly, limited English proficient, and/or disabled voters, they are less likely to volunteer again in the future. ROA.40526.

In the meantime, Section 6.06 has forced OCA-GH to continually train its remaining members and volunteers to *not* provide assistance—for example, during

every general, weekly, and morning training for canvassing, "because you may have different people going out." ROA.40524-40525. This continual need for training, along with "[t]he time it takes to replan and redesign our programs, our trainings, of how to approach [our activities] in a way that we don't put anybody at risk of being a criminal," is an ongoing and "complete and utter . . . energy-draining time suck." ROA.40525. OCA-GH is particularly concerned that if even one of its members, especially a student member, were prosecuted under S.B.1, "every Asian paper would write about [it,]" it would ruin the student's future, and "[i]t would decimate" the organization's ability "to build for our future community." ROA.40526-40527. S.B.1 has "made it nearly impossible" for OCA-GH to accomplish its mission. ROA.40527. If not for S.B.1, OCA-GH and its members would "absolutely" return to providing mail-voting assistance. ROA.40528.

Similarly, because of Section 6.06, assisted care centers that have historically welcomed LWVTX members as mail-voting assistors have requested LWVTX no longer send members to provide that assistance. ROA.37724-37725, 40393. Voters in these facilities are now "unable to get the assistance of their choice because of [those facilities'] concern with this change to the law" and LWVTX is "not able to provide this service" and "empower voters" pursuant to its mission. ROA.40393, 40427. LWVTX is also concerned that under Section 6.06's capacious definition of 'compensation,' when LWVTX members or other voters receiving assistance from

an LWVTX member offer the latter benefits like tea, coffee, or water, both parties will become criminals. ROA.37724-37725, 40390-40393.

To mitigate that risk, LWVTX has created educational materials like PowerPoints, handouts, videos, and social media regarding Section 6.06, and continues to educate its members and the public about the statute through discussions with leaders of local leagues and other organizations. ROA.40384, 40393-40394. It has also hired a communication staff person to "help with doing all the social media and getting out the newsletters" regarding Section 6.06, and had to indefinitely postpone a study on election security because of the resources diverted to addressing Section 6.06's impact on its members and the public. ROA.40404-40405. These diverted resources come at the expense of its "normal activities" of "trying to help young members who are new to voting and explain the voting process to them and trying to encourage them to get out and vote and be a part of our democracy." ROA.40394-40395. It also takes money and "time away from other activities that [LWVTX] would normally be doing . . . to make sure that we protect[] our members and the voters in our communities that we serve." ROA.40394.

Nonetheless, LWVTX makes these efforts to "protect [its] members because it's very important and people are not going to want to join and provide the services that [LWVTX] do[es] if there is a chance that they're going to be criminally prosecuted." ROA.40403-40404. This has made it "more difficult for [LWVTX] to

be able . . . to support [its] mission of empowering voters in Texas . . . voters who have maybe voted all their lives and now wouldn't be able to participate in an election because they needed assistance." ROA.40405; *see also* ROA.40395.

Plaintiffs-Appellees are not alone in ceasing their voter assistance efforts. Other plaintiff-organizations, like LUPE, MABA, and LULAC, are similarly no longer willing to provide voting assistance because members fear that they could be subject to prosecution under Section 6.06. ROA.37725-37726.

### C. The HCDA's Role in Enforcing Section 6.06.

The HCDA's "authority to bring criminal prosecutions on behalf of the State is derived from the Texas constitution[.]" *Mi Familia Vota v. Ogg*, 105 F.4th 313, 328 (5th Cir. 2024) (citing *State v. Stephens*, 663 S.W.3d 45, 52 (Tex. Crim. App. 2021)); Tex. Const. art. V, § 21. Specifically, he has the duty to "represent the state in all criminal cases in the district courts of [his] district and in appeals from those cases." Tex. Code Crim. Pro. art. 2A.102; *see also* Tex. Gov't Code § 43.180; ROA.30329 (HCDA's stipulation that he "indisputably has the statutory authority within the boundaries of Harris County to prosecute cases under any and all Texas statutes that set out criminal offenses").

The TEC requires that "[i]f two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory,

11

the county or district attorney *shall* investigate the allegations." TEC § 273.001(a) (emphasis added). A recent change to Texas law—effective September 1, 2023— also provides that local prosecutors like the HCDA may be removed from office if they adopt any policy "of refusing to prosecute a class or type of criminal offense under state law[.]" Tex. Local Gov't Code §§ 87.011(3)(B), 87.015; ROA.37701.[1] The HCDA thus stipulated at trial that his office

> has not (1) adopted a policy refusing to prosecute any class or type of criminal offenses under state law, (2) instructed law enforcement to refuse to arrest individuals suspected of committing any class or type of offense under state law, or (3) permitted an assistant prosecutor to take either of the foregoing actions.

ROA.30330.

Unsurprisingly, then, the HCDA has not disavowed prosecutions under Section 6.06. His office has also previously prosecuted alleged violations under the TEC, including under provisions that were amended by S.B.1, and has jointly prosecuted election-related cases alongside the AG. ROA.37700-37701 & nn. 19-20; ROA.42859-42860, 42863-42685 (testimony regarding prosecutions by HCDA); ROA.65861 (HCDA's interrogatory responses entered into evidence);

---

[1] It is an exception to removal if the prosecutor's refusal to prosecute a class or type of criminal offense is pursuant to an injunction or other court order. Tex. Local Gov't Code § 87.011(3)(B)(i).

ROA.65971, 65979 (AG spreadsheet showing prosecutions of individuals in Harris County), 65977, 65982 (noting that "c" indicates involvement of local prosecutor).

### D. Plaintiffs-Appellees' Lawsuit and the Trial.

Plaintiffs-Appellees filed their operative complaint on January 18, 2022. ROA.6369-6446. They brought preenforcement challenges against the AG, Secretary, Travis County Clerk, Harris County Elections Administrator, and Travis and Harris County District Attorneys, all in their official capacities, alleging that S.B.1 Section 6.06 violates and is preempted by Section 208 of the VRA. ROA.6429-6431. Plaintiffs-Appellees' suit was consolidated with those brought by several other plaintiff-organizations, who in their Section 208 challenges to Section 6.06 sued the State of Texas, AG, Secretary, and various other local elections officials and prosecutors. Shortly thereafter, several Republican parties and committees intervened to defend Section 6.06 alongside the AG and Secretary. ROA.10405-10433.

The District Court held a six-week bench trial beginning September 11, 2023. On October 11, 2024, the Court issued an order concluding that Section 208 of the VRA preempts S.B.1 Section 6.06 and permanently enjoined the State of Texas, AG, Secretary, and their agents, including local prosecutors, from enforcing it. ROA.37766-37781.[2] The AG and Secretary ("State-Appellants"), Republican

---

[2] The District Court concluded that the local election official defendants do

13

parties and committees ("Intervenor-Appellants"), and HCDA each appealed that order. On October 18, 2024, State-Appellants and Intervenor-Appellants sought an emergency stay in this Court. *See La Union Del Pueblo Entero v. Abbott*, No. 24-50826, Doc. 20 (5th Cir. 2024). This Court granted a temporary administrative stay that same day, but then dissolved the stay on October 20, 2024, after the District Court stayed its injunction until after the November 2024 general election. *Id.* at Doc. 34. State-Appellants and Intervenor-Appellants renewed their motion for a stay pending appeal on November 5, 2024. *Id.* at Doc. 70. That motion remains pending.

## SUMMARY OF THE ARGUMENT

The HCDA does not appeal the District Court's order on the merits, but instead challenges Plaintiffs-Appellees' Article III standing and the propriety of the District Court's injunction.

The District Court correctly concluded that Plaintiffs-Appellees have standing to bring their Section 208 challenges to S.B.1 Section 6.06 against the HCDA. Specifically, the undisputed record establishes that Section 6.06 has caused Plaintiffs-Appellees injury in fact in several distinct ways: coercing them (and their members) into no longer providing voting assistance under threat of prosecution; perceptibly impairing their core activity of providing voting assistance; and

---

not have authority to enforce Section 6.06 and dismissed the claims against them for lack of standing. ROA.37745-37746, 37781.

perceptibly impairing their *other* core activities, such as their GOTV, voter registration, and voter education services, by making it harder to retain volunteers and forcing them to divert resources away from those activities to instead counteract Section 6.06's effect on their members and the public. These injuries are at least in part traceable to the HCDA and redressable by enjoining his enforcement of Section 6.06 because Plaintiffs-Appellees operate, and the HCDA is responsible for enforcing criminal law, in Harris County.

The HCDA's argument that absent a 'constitutional claim' Plaintiffs-Appellees must identify actual investigations or prosecutions under Section 6.06 before challenging it is incorrect under both Supreme Court and this Court's precedent. Nor are Plaintiffs-Appellees' diversion-of-resources injuries 'self-inflicted,' as he argues; rather, it would be antithetical to Plaintiffs-Appellees' missions to fail to take such action in the face of a law like Section 6.06. That fact also renders those injuries entirely predictable.

The District Court also properly enjoined the State of Texas and its agents from enforcing Section 6.06, including by enjoining local prosecutors like the HCDA from deputizing the AG or seeking his appointment as a local prosecutor *pro tem*. The HCDA contends that this injunction improperly binds non-parties, but that position is meritless. Most obviously, the HCDA is a party defendant here and has notice of the injunction. Further, the State of Texas is a defendant, and as this Court

has previously found and the HCDA has asserted numerous times, local prosecutors are agents of the State when enforcing State criminal laws like Section 6.06. Finally, the District Court barred local prosecutors from deputizing the AG or seeking his appointment *pro tem* because trial evidence showed that these two processes are regularly utilized by local prosecutors and the AG to prosecute election-related cases. Indeed, counsel for the HCDA discussed both processes with an AG prosecutor-witness at trial, and his office has itself utilized the *pro tem* process in Texas courts. The HCDA's position now—that these processes are unsupported by Texas law—is simply incorrect.

# ARGUMENT

The HCDA does not challenge the District Court's ruling on the merits of Plaintiffs-Appellees' Section 208 claims. He instead argues that Plaintiffs-Appellees lack Article III standing to bring their claims against him, and that the District Court's injunction improperly binds non-parties and is otherwise unsupported by Texas law. Neither argument is persuasive.

## I.   PLAINTIFFS-APPELLEES HAVE STANDING AGAINST THE HCDA

To establish Article III standing a plaintiff must show they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Membership-

based organizations like Plaintiffs-Appellees "can establish an injury-in-fact through either of two theories": organizational standing, which requires the organization "meet[] the same standing test that applies to individuals," or associational standing, which "is derivative of the standing of the [organization's] members." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (cleaned up).

The undisputed record in this case establishes that Section 6.06 has caused Plaintiffs-Appellees several distinct injuries in fact, each of which is sufficient for Article III standing. Each of these injuries is at least partially caused by the HCDA's enforcement of Section 6.06 and redressable by enjoining that enforcement.

First, as the District Court correctly concluded, Plaintiffs-Appellees' "conduct is being directly regulated by Section 6.06[, which] exposes the OCA Plaintiffs (and their members) to criminal liability," resulting in an "inability to provide mail ballot assistance." ROA.37745 & n.41. This coerced inaction under threat of prosecution constitutes injury in fact. *See Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 159 (2014). The same reasoning also demonstrates Plaintiffs-Appellees' standing to bring their claims against the HCDA on behalf of their members, who are exposed to the same criminal liability under Section 6.06.

Second, as the District Court also concluded, Section 6.06 causes "a perceptible impairment of one of Plaintiff[-Appellees'] core services—voter assistance." ROA.37736. This interference with one of Plaintiffs-Appellees "core"

services also constitutes injury in fact. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)).

Third, Section 6.06 has caused OCA-GH to stop recruiting voter assistors, leading to difficulty retaining volunteers to engage in its *other* core services, like its GOTV, voter registration, and voter education services. Both Plaintiffs-Appellees have also been forced to divert resources to counteracting and mitigating Section 6.06's effects on their members and the public to the detriment of those other core services. Section 6.06's interference with these other core activities again constitutes injury in fact. *See id.*; *see also Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 354 (5th Cir. 2023) (organization can show injury where defendant's actions have "perceptibly impaired its ability to achieve its mission").

The HCDA raises several objections to these commonsense conclusions, but each boils down to his position that Plaintiffs-Appellees can *never* establish injury in fact to bring their claims against him unless they can show that he has already investigated or prosecuted alleged violations of Section 6.06. HCDA Br. 22-26. Well-established precedent shows he is incorrect.

**A.** **Plaintiffs-Appellees have established both organizational and associational injury in fact based on a credible threat of prosecution.**

Plaintiffs-Appellees have demonstrated organizational and associational injury in fact because both they and their members have "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [Section 6.06], and there exists a credible threat of prosecution thereunder." *SBA List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Overall, the *SBA List/Babbitt* framework "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review, as courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation v. Tanner,* 824 F.3d 321, 323 (2d Cir. 2016) (cleaned up); *accord Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021) (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

Under this framework Plaintiffs-Appellees are not required to "bet the farm" by violating Section 6.06 and waiting to see if the HCDA will prosecute them. *See Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). Rather, they can establish injury in fact even though they have "not yet violated the statute" and even though it has "never been applied" because the HCDA has "not disavow[ed] prosecution if [they] engage[] in their intended course of action." *See Seals*, 898 F.3d at 592. That

Plaintiffs-Appellees have "alleged they want[] to do something . . . that the state law prohibit[s]" is "sufficient injury to justify their Article III standing[,]" even though "'the record does not disclose that any one of them has been prosecuted, or threatened with prosecution.'" *In re Gee*, 941 F.3d 153, 161 n.3 (5th Cir. 2019) (citing *Bolton*, 410 U.S. at 188-189).

For example, in *National Rifle Association of America, Inc. v. McCraw*, this Court held that the existence of two Texas laws that prohibited the plaintiff-organization's members from carrying a handgun was sufficient to create a credible threat of prosecution by the director of the Texas Department of Public Safety. 719 F.3d 338, 345 (5th Cir. 2013). Similarly, in *Consumer Data Industry Association v. Texas through Paxton* this Court held that a plaintiff-organization bringing a preenforcement preemption challenge to state credit reporting requirements had established a credible threat of enforcement by the Texas AG where the statute "was enacted *less than five years* ago," even though he had never enforced the statute and had not "threatened any of its members with enforcement, issued warning letters, or formally announced an intent to enforce the statute[,]" but also "*never* stated or even suggested that the statute would *not* be enforced in the future." No. 21-51038, 2023 WL 4744918, at *1, *4-5 (5th Cir. July 25, 2023).[3]

---

[3] *See also KVUE, Inc. v. Moore*, 709 F.2d 922, 928-931 (5th Cir. 1983), *aff'd sub nom. Tex. v. KVUE-TV, Inc.*, 465 U.S. 1092 (1984) (permitting television broadcaster to bring preenforcement preemption challenge to law setting political

Plaintiffs-Appellees have established injury in fact under this framework. "[T]heir conduct is being directly regulated by Section 6.06," which "exposes [them] (and their members) to criminal liability" if they continue to provide the same mail-voting assistance that they have in the past. ROA.37745 & n.41. "As a result, Plaintiffs[-Appellees] have stopped assisting mail voters." ROA.37745. Indeed, as the District Court observed, "'[w]hen the suit is one challenging the legality of government action or inaction' and 'the plaintiff is himself an object of the action (or forgone action) at issue[,] . . . there is ordinarily little question that the action or inaction has caused him injury.'" ROA.37731, 37745 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-562 (1992)); *see, e.g.*, *League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 706-708 & n.3 (N.D. Ohio 2024) (finding that organization had standing to bring Section 208 claim against local prosecutor in challenge to criminal law that directly regulated its provision of mail-voting

---

advertising rates and disclosure requirements, even though "the statute ha[d] not been enforced and . . . there [was] no certainty that it [would] be," but where county attorney "would not rule out prosecution"); *Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*, 940 F.2d 73, 75-76 (4th Cir. 1991) (finding that plaintiff established injury in fact to bring preenforcement preemption challenge to recently enacted law regulating petroleum product franchises where Virginia AG had not disavowed enforcement); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1360 (10th Cir. 1981) (finding that sellers of drug paraphernalia faced credible threat of prosecution under state law even though no criminal prosecution under it had ever been brought).

assistance, and under which no enforcement actions had been filed, because prosecutor had not disavowed enforcement).

Specifically, the undisputed record shows that OCA-GH and its members[4] had, until Section 6.06's recent enactment, provided its members and the communities they serve with compensated mail-voting assistance,[5] and would

---

[4] For example, Deborah Chen is a paid staff member of OCA-GH who frequently provided mail-voting language assistance during OCA-GH events prior to Section 6.06's enactment but has since stopped entirely due to the threat of prosecution. She too would return to providing language assistance to voters if not for S.B.1. ROA.40488-40489, 40498, 40502, 40528, 40533.

[5] State-Appellants do not contest Plaintiffs-Appellees' standing to bring their challenges to Section 6.06 against the AG and Secretary. *See* State Br. 16-25. On the merits, however, they attempt to minimize Section 6.06's coverage by claiming that it does not "prevent individuals . . . with paid jobs, such as canvassing, from assisting voters in due course." State Br. 44. This position is internally inconsistent; for example, State-Appellants claim that Section 6.06 "merely prevents complete strangers from seeking out voters to assist while being specifically paid to do so," State Br. 44, but it is entirely unclear why that concern dissipates when the exact same conduct is undertaken by someone paid both to canvass *and* to provide assistance when asked.

Moreover, it strains logic to suggest that OCA-GH's paid staff members were not compensated 'for' providing language assistance prior to S.B.1 even though doing so during OCA-GH's voting-related events was a "part of paid staff members' duties." ROA.40494-40495; ROA.40415 ("We compensate people to help people."). In addition to paid staff, OCA-GH also specifically recruited and trained bilingual members and volunteers to provide language assistance and other services while tabling during candidate forums and meet-and-greets, and while canvassing, and compensated those individuals for those services either in pay or in small benefits like food, drinks, or T-shirts. ROA.40498-40503, 40503-40504, 40515, 40518-40519, 40531. The line State-Appellants attempt to draw—that Section 6.06 applies only to situations in which the *only* thing a person is being compensated for is mail-voting assistance—is illogical, unworkable, and finds no support in the statute's text. Indeed, the former Chief of the AG's Election Integrity confirmed that Section 6.06

"absolutely" continue doing so today but for the statute's proscription of such conduct. ROA.40528, 37688-37689, 40488-40491, 40494-40509, 40515, 40518-40519, 40531, 40533. It also shows that LWVTX and its members want to but cannot continue to provide mail-voting assistance at certain assisted care centers because of Section 6.06, ROA.37689, 37724-37725, 40393, 40405, 40427, and that LWVTX fears that its members and those they assist with mail voting will violate Section 6.06 in the common scenario that one or the other offers or accepts benefits like coffee, water, or tea, for that assistance. ROA.37690, 37724-37725, 40388-40393.

It is also undisputed that the HCDA has not disavowed Section 6.06's enforcement—indeed, he *cannot* disavow its enforcement without risking removal from office. *See* ROA.37701, 37741, 30330; Tex. Local Gov't Code §§ 87.011(3)(B), 87.015. On top of that, the HCDA has prosecuted Election Code violations in the past, including under provisions amended by S.B.1, ROA.37700-37701 & nn.19-20, 37741 & n.35; ROA.42859-42860, 42863-42685, 65861, 65971, 65977, 65979, 65982. He is also required to investigate alleged violations of Section 6.06 under certain circumstances. *See* TEC § 271.001; *Mi Familia Vota v. Ogg*, 105 F.4th 313, 331 (5th Cir. 2024) (noting that TEC § 271.001 "may be relevant for

---

"'appear[s] to apply to [the] scenario' in which a paid canvasser for a nonprofit Get Out the Vote organization engages with voters and provides mail ballot assistance at the voter's request." ROA.37724 (citing ROA.42794-42796).

standing"). These circumstances present a clear and credible threat of prosecution if Plaintiffs-Appellees engage in their desired conduct.

The HCDA's offer to "stipulate to the non-enforcement of any of the challenged S.B.1 provisions pending [this] litigation" does not undermine this conclusion. HCDA Br. 4-5. First, the offered stipulation is irrelevant because it is not in effect. HCDA Br. 5. Second, even if it were, the District Court correctly held that "to conclude that the Private Plaintiffs lack standing to challenge the provisions that create or implicate criminal offenses based on the purported absence of any enforcement of these laws *for now*, would improperly and permanently deprive the Private Plaintiffs of much-needed relief *later*." ROA.10911. "In other words, that [the HCDA is] willing to offer to stipulate to non-enforcement does *not* help prove the point" that Plaintiffs-Appellees do not face a credible threat of prosecution. ROA.10911; *accord Ogg*, 105 F.4th at 330-331 (noting that the District Court's "point about the [HCDA's proffered] stipulation is well taken in the standing context," and that the HCDA's "failure to disavow prosecutions following litigation . . . may be relevant for standing." (cleaned up)).

The HCDA further resists this outcome on the grounds that Plaintiffs-Appellees may not avail themselves of the *SBA List/Babbitt* credible threat framework because they have brought a "*statutory* cause of action" rather than a "*constitutional* claim." HCDA Br. 18-22. He also suggests that the *SBA List/Babbitt*

framework applies only in the context of First Amendment challenges. HCDA Br. 20. He is wrong on both counts.

*First*, the HCDA's focus on whether Plaintiffs-Appellees have asserted a 'constitutional claim' or a 'statutory cause of action' is misguided. The relevant inquiry is whether Plaintiffs-Appellees' desired but prohibited conduct is "arguably affected with a constitutional *interest*," not whether they have asserted a constitutional *claim*. *SBA List*, 573 U.S. at 159 (emphasis added). This is not a difficult requirement to meet; the test "conspicuously include[s] the word 'arguably,'" which the Supreme Court has stated in another context "indicate[s] that the benefit of any doubt goes to the plaintiff." *See Match-E-Be Nash-She-Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 225 (2012) (zone-of-interests analysis).

Plaintiffs-Appellees satisfy this requirement here. For one, their desired but proscribed conduct here—the provision of mail-voting assistance—is 'arguably affected with a constitutional interest' in the right to vote, which is "a fundamental political right . . . preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *see, e.g.*, *LaRose*, 741 F. Supp. 3d at 708 (holding that "[t]he nature of the law" challenged under Section 208, by dissuading people from providing voting assistance, and disabled voters from voting, was akin to a law which "might prevent a person from engaging in their First Amendment right"); *cf. Voting for Am., Inc. v.*

*Steen*, 732 F.3d 382, 389 (5th Cir. 2013) (accepting that "'helping' voters to fill out their [voter registration] forms" constitutes "constitutionally protected speech").

For another, because Section 208 of the VRA preempts Section 6.06, Plaintiffs-Appellees' desired conduct is also 'arguably affected with a constitutional interest' under the Supremacy Clause. *See* U.S. Const. art. VI, § 2. Courts thus routinely find the constitutional interest requirement satisfied in preenforcement, preemption challenges. *See, e.g.*, *Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1015 (9th Cir. 2013), *cert. denied,* 134 S. Ct. 1876 (2014) (allowing challenge to immigration-related law).[6]

---

[6] *See also, e.g.*, *E. F. Transit, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 2016 WL 4761438, at *8 (S.D. Ind. Sept. 13, 2016), *rev'd in part on different grounds sub nom. E.F. Transit, Inc. v. Cook*, 878 F.3d 606, 610 (7th Cir. 2018) (district court finding, and circuit court upholding, that plaintiff met this requirement in challenge to state laws regulating beer and liquor wholesaling); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (allowing challenge to local anti-gambling ordinance); *United States v. Texas*, No. EP-21-CV-173-KC, 2024 WL 3593683, at *3 (W.D. Tex. July 30, 2024) (allowing challenge to Texas governor's executive order regarding the transportation of migrants); *see also, e.g.*, *Consumer Data Indus. Ass'n v. Texas through Paxton*, No. 21-51038, 2023 WL 4744918, at *4-6 (5th Cir. July 25, 2023) (appearing to take requirement for granted in applying *SBA List/Babbitt* framework to preenforcement, preemption challenge to state credit reporting requirements); *Ga. Latino All. for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1258 (11th Cir. 2012) (characterizing plaintiffs' claim that federal immigration law preempted state immigration law as a "preenforcement constitutional challenge to a state statute" and applying *SBA List's/Babbitt's* credible threat framework to find standing); *Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (similar, with respect to challenge of state regulations of petroleum product franchises); *cf. Kentucky v. Yellen,* 54 F.4th 325, 336 (6th Cir. 2022) (finding that general "federalism principles" provided the arguable constitutional interest for preenforcement standing); *Bond v. United States,* 564 U.S.

*Second*, as the cases discussed above make clear, the HCDA is wrong to suggest that the *SBA List/Babbitt* test applies only in the context of First Amendment challenges. Again, that test asks whether the conduct a plaintiff wishes to engage in is "arguably affected with a *constitutional interest*," not a 'First Amendment interest.' *SBA List,* 573 U.S. at 159 (emphasis added). Thus, while "[m]any of the cases that rely on general fears of enforcement involve First Amendment speech or religion claims . . . similarly sensitive values may do as well." 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.5 (3d ed. 2021) (collecting cases); *cf. Seals*, 898 F.3d at 592 ("[T]he requirements of [Article III] standing are [not] relaxed in the First Amendment context.").[7]

Accordingly, this Court has applied the *SBA List/Babbitt* framework in various contexts implicating non-First Amendment constitutional interests. *See, e.g.*, *Nat'l Rifle Ass'n of Am., Inc.* 719 F.3d at 345 (Second Amendment challenge); *Texas v. Yellen*, 105 F.4th 755, 764–65 (5th Cir. 2024) (spending clause and Tenth Amendment anti-commandeering challenges); *Consumer Data Indus. Ass'n*, 2023

---

211, 220 (2011) (explaining that individuals may "assert injury from governmental action taken in excess of the authority that federalism defines" and "vindicate [their] own constitutional interests" under the Tenth Amendment).

[7] *See also Seegars v. Gonzales*, 396 F.3d 1248, 1254 (D.C. Cir. 2005) ("[T]he idea of a special First Amendment rule for preenforcement review of statutes seems to have no explicit grounding in Supreme Court decisions."); *id.* at 1257 (Sentelle, J., dissenting) ("I know of no hierarchy of Bill of Rights protections that dictates different standing analysis.").

WL 4744918, at *4 (preemption challenge); *see also, e.g.*, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 & n.4 (2d Cir. 2015) (Due Process challenge); *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486, 488 (9th Cir. 2024) (Contracts Clause, Equal Protection Clause, Due Process Clause, and Takings Clause challenges).

But even were Plaintiffs-Appellees' desired conduct not arguably affected with a constitutional interest, that would not prevent them from establishing standing. "The Supreme Court has not limited standing to pursue pre-enforcement challenges only to plaintiffs intending conduct arguably affected with a constitutional interest." *Knife Rights, Inc.*, 802 F.3d at 384 n.4 (citing *MedImmune, Inc.*, 549 U.S. at 122-25, 128-31). It is enough to show, as here, that "[t]he plaintiff's own action (or inaction) in failing to violate the law"—their "threat-eliminating behavior"—has been "effectively coerced." *MedImmune, Inc.*, 549 U.S. at 129 (recognizing standing to challenge patent validity based on clear threat of action for breach of license or infringement); *see In re Gee*, 941 F.3d at 161 n.3.[8]

---

[8] *See also, e.g.*, *New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 51 (1st Cir. 2021) (permitting preenforcement action seeking declaration that the federal Wire Act does not apply to state lotteries in part because "the state will enforce its own non-moribund criminal laws, absent evidence to the contrary" (citation omitted)); *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 958 (8th Cir. 2009) (permitting preenforcement action seeking declaration that cultivation of industrial hemp did not violate federal law where plaintiffs had "not been subjected to or threatened with federal criminal prosecution"); *New Hampshire Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 3 (1st Cir. 2000) (similar).

The HCDA's final gambit is to argue that Plaintiffs-Appellees cannot establish injury in fact because their members could simply "avoid any violations of criminal law" by asking a voter to "designate him or her as an attendant before providing assistance" pursuant to Section 6.06's exception for "attendant[s] . . . previously known to the voter." HCDA Br. 25 (citing TEC § 86.0105(f)). But it is entirely unclear who, under what circumstances, qualifies as an "attendant" who is "previously known to the voter," neither of which are defined in the statute. *See* TEC § 86.0105; *see also* ROA.37683 (finding that the Secretary has not published any guidance or training on how to interpret these terms).

Moreover, following the HCDA's proposed strategy would require Plaintiffs-Appellees to rely on his interpretation of Section 6.06 as containing a magic-phrase loophole that entirely nullifies its coverage—a position that neither State-Appellants nor Intervenor-Appellants have endorsed in their briefs. And, tellingly, the HCDA places the burden of proving the correctness of that interpretation on Plaintiffs-Appellees, and does not himself disavow prosecution under those (or any other) circumstances. This "mere litigation position" is entitled to no weight, *Siders v. City of Brandon*, 123 F.4th 293, 300 (5th Cir. 2024) (citation omitted), especially where the HCDA could simply "change his mind and prosecute [Plaintiffs-Appellees]" later, *Seals*, 898 F.3d at 593. The Court should reject this argument.

Plaintiffs-Appellees have therefore demonstrated organizational and associational injury in fact to both themselves and their members based on their coerced inaction—not providing mail-voting assistance—under threat of prosecution for violating Section 6.06.[9]

**B.      Plaintiffs-Appellees have established organizational injury in fact because Section 6.06 directly affects and interferes with their core activities.**

Plaintiffs-Appellees have also established injury in fact because Section 6.06 "directly affect[s] and interfere[s] with [their] core business activities" or, said another way, "perceptibly impair[s]" those activities. *FDA v. Alliance for Hippocratic Medicine* ("*AHM*"), 602 U.S. 367, 395 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). This is true in several different ways.

First and most obviously, and as the District Court concluded, Section 6.06 causes a "perceptible impairment of one of Plaintiffs[-Appellees'] core services—

---

[9] The HCDA repeatedly invokes the Supreme Court's language in *Clapper v. Amnesty International USA* that a plaintiff must demonstrate that an injury is "'*certainly impending*' rather than merely '*possible*'" to argue that Plaintiffs-Appellees have not suffered injury in fact due to a credible threat of prosecution. *E.g.*, HCDA Br. 23 (quoting 568 U.S. 398, 409 (2013) (emphasis in brief)). First, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending' *or* there is a 'substantial risk that the harm will occur.'" *SBA List*, 573 U.S. at 158 (emphasis added) (quoting *Clapper*, 568 U.S. at 408, 431 & n.5). Second, the Supreme Court explicitly took this requirement into account in holding that where the *SBA List* test is met, "threatened enforcement [is] sufficiently imminent." *See SBA List*, 573 U.S. at 158-159. Plaintiffs-Appellees have thus met the burden set out in *Clapper*, and reaffirmed in *SBA List*, for the reasons discussed.

voter assistance." ROA.37736. Because of Section 6.06, OCA-GH no longer provides mail-voting assistance at all, ROA.37726, 40527-40528, while LWVTX no longer sends volunteer mail-voting assistors to assisted care centers. ROA.37724-37725, 40393, 40427.

Section 6.06 also injures Plaintiffs-Appellees by interfering with their *other* core activities, such as their GOTV, voter registration, and voter education services—that is, "perceptibly impair[s] [their] ability to achieve [their] mission"—in two additional ways. *See Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.* ("*LFHAC*"), 82 F.4th 345, 354 (5th Cir. 2023).

*First*, OCA-GH no longer recruits voter assistors, which in turn negatively impacts its ability to retain volunteers, because when "most people come to volunteer, they want to have that feel-good feeling of having helped somebody" versus "just . . . stuff[ing] some envelopes or stuff[ing] some bags." ROA.40525-40526. Members and volunteers who "no longer have that opportunity to have that kind of experience" are less likely to volunteer again in the future. ROA.40526. This reduces the pool of volunteers available to carry out OCA-GH's mission to embrace the hopes and aspirations of AAPIs through civic engagement work such as canvassing, tabling at polling places, exit-polling, and hosting events like candidate forums and AAPI meet-and-greets, ROA.40525-40526, 37688-37689, 40486-

40487, 40490-40491, 40494-40508, 40533, meaning it can "reach fewer people" and is "less successful in achieving [that] mission," *LFHAC*, 82 F.4th at 354.

*Second*, Plaintiffs-Appellees have been forced to divert resources away from these other core activities to instead "counteract the effect of [Section 6.06] . . . not with a view toward litigation, but toward mitigating its real-world impact on [their] members and the public," thereby "consum[ing their] time and resources in a way they would have been spent absent the Texas law." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). For example, Section 6.06 has forced OCA-GH to continually train its remaining members and volunteers to *not* provide assistance—during every general, weekly, and morning training for canvassing— "because you may have different people going out." ROA.40524-40525. This continual need for training, along with "[t]he time it takes to replan and redesign our programs, our trainings, of how to approach [our activities] in a way that we don't put anybody at risk of being a criminal," is an ongoing and "complete and utter . . . energy-draining time suck." ROA.40525.

Similarly, LWVTX has had to create educational materials like PowerPoints, handouts, videos, and social media regarding Section 6.06, and to educate its members and the public about the statute through discussions with leaders of local leagues and other organizations. ROA.40384, 40393-40394. This takes money and "time away from other activities that [LWVTX] would normally be doing" to make

sure that it is able to "protect[] our members and the voters in our communities that we serve." ROA.40394. To help shoulder this burden, LWVTX has had to hire a communication staff person to "help with doing all the social media and getting out the newsletters" regarding Section 6.06. ROA.40404-40405.

These diversions of resources constitute injury in fact because they result in Plaintiffs-Appellees "reach[ing] fewer people or otherwise be[ing] less successful in achieving [their] missions." *LFHAC*, 82 F.4th at 354; ROA.40527 (S.B.1 has "made it nearly impossible" for OCA-GH to accomplish its mission); ROA.40405 (S.B.1 has made it "more difficult for [LWVTX] to be able . . . to support [its] mission of empowering voters in Texas"). For example, as a result of this training, OCA-GH no longer has meaningful interactions with voters while canvassing, because it has trained its canvassers to not provide assistance and not ask questions. ROA.40523. Similarly, LWVTX has had to turn away from its "normal activities" of "trying to help young members who are new to voting . . . and trying to encourage them to get out and vote," as well as indefinitely postpone a study on election security, to engage in these efforts to educate its members and the public about potential criminal liability under Section 6.06. ROA.40394-40395, 40404.[10] This Court has previously

---

[10] The HCDA's reliance on *LFHAC* to suggest that Plaintiffs-Appellees have merely shuffled resources between various on-mission activities, without any consequent impairment of their ability to achieve their missions, is therefore misplaced. HCDA Br. 24.

recognized, based on similar facts, that OCA-GH—whose mission has not changed—had standing to bring a Section 208 challenge to a different provision of the Texas Election Code. *OCA-Greater Houston*, 867 F.3d at 610. It should reach the same conclusion today with respect to Plaintiffs-Appellees.

The HCDA nonetheless counters, in reliance on *AHM*, that these injuries are "self-inflicted" because an organization cannot "'spend its way into standing'" by claiming it is "'forced'" to expend resources. HCDA Br. 23-24 (quoting 602 U.S. at 394). But *AHM* had little to say about whether the plaintiff-organization's injury was *self-inflicted*; rather, it held that an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action" without showing how that action has "directly affected and interfered with" its "core business activities." *AHM*, 602 U.S. at 394-395. Indeed, while the plaintiff-organizations in *AHM* may have had "sincere legal, moral, ideological, and policy objections" to the actions they challenged, they failed to establish standing because they claimed only that that they chose to expend resources "engaging in public advocacy and public education" to "oppose [the defendant's] actions," but did not otherwise show how those actions caused any "impediment" to their core business activities. *Id.* at 394-396. Here, in comparison, Plaintiffs-Appellees *have* identified how Section 6.06 has directly affected and interfered with their core activities.

To the extent the HCDA means to argue that Plaintiffs-Appellees' injuries are self-inflicted because he has not 'forced' them, in the literal sense, to expend these resources, he is wrong. HCDA Br. 23-24. Plaintiffs-Appellees have expended and will continue to expend resources to counteract and mitigate Section 6.06's effect on their members and the public because failing to do so would be antithetical to their missions to embrace the hopes and aspirations of AAPIs through civic engagement, ROA.40490 (OCA-GH), and to empower voters and defend democracy, ROA.40381 (LWVTX). The fact that Section 6.06 is in "direct conflict" with Plaintiffs-Appellees' missions is a "necessary—though not alone sufficient" factor in establishing standing, because it shows that their diversion of resources is "impeding [their] activities," *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 361 (5th Cir. 1999) (citing *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1429-1430 (D.C. Cir. 1996)), as opposed to "unnecessary alarmism constituting a self-inflicted injury," *Nat'l Treasury Employees Union*, 101 F.3d at 1430.

Nor is Plaintiffs-Appellees' diversion of resources away from these core activities 'self-inflicted' simply because Section 6.06 does not explicitly command that diversion. "Article III requires no more than *de facto* causality." *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019) (citing *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)). Here, given Plaintiff-Appellees' missions,

it is entirely "predictable" that they would respond to the statute by diverting resources to counteract and mitigate its effect in this way. *See AHM*, 602 U.S. at 383; *see also, e.g.*, *OCA-Greater Houston*, 867 F.3d at 611-612 (recognizing organizational injury based on diversion of resources even though the challenged law did not itself directly command such expenditures); *Fowler*, 178 F.3d at 360-362 (holding that organization's expenditure of resources to register voters in order to "counteract" state's failure to implement the National Voter Registration Act was "direct result" of that failure).

Plaintiffs-Appellees have therefore established organizational injury in fact based on Section 6.06's perceptible impairment of their ability to achieve their missions. This is due both to its direct prohibition of their core activity of providing mail-voting assistance and because it directly interferes with their other core activities.

## C. Each of Plaintiffs-Appellees' and its members' injuries is traceable to, and redressable by, enjoining the HCDA.

Each of the continuing injuries identified above is traceable to the HCDA because Plaintiffs-Appellees operate within Harris County, ROA.40387, 40489, 40491-40492, and "[a]s the district attorney, he is charged with prosecuting individuals who violate criminal laws" within Harris County. *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 785 (5th Cir. 2024), *cert. denied sub nom. Nat'l Press Photographers Ass'n v. Higgins*, 145 S. Ct. 140 (2024); *see also*

Consumer Data Indus. Ass'n, 2023 WL 4744918, at \*6. Plaintiffs-Appellees' injuries are also redressable by enjoining the HCDA from enforcing Section 6.06 because "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *AHM*, 602 U.S. at 381.

The HCDA does not challenge these baseline principles of causation and redressability beyond the arguments Plaintiffs-Appellees refuted above—that he has not yet investigated or prosecuted an alleged offense under Section 6.06 and that Plaintiffs-Appellees' diversion-of-resources injuries are self-inflicted. *Supra* at Part I.A-B. Plaintiffs-Appellees have thus satisfied the causation and redressability requirements for establishing Article III standing against the HCDA with respect to each of their injuries.[11]

---

[11] Plaintiffs-Appellees additionally brought Section 208 challenges to S.B.1 Section 6.06 against the Secretary and AG, each of whom also play a role in causing each of Plaintiffs-Appellees' injuries. *See* ROA.37694-37698, 37741-37742, 37745 & n.43. Notably, neither State-Appellants nor Intervenor-Appellants contest Plaintiffs-Appellees' or others' standing to bring their challenges to Section 6.06 against the AG and Secretary. *See* State Br. 16-25; GOP Br. 25-35. Nor is it controversial that multiple defendants may concurrently have some "ability to cause and to redress" Plaintiffs-Appellees' injuries. *See Okpalobi v. Foster*, 244 F.3d 405, 428 (5th Cir. 2001) (en banc) (emphasis removed); *Nat'l Press Photographers Ass'n*, 90 F.4th at 784-785 (finding traceability and redressability satisfied as to state and local officials charged with enforcing criminal laws); *Kareem v. Cuyahoga Cty. Bd. of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024) (holding that plaintiff's injury was traceable to and redressable by Ohio Secretary of State, Board of Elections, and local prosecutor, "all of whom play[ed] a role in enforcing" the challenged statute).

**D.**     **Plaintiffs-Appellees satisfy the other requirements for associational standing.**

As discussed, Plaintiffs-Appellees have established that their members have standing to challenge Section 6.06 in their own right because they face a credible threat of prosecution by the HCDA if they engage in compensated mail-voting assistance. *See OCA-Greater Houston*, 867 F.3d at 610 ("'Associational standing' is derivative of the standing of the association's members."); *supra* at 22-23 & n.4. Plaintiffs-Appellees have also established the remaining two requirements to invoke associational standing, which the HCDA does not contest: that the interests they seek to protect "are germane to the organization's purpose" and that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (citation omitted).

First, the interest Plaintiffs-Appellees seek to protect by challenging Section 6.06—the ability to provide mail-voting assistance to qualified voters among their membership and in their communities—is undoubtedly germane to their missions, which for OCA-GH is to embrace the hopes and aspirations of AAPIs through civic engagement, and for LWVTX is to empower voters and defend democracy.

Second, Plaintiffs-Appellees claims do not require the participation of their individual members. This "prong of the associational standing test" focuses on "matters of administrative convenience and efficiency," *Food & Com. Workers*

*Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996), and is "solely prudential," *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). Here, because Plaintiffs-Appellees' claims "can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry," and they seek "only equitable relief," "both the claims and relief . . . support judicially efficient management if associational standing is granted." *Tex. Med. Bd.*, 627 F.3d at 552-553. This Court should therefore do so here.

## II.     THE DISTRICT COURT'S INJUNCTION IS PROPER

After finding that Plaintiffs-Appellees had standing to bring their Section 208 claims against the HCDA, the District Court correctly ruled in their favor on the merits of those claims. ROA.37766-37769. The HCDA does not contest that ruling. Rather, he argues that the District Court's injunction of his enforcement of Section 6.06 improperly binds non-party local prosecutors by running against the State of Texas and its "agents." HCDA Br. 26-27. He additionally claims other aspects of the injunction, relating to the deputization or appointment of the AG's attorneys, are legally unsound. HCDA Br. 28-32. All of these arguments fail.

### A.     The District Court properly enjoined the State of Texas and its agents, including the HCDA and other local prosecutors.

The District Court properly enjoined "[t]he State Defendants"—the State of Texas, the AG, and the Secretary—and by extension "[a]ll county and local prosecutors" as "agents of the State of Texas in prosecuting crimes under the

Election" "from implementing, enforcing, or giving any effect to" Section 6.06. ROA.37781.

The HCDA, who is indisputably a party defendant and has notice of the injunction, nevertheless argues that it is improper because it binds non-party local prosecutors. HCDA Br. 26-27. But as he himself acknowledges, injunctions bind not only "parties" but also their "officers, agents, servants, employees, and attorneys," as well as "other persons who are in active concert or participation with" the foregoing. Fed. R. Civ. P. 65(d)(2); HCDA Br. 26.

Here, the District Court made clear that its injunction is premised on the fact that "Texas enforces election crimes . . . through county and local prosecutors," who are therefore "agents of the State of Texas in prosecuting crimes under the Election Code." ROA.37741 (citing *State v. Stephens*, 663 S.W.3d 45, 52 (Tex. Crim. App. 2021)), 37781; *see also* ROA.37876 n.17 (similar).[12] And in enjoining the State of Texas—a party to this lawsuit—the District Court was not required to "specify which [particular] Texas officials are supposed to refrain from enforcing" Section 6.06 to render its injunction "proper." *United States v. Texas*, 586 F. Supp. 3d 574, 580 (W.D. Tex. 2022). Rather, it needed only to enjoin "the state as an entity," and

---

[12] Indeed, the HCDA has previously claimed the mantle of state agency in order to benefit from sovereign immunity, *see, e.g*, ROA.8814 (HCDA's motion to dismiss), and this Court has permitted the HCDA to invoke that immunity with respect to other claims in this very litigation, *see Ogg*, 105 F.4th at 333.

if desired, the state's "agents, officers, and employees, and all other persons and entities in active concert or participation with them." *Id.* (collecting district and circuit court decisions enjoining states); *see* Fed. R. Civ. P. 65(d)(2).[13] That is precisely what the District Court's injunction in this case does. *See* ROA.37781.[14]

Notably, State-Appellants do not challenge the injunction's application

---

[13] *See also, e.g.*, ROA.37876 n.17 (noting that in *OCA-Greater Houston* this Court "direct[ed] the district court to craft a revised injunction against the *State of Texas*" on remand (citing 867 F.3d at 616)); *OCA Greater Houston v. Texas*, No. 1:15–CV–679–RP, 2018 WL 2224082, at *4-5 (W.D. Tex. May 15, 2018) (enjoining the State of Texas, the Secretary, and their agents on remand); *United States v. Texas*, 557 F. Supp. 3d 810, 822 (W.D. Tex. 2021) (enjoining State of Texas and its agents); *United States v. State of Alabama*, No. 2:06-cv-392-WKW, 2006 WL 1598839, at *4 (M.D. Ala. June 7, 2006) (issuing injunction against Alabama and its Secretary of State after finding that "Alabama county registrars are agents of the State" meaning that injunction against State would "apply directly to all registrars"); *Del. Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 533 F. Supp. 885, 886 (E.D. Pa. 1982) (rejecting argument that the United States Secretary of Transportation "cannot be enjoined because he is not a party to the action"; rather, because he was "an agent" of the United States, which was a party, there was "no jurisdictional difficulty in effectuating [the court's] judgments by means of an injunction running against [him as] an agent of a named party to the action.").

[14] None of the cases the HCDA cites stand for the idea that a state's agents cannot be enjoined under Federal Rule of Civil Procedure 65(d)(2)(B). HCDA Br. 26-27; *see Power-One, Inc. v. Artesyn Techs., Inc.*, No. CIV. A. 2:05-CV-463, 2008 WL 1746636, at *2 (E.D. Tex. Apr. 11, 2008) (discussing a different provision, Rule 65(d)(2)(C), and holding that third-party "will be subject to contempt proceedings to the extent they are in fact the 'successors in interest'" or "working 'in active concert'" with enjoined party); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1392-1393 (Fed. Cir. 1996) (president of party-corporation was an agent and thus bound by injunction, although third-parties were not); *Texas v. Dep't of Labor*, 929 F.3d 205, 210-213 (5th Cir. 2019) ("Respondents are clearly not parties . . . nor are they any 'parties'' officers, agents, servants, employees, and attorneys.").

to local prosecutors as agents of the State of Texas when enforcing the Election Code.

The HCDA's argument that he "is not an 'agent' of the AG, the Secretary, or any other state official" therefore misses the point. HCDA Br. 28. Similarly irrelevant is his assertion that he and other local prosecutors have "independent prosecutorial discretion." HCDA Br. 27-28. Whatever discretion they might have, the authorities the HCDA relies on demonstrate that they exercise it as agents of the State of Texas when enforcing Texas criminal law. *See Ogg*, 105 F.4th at 325; HCDA Br. 27 (citing Tex. Const. art. V, § 21 and Tex. Code Crim. Pro. art. 2.01, both of which say that local prosecutors "represent the State"); HCDA Br. 28 (citing *State ex rel. Hill v. Pirtle*, which reiterates that "District attorneys shall represent the State," 887 S.W.2d 921, 926 (Tex. Crim. App. 1994) (citation omitted)). Neither the HCDA nor other local prosecutors can escape the reach of the District Court's injunction just because they have some independent discretion in exercising their prosecutorial authority, as agents of the State of Texas, in enforcing the Election Code.

**B.      The portions of the District Court's injunction relating to the deputization or appointment of AG attorneys are legally sound.**

The HCDA next takes issue with the District Court's elaboration that its injunction against "implementing, enforcing, or giving any effect to" Section 6.06 prohibits local prosecutors "from deputizing the Attorney General, appointing him

42

*pro tem*, or seeking his appointment *pro tem* from or by a district judge to prosecute alleged violations" of Section 6.06. ROA.37781. He claims these procedures are inconsistent with Texas law, HCDA Br. 29-32, despite trial evidence demonstrating both processes, his counsel examining the former Chief of the AG's Election Integrity Division about both during trial, and his office utilizing the *pro tem* procedures in the past. Not so.

*First*, the District Court included these details in its injunction because trial evidence showed that these two processes are regularly utilized by local prosecutors and the AG to collaboratively prosecute election-related cases (or to hand off prosecution of such cases to the AG). ROA.37696 & n.17, 37700-37701 & n.20, 42710, 42843-42844, 42852, 42858-42859; Tex. Gov't Code § 402.028; Tex. Code Crim. Pro. art. 2A.104. By doing so, the District Court ensured that the injunction "describe[s] in reasonable detail . . . the act or acts restrained," Fed. R. Civ. P. 65(d)(1)(c), and that it will not be "nullif[ied]" by any Defendant (including the AG) "carrying out prohibited acts through aiders and abettors," which is appropriate even where the latter "were not parties to the original proceeding," *see Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citation omitted); Fed. R. Civ. P. 65(d)(2)(C) (injunctions bind "persons who are in active concert or participation with parties or their agents").

*Second*, the HCDA's assertions that a district attorney has "no authority to deputize the Attorney General," and cannot "seek[] the Attorney General's appointment *pro tem*," are simply incorrect. *See* HCDA Br. 29–31 (cleaned up). The Texas Government Code specifies that a "district attorney . . . may appoint and *deputize* an assistant attorney general as assistant prosecutor to provide assistance in the prosecution of criminal cases." Tex. Gov't Code § 402.028 (emphasis added). In fact, HCDA counsel elicited testimony at trial about this very process by asking the former Chief of the AG's Election Integrity Division whether, under Texas Government Code Section 402.028, "a representative of the Attorney General's Office can, in effect *be deputized* to serve under the direction of an elected district attorney," to which the witness answered in the affirmative. ROA.42769-70 (emphasis added). The HCDA cannot now argue that the injunction is invalid because "a district attorney . . . has no authority to 'deputiz[e] the Attorney General.'" *See* HCDA Br. 30.

To the extent the HCDA argues that district attorneys supervise cases in which AG attorneys are deputized, that only confirms the propriety of the District Court's injunction because it is consistent with trial evidence that local prosecutors and the AG collaborate to simultaneously enforce the challenged provisions of S.B.1. ROA.42848; *see also* ROA.42766 (deputized attorneys are still employed and paid

by the AG's Office). The District Court's injunction of both entities is therefore appropriate.

Similarly, assistant attorney generals can be appointed *pro tem* "follow[ing] a motion for a recusal by that [district attorney]." ROA.42768 (counsel for HCDA discussing process with former Chief of the AG's Election Integrity Division)[15]; *see also* ROA.42849 (local prosecutors request the AG handle elections-related cases because they are "political hot potato[es]"). These motions frequently and simultaneously request the appointment of an attorney *pro tem*, specifying that an AG attorney should be appointed. *See, e.g.*, *Adler v. State*, No. 10–13–00312–CR, 2014 WL 5421050, at *5 (Tex. App.—Waco Oct. 23, 2014, pet. ref'd) ("The elected district attorney filed a motion to recuse his office and sought to have the attorney general's office appointed as attorneys *pro tem*."). The HCDA's office is well familiar with this practice, having utilized it in the past. *See, e.g.*, *Ex parte Uvukansi*, No. WR-88,493-02, 2020 WL 5649459, at *1 (Tex. Crim. App. Sept. 23, 2020) ("[W]e received a motion that Kim Ogg, the Harris County District Attorney, filed . . . she requested that the District Attorney's Office be recused and that an attorney

---

[15] The statute governing *pro tem* appointments at the time of trial, Tex. Code Crim. Pro. art. 2.07, has since been moved to Tex. Code Crim. Pro. art. 2A.104. *See* Acts 2023, Texas Acts of the 88th Leg.- Regular Session, ch. 765 (H.B. 4504), Sec. 3.001, eff. 1/1/2025 ("[R]elating to the nonsubstantive revision of certain provisions of the Code of Criminal Procedure.").

*pro tem* be appointed."). Thus, the District Court properly enjoined local prosecutors from "seeking [the Attorney General's] appointment *pro tem* from or by a district judge to prosecute alleged violations of [Section 6.06]." ROA.37781.

## CONCLUSION

The District Court's judgment should be affirmed.

Dated: March 26, 2025.

Respectfully submitted,

*/s/ Zachary Dolling*
Zachary Dolling
Sarah Chen
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073
zachary@texascivilrightsproject.org
schen@texascivilrightsproject.org

Ashley Harris
Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
ACLU FOUNDATION
OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
aharris@aclutx.org
apinon@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org

Christopher McGreal
DISABILITY RIGHTS TEXAS

2222 West Braker Lane
Austin, TX 78758-1024
(512) 454-4816
cmcgreal@drtx.org

Sophia Lin Lakin
Ari J. Savitzky
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
slakin@aclu.org
asavitzky@aclu.org
dcampbell-harris@aclu.org

Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Patrick Stegemoeller
ASIAN AMERICAN LEGAL
DEFENSE AND EDUCATION
FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
pstegemoeller@aaldef.org

Jessica Ring Amunson
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

*Counsel for OCA-Greater Houston
and League of Women Voters of
Texas*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

*/s/ Zachary Dolling*
Zachary Dolling

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,938 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

*/s/ Zachary Dolling*
Zachary Dolling