IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT



LA UNIÓN DEL PUEBLO ENTERO, *et al.*,

*Plaintiffs-Appellees,*

*against*

GREGORY W. ABBOTT, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Texas, San Antonio Division,
No. 5:21-cv-00844-XR

## BRIEF FOR PLAINTIFFS-APPELLEES
LA UNIÓN DEL PUEBLO ENTERO; SOUTHWEST
VOTER REGISTRATION EDUCATION PROJECT;
MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS;
TEXAS HISPANICS ORGANIZED FOR POLITICAL
ACTION; JOLT ACTION; WILLIAM C. VELASQUEZ
INSTITUTE; FIEL HOUSTON, INCORPORATED;
FRIENDSHIP-WEST BAPTIST CHURCH; TEXAS
IMPACT; JAMES LEWIN

*(Counsel on the Reverse)*



Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
202-682-7220
zack.tripp@weil.com

Aaron J. Curtis
Charles Gehnrich
Natalie Howard
Augustus Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
212-310-8901

Sean Morales-Doyle
Jasleen K. Singh
Patrick A. Berry
BRENNAN CENTER FOR JUSTICE
  AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, New York 10271
646-292-8310

Leah J. Tulin
BRENNAN CENTER FOR JUSTICE
  AT NYU SCHOOL OF LAW
1140 Connecticut Avenue, NW
Suite 1150
Washington, D.C. 20036
202-650-6397

*Attorneys for Friendship-West
  Baptist Church; Texas Impact;
  James Lewin*

Nina Perales
MEXICAN AMERICAN LEGAL
  DEFENSE AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, Texas 78205
210-224-5476
nperales@maldef.org

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
212-859-8000

*Attorneys for La Unión del Pueblo
  Entero; Southwest Voter
  Registration Education Project;
  Mexican American Bar
  Association of Texas; Texas
  Hispanics Organized for
  Political Action; JOLT Action;
  William C. Velasquez Institute;
  FIEL Houston, Incorporated*

# CERTIFICATE OF INTERESTED PERSONS

Appellees certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1)    Plaintiffs-Appellees:

La Unión del Pueblo Entero
Friendship-West Baptist Church
Southwest Voter Registration Education Project
Texas Impact
Mexican American Bar Association of Texas
Texas Hispanics Organized for Political Action
JOLT Action
William C. Velasquez Institute
James Lewin
FIEL Houston, Inc.
OCA-Greater Houston
League of Women Voters of Texas
LULAC Texas
Voto Latino
Texas Alliance for Retired Americans
Texas AFT

2)    Defendants-Appellants:

Attorney General Kenneth Paxton Jr.
Secretary of State Jane Nelson
State of Texas

3)    Intervenors-Appellants:

Harris County Republican Party
Dallas County Republican Party
Republican National Committee

National Republican Senatorial Committee
National Republican Congressional Committee

4)       Counsel for Plaintiffs-Appellees La Unión del Pueblo Entero; Southwest Voter Registration Education Project; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Action; JOLT Action; William C. Velasquez Institute; and FIEL Houston, Inc.:[1]

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
Mexican American Legal Defense & Educational Fund

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
Fried Frank, Harris, Shriver & Jacobson LLP

5)       Counsel for Plaintiffs-Appellees Friendship-West Baptist Church; Texas Impact; and James Lewin:

Sean Morales-Doyle
Leah J. Tulin
Jasleen K. Singh
Patrick A. Berry
Brennan Center for Justice at NYU Law School

Zachary D. Tripp
Aaron J. Curtis
Anne Corbett
Charles Gehnrich
Natalie Howard
Augustus Ipsen
Weil, Gotshal & Manges LLP

---

[1]    The following parties are collectively referred to as the LUPE Plaintiffs-Appellees: La Unión del Pueblo Entero; Mexican American Bar Association of Texas; Southwest Voter Registration Education Project; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velasquez Institute; FIEL Houston, Inc.; Friendship-West Baptist Church; Texas Impact; and James Lewin.

6)      Counsel for Plaintiffs-Appellees OCA-Greater Houston and League of Women Voters of Texas:

Zachary Dolling
Sarah Chen
Veronikah Warms
Texas Civil Rights Project

Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
Ashley Harris
ACLU Foundation of Texas, Inc.

Adriel I. Cepeda Derieux
Ari Savitzky
Sophia Lin Lakin
Dayton Campbell-Harris
Susan Mizner
Brian Dimmick
American Civil Liberties Union Foundation

Lucia Romano
Peter Hofer
Christopher McGreal
Disability Rights Texas
Patrick Stegemoeller
Asian American Legal Defense and Education Fund

Jessica Ring Amunson
Jenner & Block LLP

7)      Counsel for Plaintiffs-Appellees LULAC Texas; Voto Latino; Texas Alliance for Retired Americans; and Texas AFT:

Christopher D. Dodge
Mark E. Elias
Marisa O'Gara

Meaghan E. Mixon

Omeed Alerasool
Uzoma N. Nkwonta
Daniela Lorenzo
Marcos Mocine-Mcqueen
Elias Law Group LLP

James A. Rodman
Rodman Law Office

8)      Counsel for Defendants-Appellants Attorney General Kenneth Paxton Jr.; Secretary of State Jane Nelson; and State of Texas:

Ken Paxton
Aaron L. Nielson
Kathleen T. Hunker
William Francis Cole
Meagan Corser
Mark A. Csoros
Kateland R. Jackson
Ryan Glen Kercher
William D. Wassdorf
Office of the Attorney General of Texas

9)      Counsel for Intervenors-Appellants Harris County Republican Party; Dallas County Republican Party; Republican National Committee; National Republican Senatorial Committee; and National Republican Congressional Committee:

John M. Gore
Louis J. Capozzi, III
Jones Day

*/s/ Nina Perales*
Nina Perales
*Attorney of record for Appellees*

March 26, 2025

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Fifth Circuit Rule 28.2.3 and Rule 34(a)(1) of the Federal Rules of Appellate Procedure, Appellees respectfully request oral argument. This appeal presents significant questions regarding Section 208 of the Voting Rights Act and its application to important aspects of core political and voting activity. Appellees thus respectfully submit that oral argument would assist the Court in resolving the appeal.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons..........................................................................i

Statement Regarding Oral Argument ..................................................................v

Table of Contents ..............................................................................................vi

Table of Authorities ........................................................................................viii

Introduction ........................................................................................................1

Statement of Jurisdiction....................................................................................3

Issues Presented .................................................................................................3

Statement of the Case.........................................................................................4

Summary of the Argument ...............................................................................10

Standard of Review ..........................................................................................15

Argument..........................................................................................................15

   A.  The District Court Properly Held that the Challenged Provisions
       Violate and Are Preempted by Section 208 of the VRA. ...........................16

      1.  The Right to Voting Assistance Is Subject Only to the
         Exceptions in Section 208 ................................................................16

      2.  The Challenged Provisions Violate Section 208 ..................................21

         a.  Bans on Compensated Assistance (Sections 6.06 and
            7.04)..........................................................................................21

         b.  Oath Provision (Section 6.04)...................................................26

         c.  Disclosure Provisions (Sections 6.03, 6.05, and 6.07)........29

      3.  The Challenged Provisions Are Preempted by Section 208. ..............30

   B.  The District Court Properly Exercised Subject-Matter Jurisdiction..........36

      1.  Sovereign Immunity Does Not Apply to VRA Claims .......................36

      2.  Appellees Have Standing to Challenge S.B.1 Under the VRA..........37

         a.  Associational Standing ............................................................38

         b.  Organizational Standing ..........................................................42

   C.  Section 208 Provides a Private Right of Action..........................................45

    D.  The District Court's Injunction as to Nonparty County and Local
        Prosecutors Is Proper...........................................................................48

Conclusion...........................................................................................................51

Certificate of Service .........................................................................................53

Certificate of Compliance ..................................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. State Conf. of NAACP v. Marshall*,
No. 2:24-cv-00420, 2024 WL 4448841 (N.D. Ala. Oct. 4, 2024) ................16

*Alexander v. Sandoval*,
532 U.S. 275 (2001).......................................................................................46

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013)...........................................................................................31

*Arizona v. United States*,
567 U.S. 387 (2012)..................................................................................31, 32

*Ark. United v. Thurston*,
No. 5:20-CV-5193, 2020 WL 6472651 (W.D. Ark. Nov. 3,
2020) .............................................................................................................19

*Ark. United v. Thurston*,
517 F. Supp. 3d 777 (W.D. Ark. 2021) .........................................................48

*Ark. United v. Thurston*,
626 F. Supp. 3d 1064 (W.D. Ark. 2022) ................................................19, 35

*Barto v. Shore Const., L.L.C.*,
801 F.3d 465 (5th Cir. 2015) ........................................................................15

*Blum v. Yaretsky*,
457 U.S. 991 (1982).......................................................................................38

*Braidwood Mgmt. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) .........................................................................38

*Consumer Data Indus. Ass'n v. Texas*,
No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023) ..........................40

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000).......................................................................................31

*Democracy N.C. v. N.C. State Bd. of Elections*,
  590 F. Supp. 3d 850 (M.D.N.C. 2022) ......................................................48

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)....................................................................................30

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
  373 U.S. 132 (1963).....................................................................................32

*Fla. State Conf. of NAACP v. Lee*,
  576 F. Supp. 3d 974 (N.D. Fla. 2021) ..................................................45, 46

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024).................................................................................37, 43

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
  695 F.3d 330 (5th Cir. 2012) ...................................................................13, 38

*Fusilier v. Landry*,
  963 F.3d 447 (5th Cir. 2020) .......................................................................36

*Garcia v. Sessions*,
  856 F.3d 27 (1st Cir. 2017)...........................................................................20

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)......................................................................................44

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
  599 U.S. 166 (2023)......................................................................................48

*Hess Corp. v. Schlumberger Tech. Corp.*,
  26 F.4th 229 (5th Cir. 2022) ....................................................................15, 42

*State ex rel. Hill v. Pirtle*,
  887 S.W.2d 921 (Tex. Crim. App. 1994) ......................................................51

*Hillman v. Maretta*,
  569 U.S. 483 (2013).................................................................................11, 16

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)................................................................................... 31-32

ix

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977).......................................................................38

*Jennings v. Rodriguez*,
583 U.S. 281 (2018).........................................................11, 16, 19

*La Union del Pueblo Entero v. Abbott*,
618 F. Supp. 3d 504 (W.D. Tex. 2022) .....................................47

*League of Women Voters of Ohio v. LaRose*,
741 F. Supp. 3d 694 (N.D. Ohio 2024) .................................19, 46

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) ......................................................36

*Morse v. Republican Party of Virginia*,
517 U.S. 186 (1996).....................................................................46

*Motor Coach Employees v. Lockridge*,
403 U.S. 274 (1971)......................................................................32

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex
rel. Patterson*,
357 U.S. 449 (1958)......................................................................30

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) ............................................ *passim*

*Oneok, Inc. v. Learjet, Inc.*,
575 U.S. 373 (2015)........................................................ 30-31, 34

*Priorities USA v. Nessel*,
487 F. Supp. 3d 599 (E.D. Mich. 2020) ....................................19

*Ramey v. Davis*,
942 F.3d 241 (5th Cir. 2019) ......................................................15

*Ray v. Texas*,
No. 06-cv-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ......19

*Shelton v. Tucker*,
364 U.S. 479 (1960).....................................................................30

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016), *as revised* (May 24, 2016) ............................................37

*State v. Stephens*,
   663 S.W.3d 45, 56 (Tex. Crim App. 2021) ....................................................49

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ........................................................................41

*Texas State LULAC v. Elfant*,
   52 F.4th 248 (5th Cir. 2022) .........................................................................37

*Texas v. Dep't of Lab.*,
   929 F.3d 205 (5th Cir. 2019) ........................................................................49

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985)......................................................................................38

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   581 U.S. 433 (2017)......................................................................................38

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996)......................................................................................41

*United States v. Alabama*,
   778 F.3d 926 (11th Cir. 2015) ......................................................................20

*United States v. Deuman*,
   568 F. App'x 414 (6th Cir. 2014) ..................................................................20

*United States v. Naranjo*,
   259 F.3d 379 (5th Cir. 2001) ........................................................................20

*United States v. Scroggins*,
   599 F.3d 433 (5th Cir. 2010) ........................................................................15

**Statutes**

28 U.S.C. §1292(a)(1)........................................................................................3

28 U.S.C. §1331 ................................................................................................3

42 U.S.C. §1983 ..........................................................................................48, 49

52 U.S.C. §10302(a) ................................................................14, 46, 47

52 U.S.C. §10310(c)(1) ..................................................................21

52 U.S.C. § 10508 ..................................................................... *passim*

52 U.S.C. §20104 ...........................................................................48

52 U.S.C. §20105 ...........................................................................48

52 U.S.C. §20106 ...........................................................................48

Tex. Elec. Code §61.003 ................................................................35

Tex. Elec. Code §64.034 ...................................................6, 26, 30

Tex. Elec. Code §64.0322 ................................................................6

Tex. Elec. Code §86.010(e)(2)-(3) .................................................7

Tex. Elec. Code §86.013(b)(2)-(3) .................................................7

Tex. Elec. Code §86.0105, (a), (e) ......................................5, 21, 24

Tex. Elec. Code §276.013(a) .........................................................30

Tex. Elec. Code §276.015, (a), (c) .....................................6, 22, 24

Tex. Gov't Code. § 402.028(b) .......................................................49

Tex. Penal Code §38.01(3) .............................................................21

Tex. Penal Code §46.03(a)(2) ........................................................35

## Other Authorities

Black's Law Dictionary (6th ed. 1990) ..........................................20

Fed. R. App. P. 28(a)(8)(A)-(B) ....................................................15

Fed. R. Civ. P. 65(d)(2) ......................................................14, 49

Merriam Webster Dictionary, https://www.merriam-
    webster.com/dictionary/pro%20tempore .....................................51

S. Rep. No. 94-295 (1975) ...................................................................47

S. Rep. No. 97-417 (1982), *as reprinted* in
  1982 U.S.C.C.A.N. 177 .........................................................32, 36

U.S. Const. amend. XIV ...............................................................46,47

U.S. Const. amend. XV.............................................................36, 46, 47

Webster's Third New Int'l Dictionary (2002) ....................................20

**INTRODUCTION**

Section 208 of the Voting Rights Act ("VRA") provides "[a]ny voter who requires assistance to vote" with the right to "assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. As the text makes clear, "the right to select any assistor of [the voter's] choice" is "subject only to the restrictions expressed in Section 208 of the VRA itself." *OCA-Greater Houston v. Texas ("OCA I")*, 867 F.3d 604, 608 (5th Cir. 2017).

After hearing from scores of witnesses and considering nearly 1,000 exhibits during a six-week trial, the district court correctly concluded that Section 208 preempts the challenged portions of Texas's Senate Bill 1 ("S.B.1"). S.B.1 impermissibly conflicts with Section 208 by circumscribing assistance available to mail ballot voters and imposing additional oath and disclosure requirements, backed by significant criminal penalties, that deter assistance and burden voters who need assistance. The district court made a series of factual findings, backed by extensive evidence, that these provisions, on their face and in practical operation, restricted the ability of voters to select the assistor of their choice, and accordingly were preempted by Section 208.

Appellants do not challenge any of the district court's factual findings, which in any event, must be given deference absent clear error. Instead, Appellants ask this Court to ignore both the plain text of Section 208 and this Court's precedent in *OCA I*

and advance arguments that are wholly unsupported—and even contradicted—by the district court's findings of fact. The statute is clear, despite Appellants' argument, and the trial record is replete with testimony about the harm and confusion caused by the provisions of S.B.1 at issue in this appeal, leading the district court to reject the very arguments Appellants raise here. *E.g.*, ROA.37750-55, 37757-58, 37763-69.

Appellants' jurisdictional arguments fare no better. Binding Circuit precedent establishes that the VRA validly abrogates sovereign immunity. And Appellees' standing is entirely consistent with this Circuit's precedent and is well-established by the trial record, as set forth in the district court's unchallenged findings of fact.

For these and other reasons set forth below, the Court should affirm the district court's well-reasoned decision.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §1331. On October 17, 2024, State-Appellants and Intervenor-Appellants filed timely notices of appeal. ROA.37826-27. This Court has jurisdiction under 28 U.S.C. §1292(a)(1).

## ISSUES PRESENTED

1.      Whether the Challenged Provisions of S.B.1 are preempted by Section 208 of the Voting Rights Act.

2.      Whether the district court properly held that at least one Appellee has standing to bring claims against Appellants for the Challenged Provisions.

3.      Whether Section 3 of the Voting Rights Act, which expressly permits lawsuits by "aggrieved parties," permits private plaintiffs to sue to enforce Section 208.

4.      Whether the district court's order properly enjoins nonparties from aiding and abetting or acting in concert with the Attorney General to violate the injunction.

## STATEMENT OF THE CASE

### A.    Non-Partisan Organizations Historically Provided Assistance to Texas Voters

Section 208 of the VRA provides: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. §10508.

Appellees are membership-driven, non-partisan advocacy groups in Texas with members who require voting assistance under Section 208 due to disability, blindness, or an inability to read or write (including limited-English proficiency or "LEP"). ROA.37685; *see also* ROA.37693. Appellees rely on in-person voter advocacy to advance their causes and engage with voters through neighborhood door-knocking campaigns, voter registration drives, candidate forums, town hall meetings, tabling at community events, and exit-polling. ROA.37685; *see also* ROA.37693-94. In tandem with encouraging voters to cast their ballots, Appellees provide assistance to voters at the polls and with their mail ballots. For example, La Unión del Pueblo Entero ("LUPE") is a social services hub for the community and provides income tax services, language translation services and family-based immigration legal services. *See* ROA.37690. During some LUPE community outreach events, voters have taken out their mail ballots to ask questions or request voting assistance from Appellees' employees. *See* ROA.37685. Appellees' staff and volunteers regularly assisted voters

with disabilities and/or LEP voters cast their ballots, including in-person and by mail. ROA.37685.    Providing voting assistance is at the very heart of Appellees' missions.

## B.    S.B.1 Imposes Burdens on Voter Assistors

On September 7, 2021, Texas enacted the "Election Protection and Integrity Act of 2021," which is referred to here as S.B.1.    ROA.10773.    S.B.1 substantially amended existing provisions of the Texas Election Code (the "Election Code" or "TEC") and added new provisions and criminal offenses that the Secretary of State and the Attorney General take part in enforcing.

Relevant here, S.B.1 imposed novel restrictions and burdens on voters who require assistance, backed by felony criminal penalties.

***Bans on Compensated Assistance.***    Sections 6.06 and 7.04 (the "Bans on Compensated Assistance") impose criminal penalties on providing or receiving assistance from compensated assistors:

- Section 6.06 makes it a felony to compensate a mail ballot assistor who is not an attendant or caregiver previously known to the voter, or to offer, solicit, receive, or accept compensation in connection with such assistance.  TEC §86.0105.

- Section 7.04 makes it a felony to knowingly provide, offer, or receive any "compensation or other benefit" in exchange for voter outreach that

includes advocating on ballot measures in the presence of a mail ballot. TEC §276.015.

***Oath Provision.***  Section 6.04 (the "Oath Provision") requires voters to explain their eligibility as a condition of receiving assistance.  Specifically, Section 6.04 amends the Oath of Assistance to require assistors to (1) swear "under penalty of perjury" that (2) the voter "represented to [them] they are eligible to receive assistance," (*i.e.*, forcing voters to explain their eligibility as a condition of receiving assistance), and that (3) the assistor did not "pressure or coerce" the voter into choosing them.  TEC §64.034.

***Disclosure Provisions.***  Sections 6.03, 6.05, and 6.07 (the "Disclosure Provisions") impose new disclosure requirements for voter assistors:

- Section 6.03 requires assistors to (1) provide their name and address, (2) swear to their "relationship to the voter," and (3) indicate whether they "received or accepted any form of compensation or other benefit from a candidate, campaign, or political action committee" for providing assistance.  TEC §64.0322.

- Section 6.05 requires assistors of mail-in-ballot voters to disclose on the mail ballot envelope their "relationship to the voter" and whether they "received or accepted any form of compensation or other benefit from a

candidate, campaign, or political action committee in exchange for providing assistance." TEC §86.010(e)(2)-(3).

- Section 6.07 requires an assistor "who deposits the carrier envelope in the mail" to provide their relationship to the voter on the envelope. TEC §86.013(b)(2)-(3).

S.B.1 went into effect on December 2, 2021. ROA.10773.

###    C.    LUPE Lawsuit

On September 3, 2021, LUPE and other organizations and individuals sued State-Appellants and local officials (some of whom did not join this appeal) to enjoin them from enforcing, among other provisions, S.B.1 sections 6.03, 6.04, 6.05, 6.06, 6.07, and 7.04 (collectively, the "Challenged Provisions") as violating Section 208. ROA.282-83; ROA.37677-84.[2]

After denying Appellants' dispositive motions, the district court held a six-week bench trial from September 11, 2023 to October 20, 2023, which included "about 80 witnesses (both live and by deposition testimony), [and] nearly 1,000 exhibits." ROA.37675.

---

[2]    A separate Appellee, the Texas chapter of the League of Latin American Citizens ("LULAC"), filed suit on September 7, 2021. *See LULAC Texas v. Esparza*, No. 1:21-cv-786-XR (W.D. Tex. Sept. 7, 2021). That case was consolidated with LUPE's suit on September 30, 2021. As relevant to this appeal, LULAC's Section 208 claim challenged Section 7.04 of S.B.1. ROA.6702-04.

### D.    The District Court Found that S.B.1 Deters Voter Assistance

In a 112-page opinion, the district court held that the Challenged Provisions violated, and were preempted, in whole or in part by, Section 208.  ROA.37670-783.

The district court concluded that Section 6.06 prevents voters from choosing Appellees' staff members and volunteers to assist them with their mail ballots because they receive "compensation" for their assistance, *without respect to fraud*. ROA.37723-26.  Likewise, the district court held that Section 7.04 interferes with community organizers' ability to assist voters with their mail ballots because its prohibition on "in-person interactions" in the "presence of a mail ballot" has no exception for voter assistance, and has caused Appellees to stop providing such assistance. ROA.37726-28.

The district court further found that the Disclosure Provisions and Oath Provision both deter people with disabilities from requesting voting assistance and deter assistors from assisting.  ROA.37703; ROA.37710-16 (Oath); ROA.37717-21 (Disclosures).  As a result, some voters needing assistance have forgone assistance altogether.  ROA.37703.  Others decided to accept assistance from election officials, but in doing so, they sacrificed privacy and still did not receive the assistance they needed. ROA.37703-10.  Based on its factual findings, the district court concluded that S.B.1 violates Section 208.

First, the district court held that Section 208 preempts the Oath Provision because it "deterred voters from requesting assistance and narrowed the universe of willing assistors, thereby 'interfer[ing] with and frustrat[ing] the substantive right Congress created' under Section 208." ROA.37756. The district court relied, for example, on trial testimony by the State's witnesses that the new language in the Oath "probably" requires the assistant to obtain a representation of eligibility from the voter, and that voters are deterred from sharing private health information with an assister as a condition of voting. ROA.37713-14; *see also* ROA.37710-11; ROA.37713; ROA.37719-20. The district court permanently enjoined Appellants "from implementing, enforcing, or giving any effect to" the violative portions of the oath of assistance. ROA.37778.

Second, the district court held that Section 208 preempts the Disclosure Provisions because the "requirements that assistors complete an additional form disclosing duplicative information at the polls and disclose their relationships with the voters they assist have deterred voters from requesting assistance and narrowed the universe of willing assistors." ROA.37762. The district court permanently enjoined Appellants "from implementing, enforcing, or giving any effect to" the oath form and the disclosure requirements. ROA.37779-80.

Third, the district court held that the Bans on Compensated Assistance "conflict with the text of Section 208 … because they facially restrict the class of people who

are eligible to provide voting assistance beyond the categories of prohibited individuals identified in the text." ROA.37713-14. Because the "text of Section 208 does not permit" such restrictions, the district court held that Section 208 preempted the outright ban on compensated mail ballot assistance, and preempted application of the canvassing restriction to mail ballot assistance. ROA.37769. The district court thus permanently enjoined Appellants from "implementing, enforcing, or giving any effect" to the Bans on Compensated Assistance. ROA.37781-82.

State-Appellants, Intervenor-Appellants, and Former Harris County District Attorney Kim Ogg appealed the district court's order. ROA.217. The County District Attorneys did not appeal the Section 208 order.

## SUMMARY OF THE ARGUMENT

**A.** The district court correctly held that S.B.1's voter assistance provisions violate and are preempted by Section 208 of the Voting Rights Act.

1. As this Court has already held in *OCA I*, the right to voting assistance guaranteed by Section 208 is subject only to the exceptions expressly enumerated in Section 208 itself, 52 U.S.C. §10508, and an election law limiting voters' choice of assistors "impermissibly narrows the right guaranteed by Section 208 of the VRA." 867 F.3d at 608, 614-15. The same result is required here. Appellants' textual argument that Congress' choice to guarantee voters "a" person of their choice rather than "any" person is contrary to *OCA I*, well-established principles that express exceptions

10

preclude implied exceptions, *e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018); *Hillman v. Maretta*, 569 U.S. 483, 496 (2013), and the common understanding that "a" and "any" are synonyms.

2.  The Challenged Provisions violate Section 208.

a.  By criminalizing paid assistance, Sections 6.06 and 7.04 limit who voters may choose as their assistor, impermissibly narrowing the right guaranteed by Section 208. The trial record, including unchallenged factual findings, confirms that these provisions infringe on voters' right to assistance. Intervenor-Appellants' suggestion that assistors can simply decline to accept an offered "benefit" is unavailing, since offers are also illegal, regardless of whether the benefit is accepted or received. The State-Appellants' supposed concerns for preserving secret voting and preventing undue influence do not give the State license to violate Section 208, especially since voter coercion was already illegal before S.B.1, and the evidence shows voter privacy is compromised by denying voters their choice of assistors, not by paid canvassers.

b.  The Oath Provision violates Section 208 by adding a new requirement that the voter represent their eligibility for assistance to their chosen assistor and by adding vague and threatening language that deters assistors from providing assistance and deters voters from asking for assistance to avoid endangering family, friends, and

caregivers. Intervenor-Appellants' supposition that changing the oath cannot be burdensome and has not changed the legal landscape are contrary to the weight of the evidence, including unchallenged factual findings that must be given deference.

      c.     The Disclosure Provisions also interfere with and frustrate the substantive right Congress created under Section 208 by requiring assistors to complete additional forms and provide additional information as a prerequisite to assisting voters. The evidence, including unchallenged factual findings, show that these provisions have deterred both requesting and providing voter assistance.

      **3.**     S.B.1 is preempted by Section 208 for the same reasons that S.B.1 violates Section 208 and because S.B.1's voter assistance provisions stand as an obstacle to Section 208's purpose of affording voters the ability to vote with the assistor of their choice. In addition, because Congress already enumerated the only exceptions to the right to voter assistance, the additional burdens imposed by S.B.1 create an impermissible conflict in the method of enforcement. The State-Appellants' attempt to demonstrate through hypotheticals the "absurdity" of the preemption analysis is unavailing; no reading of the district court's order requires incarcerated felons to be released to provide requested assistance, and restrictions on electioneering and firearms at polling places (which, unlike the Challenged Provisions, do not regulate voter assistance) are not in conflict with Section 208.

      **B.**   The district court properly exercised subject matter jurisdiction.

1.    Binding Fifth Circuit precedent holds that sovereign immunity is abrogated by the VRA and cannot bar Appellees' Section 208 claims.

2.    Appellees have associational standing to challenge Sections 6.03-6.06 and 7.04 because (a) their members were unable to vote with the assistor of their choice and thus have standing to sue in their own right; (b) the interests they seeks to protect are germane to the organizations' purposes of promoting voter outreach, voter education, and civic engagement; and (c) Appellees seek prospective injunctive relief, rather that individualized damages, so "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (citations omitted); ROA.37738; ROA.34671; ROA.34677; ROA.34780; ROA.34812; ROA.34840-41.

3.    Although their associational standing is sufficient, Appellees also have organizational standing to challenge Sections 6.03-6.07 and 7.04 because one of Plaintiffs' "core" services (voter assistance) has been perceptibly impaired by S.B.1's violations of Section 208.   ROA.37736; ROA.33743; ROA.34845.   Appellants' arguments to the contrary misunderstand the case law and improperly reverse the burden of proof.

C.    Every court to have considered the issue agrees that private parties may enforce Section 208.  Appellants' arguments to the contrary ignore Section 3 of the

VRA, which Congress specifically amended to add that "an aggrieved person" (like Appellees) may "institute[] a proceeding under any statute to enforce the voting guaranties of the fourteenth or fifteenth amendment[s]." 52 U.S.C. §10302(a). By contrast, the enforcement provisions Appellants cite are from a different statute and do not displace, the enforcement mechanism in Section 3.

D. The district court's injunction as to nonparty county and local prosecutors is also fully supported. Because injunctions may bind "other persons who are in active concert or participation with" defendants, Fed. R. Civ. P. 65(d)(2)(C), including, without limitation, nonparties that aid or abet an enjoined party in violating an injunction, county and local prosecutors would be precluded from appointing the Attorney General to prosecute the Challenged Provisions as an end-run around the injunction even if they were not specifically named.

## STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 471 (5th Cir. 2015) (citations omitted). "Factual findings made during a bench trial deserve great deference. A district court's finding of fact is clear error only if it is implausible in the light of the record considered as a whole." *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 233 (5th Cir. 2022) (citations omitted).

## ARGUMENT

No Appellant challenges any of the district court's findings of fact as clearly erroneous. *See generally* State Br. 13, 18-19; Intv. Br. 18, 20. Appellants have thus waived any argument regarding the facts established at trial. *See, e.g.*, *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) ("We look to an appellant's initial brief to determine the adequately asserted bases for relief…. An appellant abandons all issues not raised and argued in its initial brief on appeal.") (citations omitted); *see also Ramey v. Davis*, 942 F.3d 241, 248 (5th Cir. 2019) ("failure to identify error in the district court's reasoning constitutes waiver" where State "argue[d] on the merits" but did not challenge district court's factual findings); *c.f.* Fed. R. App. P. 28(a)(8)(A)-(B). Because the district court correctly applied the applicable law given the considerable evidentiary record, the decision below should be affirmed.

### A. The District Court Properly Held that the Challenged Provisions Violate and Are Preempted by Section 208 of the VRA

#### 1. The Right to Voting Assistance Is Subject Only to the Exceptions in Section 208

Section 208 grants "[a]ny voter who requires assistance to vote" the right to "assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. §10508. The statute thus guarantees the voter's right to select the person "of the voter's choice," subject to two exceptions: the voter cannot select "the voter's employer" or "voter's union." *Id.* "That express exception … implies that there are no other circumstances under which" additional restrictions or limitations apply. *Jennings*, 583 U.S. at 300; *see also Hillman*, 569 U.S. at 496 ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (citation omitted). Consistent with the statute's plain text, this Court has already held that "the right to select any assistor of [the voter's] choice" is "subject only to the restrictions expressed in Section 208 of the VRA itself." *OCA I*, 867 F.3d at 608; *see also Ala. State Conf. of NAACP v. Marshall*, No. 2:24-cv-00420, 2024 WL 4448841 at *1, *3 (N.D. Ala. Oct. 4, 2024) (similar).

In *OCA I*, the plaintiffs challenged a Texas statute that allowed voters with limited English proficiency to "select an interpreter to aid them outside the ballot box"

only if the interpreter was "a registered voter of the county in which the voter needing the interpreter resides." *OCA I*, 867 F.3d at 608 (citation omitted).  In defending the statute, the defendants argued that Section 208 "applies only … to the literal act of marking the ballot" such that Texas' law limiting who could serve as an interpreter outside of the ballot box was "beyond Section 208's coverage" and thus "cannot be in conflict." *Id*. at 614.

This Court disagreed, explaining that "[i]t should go without saying that a state cannot restrict this federally guaranteed right by enacting a statute tracking its language, then defining terms [*i.e.*, what constitutes 'assistance'] more restrictively than as federally defined." *Id.* at 615.  Based on the "unambiguous" language of Section 208, this Court held that Texas's "limitation on voter choice … impermissibly narrows the right guaranteed by Section 208." *Id.* at 614-15.

That reading of Section 208 accords with the trial testimony in this case, including from State-Appellants' own witnesses.  For example, the former Chief of the Election Integrity Division in the Texas Attorney General's Office acknowledged that Section 208 provides a framework in which a voter can choose *any person*, "aside from employers and labor unions," to assist the voter.  ROA.42798.

State- and Intervenor-Appellants seek to avoid *OCA I*, arguing that the only issue in that case was the meaning of "to vote" in Section 208 and not whether states could restrict a voter's choice of assistor beyond the expressly enumerated exceptions

in Section 208.  State Br. 34-35, Intv. Br. 22.  Indeed, State-Appellants go so far as to say that "[n]either [the district court] nor the Fifth Circuit confronted whether [Section 208] permits states to limit or regulate who may serve as an assistor and the prerequisites the assistor must meet before she may be selected."  State Br. 34-35 n.12.  Not true.

*OCA I* unequivocally held that Section 208 grants "physically disabled and English-limited Texas voters the right to select *any* assistor of their choice, *subject only to the restrictions expressed in Section 208 of the VRA itself.*"  *OCA I*, 867 F.3d at 608 (emphasis added).

State-Appellants miss the mark in arguing this Court's conclusion was merely "stray language." State Br. 35.  To be sure, *OCA I* examined the phrase "to vote" and resolved the question of whether the right to assistance in Section 208 extended beyond marking the ballot. *See* 867 F.3d at 614. But in doing so, *OCA I* interpreted the plain text of Section 208 and held that it "guarantees to voters [the] right to choose any person they want, subject only to employment-related limitations, to assist them throughout the voting process." *Id*.  Put simply, *OCA I*'s description of the right protected by Section 208—"the right to select *any* assistor of their choice, subject only to the restrictions expressed in Section 208 of the VRA itself," *id.* at 608 (emphasis

added)—is the basis for the Court's ultimate holding that the Texas law at issued imposed "a limitation on voter choice unsupported by, and therefore in conflict with, Section 208." *Id*. at 614.[3]

State-Appellants also argue that additional state-imposed restrictions on voter assistance are permitted because the VRA guarantees only that voters can select "a person" of their choice rather than "*any* person" or "*the* person" of their choice. State Br. 32-35 (emphasis added). Circuit precedent says otherwise: Section 208 is "unambiguous" and provides voters the "right to select *any* assistor of their choice, subject only to the restrictions expressed in Section 208 of the VRA itself." *OCA I*, 867 F.3d at 608. Indeed, as the Supreme Court has explained, these express statutory exceptions imply that no other exceptions exist. *E.g.*, *Jennings*, 583 U.S. at 300.

---

[3]     Appellants' reliance on a variety of district court cases is also misplaced. *Ray v. Texas*, No. 06-cv-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008), pre-dates, and was therefore abrogated by, *OCA I*. *See, e.g.*, *Ark. United v. Thurston (Ark. II)*, 626 F. Supp. 3d 1064, 1087 (W.D. Ark. 2022) (recognizing that "*Ray* pre-dates *OCA-Greater Houston*, where the Fifth Circuit adopted a broader view of § 208's protections"). *Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020), has been rejected by federal courts across the country (including the district court here) and criticized for its deviation from well-settled statutory interpretation principles. *See, e.g.*, ROA.37750 n.50; *Ark. United v. Thurston*, No. 5:20-CV-5193, 2020 WL 6472651, at *4 (W.D. Ark. Nov. 3, 2020) ("[T]he Court is unconvinced by the opinion in *Nessel*."); *League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 717-18 (N.D. Ohio 2024).

While *OCA I* alone is sufficient basis to reject State-Appellants' position, State-Appellants are also incorrect as a matter of grammar. In ordinary speech, "a" is a common synonym for "any." In *United States v. Alabama*, for example, the Eleventh Circuit held that "[t]he plain meaning of the term 'an election [for Federal office]' is 'any election'" because "[i]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" 778 F.3d 926, 932 (11th Cir. 2015); *see* Webster's Third New Int'l Dictionary 1 (2002) (explaining that "the indefinite article means 'any' or 'each' when used with a restrictive modifier"); *see also* Black's Law Dictionary 1 (6th ed. 1990) (noting that "an" commonly means "one" or "any"). The same rule applies to Section 208, which modifies "a person" with "of the voter's choice" and the enumerated restrictions. 52 U.S.C. §10508; *see also United States v. Naranjo*, 259 F.3d 379, 382 (5th Cir. 2001) ("'Such *a* violation' … refers to, or references, *any* violation") (emphasis in original); *Alabama*, 778 F.3d at 933 ("We have repeatedly found in prior cases that an indefinite article was purposefully used as a synonym for the word 'any' …."); *Garcia v. Sessions*, 856 F.3d 27, 36 (1st Cir. 2017) (noting that "[a]s a matter of grammar, the word 'any' is not clearly more sweeping than is the word 'an,'" and declining to conclude that "Congress used the subtle stratagem of replacing one indefinite article with a different one to signal its unambiguous intent to make an exception to an otherwise categorical bar"); *United States v. Deuman*, 568 F. App'x 414, 421 (6th

Cir. 2014) ("That definition uses the indefinite article 'an' as opposed to the definite article 'the.' By its terms, then, the rule applies to any witness ...."). Thus, "a person of the voter's choice" is properly read as synonymous with "any person of the voter's choice," just as this Court explained in *OCA I*, 867 F.3d at 608.

### 2. The Challenged Provisions Violate Section 208

Prior to S.B.1, voters were able to exercise their right to vote with the help of their chosen assistors, and those assistors provided appropriate assistance, including helping with "navigating the polling location and communicating with election officials" as well as reading and marking the ballot. *OCA I*, 867 F.3d at 614; 52 U.S.C. §10310(c)(1)); ROA.33759-63. Because of the Challenged Provisions, however, voters who previously voted with their chosen assistors now vote without assistance, with the assistance of people they did not choose, or not at all, in violation of Section 208. ROA.37704-10; ROA.33812-26.

#### a. *Bans on Compensated Assistance (Sections 6.06 and 7.04)*

Section 208 guarantees voters with disabilities and those with limited English proficiency the right to vote with assistance from "a person of the voter's choice." 52 U.S.C. §10508. S.B.1's bans on compensated assistance directly conflict with that right.

Section 6.06 criminalizes mail ballot assistance by individuals who are compensated or receive "anything reasonably regarded as an economic gain or advantage."

TEC § 86.0105(a), (e); Tex. Penal Code § 38.01(3).  Similarly, Section 7.04 criminal-izes mail ballot assistance by individuals who are compensated or receive "anything reasonably regarded as a gain or advantage" when the compensated individual advo-cates in-person for a ballot measure or candidate in the presence of the mail ballot. TEC § 276.015(a), (c).  Excluding these categories of persons, which include employ-ees and volunteers of Appellee organizations, creates additional exceptions not con-tained in Section 208, and denies voters requiring assistance the ability to choose these persons as assistors, "impermissibly narrow[ing] the right guaranteed by Section 208." *OCA I*, 867 F.3d at 614-15.

The trial record and the district court's factual findings contain ample evidence showing that these provisions actually inhibited voter assistance. ROA.37693-94.  For example, before S.B.1, LUPE staff would assist members with mail ballots one-on-one at the LUPE offices, at house meetings, at LUPE's union hall events, and in mem-bers' homes.  ROA.37725; ROA.33759-60; ROA.33772.  But LUPE no longer en-gages in those activities because of S.B.1.  Since the passage of Section 6.06, when a LUPE member requests mail-ballot assistance, LUPE now informs the member that LUPE cannot provide assistance.  ROA.37725; *see also* ROA.37726 (same for OCA, the League, MABA-Texas, and LULAC).  State witnesses likewise confirmed that Section 6.06 "appear[s] to apply to [the] scenario" in which paid get-out-the-vote can-vassers engage with a voter and provides mail ballot assistance at the voter's request,

ROA.37724, and that offering to buy lunch in exchange for mail-ballot assistance could subject *the voter* to liability, ROA.37724.

With respect to Section 7.04, LUPE-paid staff and canvassers advocate on ballot issues when knocking on doors, at meetings and events, and in the LUPE offices because LUPE wants to make sure that everybody is educated about ballot measures. ROA.37690-91. For these in-person interactions, LUPE staff and volunteers expect that in many instances mail ballots will be present. ROA.37746; ROA.37691; ROA.33809-11. Thus, Section 7.04 has chilled LUPE staff and canvassers from engaging in those types of activities that they performed before S.B.1. ROA.37725. Similarly, the former Chief of OAG's Election Integrity Division testified that he would be concerned that a get-out-the-vote group that paid its organizers to provide mail ballot assistance as a public service while canvassing was actually subterfuge for voter fraud. ROA.37726. Thus, the district court found as a factual matter that "[i]n response to Section 7.04, many Plaintiff groups … stopped providing assistance to voters." ROA.37728.

Moreover, there is also substantial confusion (and no guidance from the Secretary or OAG) about how to interpret the terms "compensation" and "physical presence." ROA.37727; *see also, e.g.*, ROA.42793-94 (State's chief voter fraud prosecutor conceding that he would have to do legal research to determine what types of benefit would violate Section 7.04).

Intervenor-Appellants appear to argue that "S.B.1's bans on compensated voter assistance" cannot violate Section 208 because assistors can "decline to be paid." Intv. Br. 57-58. But S.B.1 criminalizes offers and solicitations of payment regardless of whether payment is subsequently "accepted" or "received." *E.g.*, TEC § 276.015(c) ("A person commits an offense if the person … knowingly provides *or offers to provide* compensation or other benefit….") (emphasis added); TEC § 86.0105(a), (e) ("A person commits an offense if the person: (1) compensates *or offers to compensate* another person for assisting voters …; or (2) *solicits*, receives, or accepts compensation for an activity described by Subdivision (1)") (emphasis added). In other words, even if assistors decline payment as Intervenor-Appellants suggest, both voters and their chosen assistors could still be subject to criminal liability under Sections 6.06 and 7.04. And it is a practical impossibility for an employee of a community organization to "decline to be paid" if she provides voter assistance with a mail ballot in between completing other tasks such as answering the phones or designing an informational flyer.

Intervenor-Appellants also posit that "States can enact laws to preserve secret voting and prevent undue influence or pressure by third parties during the voting process." Intv. Br. 58. But the State-Appellants' own witnesses acknowledged at trial that Section 6.06 "criminalizes *compensation* for assistance," not *undue influence* or *pressure* in assistance, ROA.37723-24 (emphasis added). Indeed, Appellants introduced no evidence whatsoever of any correlation between community-based organizations,

or volunteers who receive a meal or a t-shirt, and voter assistance fraud. *E.g.*, ROA.37718; ROA.37703 (finding that "[t]hese voters were not worried that their chosen assistors would influence their vote"); *see also* ROA.38978; ROA.39234; ROA.39643; ROA.39860; ROA.40118; ROA.40348; ROA.42835. Moreover, the State-Appellants' witness acknowledged that, "prior to S.B.1, the Election Code already criminalized: assisting a voter who … did not ask for assistance; voting a ballot differently than the voter wished or directed the assistant to vote the ballot; suggesting to the voter during the voting process how the voter should vote, or attempting to influence or coerce the voter receiving assistance." ROA.37726-27.

Intervenor-Appellants' purported concerns for "privacy while filling out a mail ballot," Intv. Br. 58, also ring hollow. The evidence shows that (i) voters often invite paid canvassers into their homes and request assistance with their ballots, ROA.37691; ROA.38888; ROA.38920-21; and (ii) voter privacy is infringed not by paid assistors, but by being unable to use the trusted assistor of their choice, whoever that may be, ROA.37703 (finding that voters "who engaged with election officials sacrificed their privacy while voting but still did not receive the assistance they needed"); ROA.37713-15; ROA.39508-09; ROA.39511; ROA.42046-47; ROA.42093-94.

Because S.B.1's bans on compensated assistance deter assistors and voters, and cause voters to vote without their chosen assistors, Sections 6.06 and 7.04 interfere with voters' ability to vote with assistance and violate Section 208.

## b. _Oath Provision (Section 6.04)_

The Oath Provision, which applies to voting at the polls, also violates Section 208 by requiring assistors to make various representations under penalty of perjury that discourage them from providing assistance and make it much more difficult for voters to obtain the assistance they need.

For example, Section 208 of the VRA does not require the voter to take any steps as a prerequisite for receiving assistance, such as stating that she is eligible for assistance. 52 U.S.C. § 10508. As one of the State's witnesses testified, however, the new language of the oath requires the assistor to obtain a representation of eligibility from the voter. ROA.37713. And this new requirement delves into sensitive topics and personal information (including lack of English proficiency and invisible cognitive disabilities) that voters who use assistance are often reluctant to share. ROA.37713-14; ROA.42053-54; ROA.42090; ROA.39535-36; ROA.42319-20. Additionally, nothing in the oath of assistance explains who is eligible for assistance, leaving both voters and assistors to guess what representation is sufficient to satisfy the statute. ROA.37713; ROA.33780-81; TEC §64.034.

Section 6.04 also deprives voters of their chosen assistors because assistors fear prosecution for signing the oath when they cannot be sure they have complied with it and thus have stopped providing assistance. ROA.33783-87. This fear is often prompted by the required representations concerning voter eligibility, ROA.37714-15;

ROA.33793-96, the representation that the assistor "did not pressure" the voter, ROA.37715-16; ROA.33798-802, and the representation that "the voter's ballot may not be counted" if the voter was ineligible for assistance, ROA.37714; ROA.33802-05. Indeed, members of MABA-Texas are concerned that anything they say or do may be interpreted as pressuring a voter and are therefore are unwilling to assist voters. ROA.41344-45.

Voters requiring assistance are similarly afraid to put their assistors at risk and instead forego assistance. *E.g.*, ROA.37703 (finding that disabled "voters' primary concern was exposing their caregiver to criminal liability under S.B.1 and losing the critical assistance they provide outside the voting process"); ROA.37705; ROA.37715-16; ROA.33824-25.

Intervenor-Appellants argue that the district court was incorrect in finding that the Oath Provision violates Section 208 because, in their view, it "merely clarifies" that "knowingly making a false oath to a state official is perjury." Intv. Br. 54. But this argument ignores the facts adduced at trial, including the unchallenged factual findings, that Section 6.04 has deterred assistors from providing assistance and that voters have been unable to use their chosen assistor because of the new law. ROA.37703; ROA.37705; ROA.37706-07; ROA.37708-09; ROA.37709-10; ROA.37719.

Intervenor-Appellants also assume without foundation that a voter "who chooses an assistor *necessarily* represents to the latter" their eligibility for assistance, and that any chosen assistor "can obviously attest that he did not 'pressure or coerce' the voter into choosing him." Intv. Br. 55-56 (emphasis in original). These unfounded assumptions contravene the evidence. *E.g.*, ROA.37713 (finding "both voters and assistors expressed confused [sic] about the eligibility requirements"); ROA.37713 (finding "requirement that the voter affirmatively represents his or her eligibility amounts to an *additional* eligibility requirement") (emphasis in original); *id.* (voter testifying she never specifically told her partner that she was eligible for assistance); ROA.42090; ROA.39535-36; ROA.42319-20; ROA.37715-16 ("What does pressure or coerce mean in this context?"); ROA.38950 (testifying "the word pressure is very broad and very confusing"); ROA.41299-300; ROA.41287; ROA.41242; ROA.41344-45; ROA.41341.

Because the Oath Provision conditions voter assistance on additional steps by the voter, deters both voters and assistors, and causes voters to vote without their chosen assistors, it violates Section 208.

### c. *Disclosure Provisions (Sections 6.03, 6.05, and 6.07)*

The Disclosure Provisions, which apply to voting by mail and voting at the polls, further deter voter assistors by requiring them to complete additional forms and provide additional information as a prerequisite to assisting voters, thereby denying voters assistance.  ROA.37673; ROA.37703; ROA.37756; ROA.37762; ROA.33781-83.

For example, the former Harris County Elections Administrator received reports from people who wanted to assist voters with disabilities or voters who require language assistance, but ultimately did not serve as assistors because they did not understand the additional legal documents required and feared that they would go to jail because they did not know the election laws and that even an innocent attempt to assist family members could put them in jail.  ROA.40112-13; *see also, e.g.*, ROA.41243-44 (FIEL); ROA.41344-45 (MABA-Texas).

The district court also found that the Disclosure Provisions, along with the Oath Provision, created delays during in-person voting, ROA.37717; ROA.33826-27, which are especially burdensome for voters with physical disabilities, ROA.37717.

According to Intervenor-Appellants, the Disclosure Provisions do not conflict with Section 208 because they do not "*bar* anyone from assisting voters."  Intv. Br. 56 (emphasis in original).  Yet Intervenor-Appellants cite no legal authority requiring a categorical bar before finding state statutes violate Section 208.  To the contrary, the Supreme Court has recognized the deterrent effect that disclosure requirements can

have on associative activities, *see, e.g., Shelton v. Tucker,* 364 U.S. 479, 486 (1960), *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 462 (1958); *Dep't of Com. v. New York,* 588 U.S. 752, at 767 (2019), especially as supported here by the robust evidentiary record.

The State's purported justifications for the Disclosure Provisions, including ensuring assistor eligibility and monitoring "for abuses by assistors," Intv. Br. 57, are wholly unsupported. Indeed, coercion was illegal before S.B.1, *e.g.*, TEC § 276.013(a), the pre-S.B.1 oath already screened for the categories proscribed by Section 208, TEC §64.034, and Appellants introduced no evidence of their claimed need to add the challenged disclosures to the existing assistance oath. *E.g.*, ROA.37718; ROA.37703; *see also* ROA.38978; ROA.39234; ROA.39643; ROA.39860; ROA.40118; ROA.40348; ROA.42835. Intervenor-Appellants also assert that S.B.1 encourages greater participation in the electoral process, Intv. Br. 52-53, but they cite no factual support, and as explained above, the trial record demonstrates otherwise.

For these reasons, the Disclosure Provisions violate Section 208.

### 3. The Challenged Provisions Are Preempted by Section 208

Because the Challenged Provisions violate Section 208, they are preempted by Section 208.

A state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet,*

*Inc.*, 575 U.S. 373, 377 (2015). Determining if a statute obstructs Congress' objectives requires "examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Where a state law "creates a conflict with the plan Congress put in place," the state law must yield. *Arizona v. United States*, 567 U.S. 387, 403 (2012).

For election laws, where federal law grants a right, a state law limiting that right, "so far as the conflict extends, ceases to be operative." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013). For example, in *Inter Tribal Council of Arizona*, the Supreme Court compared the federal National Voter Registration Act, which permits individuals to register to vote using a federal form, with an Arizona law requiring local registrars to reject the federal form absent documentary proof of citizenship. The Court held that the National Voter Registration Act "precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself" because the "state-imposed requirement … is inconsistent with the NVRA's mandate that States accept and use the Federal Form." *Id.* at 15, 20 (internal quotation marks omitted).

Here, the Challenged Provisions conflict with Section 208 because they stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of Section 208—namely, guaranteeing voters the ability to select their assistors. *Arizona v. United States*, 567 U.S. at 309 (quoting *Hines v. Davidowitz*, 312 U.S. 52,

67) (1941)).  By categorically excluding compensated mail ballot assistants, discouraging assistors from providing assistance, and deterring voters from seeking assistance, the Challenged Provisions undermine the purposes and objectives of Congress in enacting Section 208.

The Bans on Compensated Assistance likewise conflict with federal law and make it an "impossibility" for eligible voters to choose assistors who are compensated or have received some "benefit" in connection with their canvassing or advocacy work.  *See Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963).

Moreover, enabling voters with disabilities and those with limited English proficiency to select the assistors of their choice (subject only to the exceptions in Section 208) is the best method of preventing voter coercion at the polling place.  Indeed, "it is only natural that many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice."  S. Rep. No. 97-417, at 62 (1982), *as reprinted* in 1982 U.S.C.C.A.N. 177, 240-41.  Section 208 was designed to prevent these voters from being "forced to choose between casting a ballot under the adverse circumstances of not being able to choose their own assistance or forfeiting their right to vote."  *Id.*  The Challenged Provisions thus "involve[] a conflict in the method of enforcement," which "can be fully as disruptive to the system Congress erected as conflict in overt policy.'"  *Arizona*, 567 U.S. at 406 (quoting *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 287 (1971)).

State-Appellants also ask this Court to apply a standard appearing nowhere in Section 208: that state laws are only preempted "to the extent that they unduly burden the right recognized [by §208]." State Br. 2, 10, 36-37. Tellingly, State-Appellants cite no case law supporting the application of that standard here, and there is none. This argument is properly rejected out of hand.

By denying voters their trusted and capable assistors, the Challenged Provisions thwart the intent and goals of Congress and are therefore preempted.

State-Appellants argue that interpreting Section 208 consistently with *OCA I* would effectively prohibit Texas from enforcing any laws to the extent they have any deterrent effect on assistors and thus violates "the canon against absurdity."[4] State Br. 37-38; *see also* Intv. Br. 50 (describing the district court's reasoning as a "roadmap for holding just about any state law preempted as applied to a voter assistor").[5] Not so.

A state law is preempted by obstacle preemption when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

---

[4]     Intervenor-Appellants argue that cannons of constitutional avoidance support their position, Intv. Br. 42, yet acknowledge that this Court need not consider Section 208's constitutionality" because a "text-and-history based reading of the statute" properly resolves this dispute. *Id*. at 44. By their own concession, the Court need not reach this argument.

[5]     Although Intervenor-Appellants rhetorically ask how the district court's decision affects those unable or unwilling to assist because of generally applicable state law or other circumstance, Intv. Br. 52, Intervenor-Appellants concede that the decision does not affect a person's "inability 'to assist at the polling place for reasons that are completely unrelated to Texas's elections laws.'" *Id*. at 51 (quoting ROA.37754).

*Oneok*, 575 U.S. at 377 (citation omitted). Here, Congress intended to increase voter participation and eliminate discrimination by providing voters with limited literacy, voters with limited English proficiency, and voters with disabilities with assistance from a person of their choosing. Thus, state laws that do not conflict with Congress' goals and do not restrict a voter's right to assistance from "a person of the voter's choice" beyond the statutorily prescribed exceptions will not be preempted by Section 208. Applying this straight-forward analysis debunks the myriad of strawman arguments Appellants offer.

For example, State-Appellants assert that states must be able to ban convicted felons from assisting voters. State Br. 38-39. They offer no basis in law for such restrictions. Congress already defined who would be prohibited from providing assistance. It could have—but did not—prohibit individuals with criminal histories from doing so. States therefore cannot impose such a restriction. Indeed, by State-Appellants' logic, states would be able to impose almost *any* qualifications they wish on assistors. To the extent Appellants contend that it is bad policy to allow a voter to select an assistor who has a criminal history but has been released (or for an incarcerated person to help a visitor with a mail ballot), that is simply a disagreement with Congress' chosen policy to allow voters to select an assistor of the voter's choice, subject only to two exceptions that do not include criminal history. And "an incarcerated person would not be able [to] assist at the polling place for reasons that are completely

unrelated to [Texas'] elections laws"— i.e., because the incarcerated person is confined in prison and unable to travel to the polling place. *Ark. II*, 626 F. Supp. 3d at 1087. Nothing in either Section 208 or the district court's order purports to require a state to procure voters' assistors—by releasing them from prison, flying them in from a foreign country, resurrecting them from the dead, or otherwise.

Similarly, and contrary to State-Appellants' argument, State Br. 39-40, Section 208 does not permit assistors to act lawlessly. For example, nothing in Section 208 prevents states from prohibiting electioneering or firearms at polling places. Indeed, Texas has bans on both, neither of which are challenged here nor regulate voter assistance. *See* TEC § 61.003 (anti-electioneering); Tex. Penal Code § 46.03(a)(2) (prohibiting firearms at polling places).

S.B.1's voter assistance provisions, on the other hand, thwart voters' ability to receive assistance even when their assistor *complies* with Texas laws. The voter assistance provisions therefore directly infringe the right to voting assistance guaranteed by Section 208.

The Senate Report confirms what the statutory text already makes clear. The Senate Committee recognized the states' rights "to establish necessary election procedures … designed to protect the rights of voters," but confirmed its intention that any such voter assistance procedures "be established in a manner which encourages greater participation in the electoral process." S. Rep. No. 97-417, at 62-63; *see, e.g.*, *id.* at 62

("Specifically, it is only natural that many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice …. The Committee is concerned that some people in this situation do in fact elect to forfeit their right to vote."). The Challenged Provisions do the opposite, making it harder (if not impossible) for Texans with disabilities, limited literacy, or limited English proficiency to exercise their right to vote, which directly conflicts with the underlying purpose reflected in the statute.

Accordingly, the Challenged Provisions are preempted by Section 208.

## B. The District Court Properly Exercised Subject-Matter Jurisdiction

### 1. Sovereign Immunity Does Not Apply to VRA Claims

As this Court has held multiple times, "[t]he VRA, which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity." *OCA I*, 867 F.3d at 614 (5th Cir. 2017); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020) ("There is no sovereign immunity with respect to the Voting Rights Act claims."); *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020) (sovereign immunity "offers no protection from VRA suits.").

State-Appellants "recognize that the panel is bound by *OCA-Greater Houston* …." State Br. 29. Accordingly, this Court must affirm the district court's holding that

"[s]overeign immunity does not limit the Court's subject matter jurisdiction" over Appellees' VRA claims. ROA.37728.[6]

## 2. Appellees Have Standing to Challenge S.B.1 Under the VRA

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citations omitted). "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024).

An organization "may have standing either by showing it can sue on behalf of its members ('associational' standing) or sue in its own right ('organizational' standing)." *Texas State LULAC v. Elfant,* 52 F.4th 248, 253 (5th Cir. 2022). For any given claim, only one plaintiff need establish standing of either type to obtain relief for that claim. *Town of Chester, N.Y. v. Laroe Ests., Inc.,* 581 U.S. 433, 439 (2017).

---

[6]     In any event, as the district court properly found, both the Secretary and Attorney General have sufficient connection to the enforcement of the Challenged Provisions. ROA.37694-98; ROA.37741-42. Appellees have briefed the question multiple times in this Court, incorporate those arguments here. *See* Brief of Plaintiffs-Appellees, *La Union del Pueblo Entero v. Nelson*, No. 22-50775 (5th Cir. Feb. 13, 2023), ECF No. 120-1.

Appellees have demonstrated that they have standing for their claims on appeal.[7]

### a. *Associational Standing*

Appellees have associational standing to challenge S.B.1 because "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). An organization can satisfy standing requirements as long as it has "at least one member with standing …." *Funeral Consumers*, 695 F.3d at 343.

First, as the district court found, Appellees' members who "are eligible for assistance under Texas and federal law" did not receive "voting assistance from their assistors of choice in the 2022 primary or general election because of the burdens— including the threat of criminal liability—that S.B.1's disclosure and oath

<hr />

[7]     State-Appellants argue that, because Appellees filed their complaints after the Texas Legislature passed S.B.1 but before the Governor signed the bill, they cannot establish a "reasonably certain injury at the time they commenced litigation." State Br. 17. However, none of the cited authorities require Plaintiffs to wait for Texas to actually infringe their federally-protected rights. In this Court's words, "[i]f the injury is certainly impending, that is enough." *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). *See also Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (holding that "[one] does not have to await the consummation of threatened injury to obtain preventive relief"). The facts relied upon by the district court clearly demonstrate that standing requirements were satisfied at the time filing. ROA.37735-47.

requirements impose on assistors." ROA.37703 (The Arc); *see also, e.g.*, ROA.37717 (LUPE); ROA.37719-20 (FIEL). In other words, the Challenged Provisions caused Appellees' members to suffer the exact injury Section 208 was designed to prevent.

Appellants argue that "filling out a form" is not a "cognizable harm." Intv. Br. 26-27; *see also* State Br. 18. But the injury is not filling out the form. The injury is the deterrent effects that the form—or S.B.1's other requirements and prohibitions—have on voter assistance. S.B.1 deters assistors from providing assistance to voters and deters voters from seeking assistance. *See* ROA.37717 ("by the time [LUPE employee] had completed the disclosures, the voter was being assisted by other people").[8]

Appellees also established that these adverse effects will continue because, as a result of the Challenged Provisions, Appellees' members and employees have ceased providing voting assistance, including to their own members who would otherwise choose them as assistors. *E.g.*, ROA.37719-20 (FIEL); ROA.37725 (LUPE); ROA.37726 (The League, MABA-Texas, LULAC); ROA.37728. Second, Appellees proved that they have organizational missions to conduct voter outreach, voter education, and civic engagement. *E.g.*, ROA.37686-87 (The Arc); ROA.37690-91 (LUPE); ROA.37692 (FIEL); ROA.37693 (LULAC). In furtherance of that mission,

---

[8] State-Appellants' ask this Court to assume that "any delays would be *de minimis*," State Br. 19, but the evidence shows that the delays, "which are especially burdensome on voters with physical disabilities," were sufficient to deny voters their choice of assistor, ROA.37717.

Appellees have conducted get-out-the-vote drives, held voter education meetings, canvassed, and provided assistance with in-person and mail-ballot voting. ROA.32785; ROA.37686-87 (The Arc); ROA.37690-91 (LUPE); ROA.37693 (FIEL); ROA.37693-94 (LULAC). The Challenged Provisions plainly impede those efforts and are undeniably germane to Appellees' purpose.

Third, since Appellees seek prospective injunctive relief, rather that individualized damages, their claims do not require the participation of individual members. *Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918, at *4 n.7 (5th Cir. July 25, 2023); *see also United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996).

Appellants argue that Appellees' members' injury is not "fairly traceable" to Defendants because, in their view, one cause of the injury (fear of prosecution) relies on a "chain of speculation." Intv. Br. 28-30. But there is no speculation. The injuries suffered by members of Appellees' organizations are directly traceable to State-Appellants' enforcement of the Challenged Provisions, which directly prohibit Appellees' members from receiving assistance from compensated assistors and impose stringent requirements, backed by criminal penalties, that have actually deterred assistors from providing assistance. ROA.37673. Indeed, this Court has already held that "[t]he facial invalidity of a Texas election statute is, *without question,* fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the

chief election officer of the state." *OCA I,* 867 F.3d at 613 (internal quotations omitted). And the Secretary and Attorney General each have "a role in causing the claimed injury and is in a position to redress it at least in part." *Tex. Democratic Party v. Abbott* ("*TDP II*"), 978 F.3d 168, 178 (5th Cir. 2020); *see* ROA.37694-97 (Attorney General); ROA.37697-98 (Secretary).

For example, and contrary to the argument in Intervenor-Appellants' brief, Intv. Br. 32, the Secretary could easily redress injuries from the Disclosure and Oath Provisions by reverting to pre-S.B.1 forms, which did not have the same deterrent effect. ROA.37696; *see also* ROA.37698 (describing Secretary's mandatory duties in enforcing election laws, including having referred post-S.B.1 allegations of "vote harvesting" to the OAG). Appellants also make conclusory assertions that "the named State Defendants do not enforce the contested provisions." State Br. 13. But the district court found otherwise. In particular, the district court noted that "Jonathan White, former Chief of the OAG Election Integrity Division, testified that the 'vote harvesting' schemes … and 'assistance fraud' (purportedly targeted by the all the challenged provisions) remain among the three most common elections-related allegations that the OAG pursues." ROA.37695-96. Appellants' assertion that "Plaintiffs cited *zero* examples of relevant investigations or prosecutions since S.B.1 was passed" is contrary to the record. State Br. 19; *see also* Intv. Br. 31, 33-34. The OAG has identified investigations of possible violations related to S.B.1's

disclosure requirements for mail ballots (§6.03) and the Canvassing Restriction (§ 7.04). ROA.37695.[9] The district court's findings of traceability are well supported by the trial evidence and are correct, not clearly erroneous. *Hess*, 26 F.4th at 233; ROA.37702-21.

Accordingly, Appellees have associational standing to challenge the Challenged Provisions.

### b. *Organizational Standing*

Appellees also have organizational standing to bring these challenges under Section 208. The district court correctly found that "the organizational injury here is a perceptible impairment of one of Appellees' core services—voter assistance—resulting from violations of a federal law—Section 208." ROA.37736.

With respect to the Disclosure and Oath Provisions, the district court found that many of the Appellee organizations "have had difficulty recruiting members to provide voting assistance services due to the threat of criminal sanctions under S.B.1's Assistor Disclosure and Oath requirements, and some members have stopped providing assistance altogether." ROA.37742. Moreover, those injuries are fairly traceable to Appellants' enforcement of S.B.1. Indeed, "[t]he chilling effect that the Assistor Disclosure

---

[9] Moreover, as the district court found, "[t]hroughout this litigation, the OAG has, invoking the investigative privilege, withheld documents discussing 'actual or alleged illegal voting, election fraud, or other criminal conduct in connection with' voting and voter assistance." ROA.37695. Appellants cannot use investigative privilege as both sword and shield.

and Oath requirements would have on individuals' willingness to provide voting assistance—and the downstream effects on organizations' ability to perform voter assistance services—was 'sufficiently predictable' to establish causation for standing purposes." ROA.37743 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. at 383). The district court found that "the organizations' injuries are traceable to the Secretary, who creates forms implementing the requirements, and to local election officials, who administer oaths, collect disclosures, and review mail ballots in the counties in which [Appellees] operate." ROA.37743. "Their organizational injuries are also fairly traceable to the State Defendants and the local DAs in those counties based on the chilling effect that the 'credible threat' of criminal enforcement has on their willingness to provide BBM assistance." ROA.37743-44. And the district court correctly found that "[a]n order declaring the challenged language in the amended Oath and the Assistor Disclosure requirements unlawful and enjoining their enforcement would remove the chilling effect on voter assistance that has impaired the organization's ability to provide assistance services to voters." ROA.37744. Those findings readily establish standing.

With respect to the Bans on Compensated Assistance, the district court correctly found that many of Appellees' organizations "are regulated by Section 6.06 of S.B.1 because they have provided their staff members and volunteers with 'compensation' … for assisting voters." ROA.37745. Similarly, the district court found that the LUPE

Appellees "have supported ballot measure and/or candidates in the past," "advocated for their positions through in-person voter engagement efforts," "reasonably expect mail-in ballots to be present during such interactions with voters," and "maintain staff and/or volunteers who receive some 'benefit' in exchange for their in-person canvassing efforts." ROA.37746. As a result of S.B.1, however, "Plaintiffs have stopped assisting mail voters." ROA.37745. Thus, Appellees have been injured because they have been unable to carry out activities that they previously performed. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982) ("If … [defendant's] steering practices perceptibly impaired [plaintiff's] ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact."). Further, the district court correctly found that Appellees' "organizational injuries—their inability to provide mail-ballot assistance—[are] fairly traceable to the State Defendants and to the DAs in the jurisdictions in which Plaintiffs operate" because they would be subject to "criminal liability" if they continued to engage in those activities. ROA.37745. And their injuries would be redressed by a favorable ruling because enjoining the Challenged Provisions "by the State Defendants and County DAs would remove the restrictions and burdens on assistors that have frustrated Appellees' ability to provide voting assistance services and Texas voters' right to vote with their chosen assistors under Section 208." ROA.37747.

Appellants largely ignore these factual findings—and the evidence on which they are based—and merely challenge the district court's finding that "Plaintiffs have suffered an organizational injury because form requirements delay assisting voters." State Br. 19. As discussed above, however, delays in providing voter assistance were not the only basis for the district court's findings of organizational standing. At any rate, Appellants' argument that "any delays would be *de minimis*," State Br. 19, is contrary to the record. The evidence shows that the delays, "which are especially burdensome on voters with physical disabilities," were sufficient to deny voters their choice of assistor. ROA.37717.

Accordingly, Appellees have standing to maintain this action.

## C. Section 208 Provides a Private Right of Action

State-Appellants alone argue that Appellees have no private right to enforce Section 208. State Br. 46. They are wrong. Indeed, "every court that has considered the issue—and the Attorney General of the United States—agree that private parties may enforce section 208." *Fla. State Conf. of NAACP v. Lee*, 576 F.Supp.3d 974, 990 (N.D. Fla. 2021) (holding that voting rights organizations stated a claim under Section 208 of VRA and collecting cases). The same result is warranted here.

As the Supreme Court has explained, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a pri-

vate right but also a private remedy," and "[s]tatutory intent on this latter point is determinative." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (internal citations omitted). Here, Congress specifically amended Section 3 of the VRA in 1975 to add that "an aggrieved person" may also "institute[] a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. §10302(a). The Senate Report makes clear that the change was "to afford to private parties the same remedies which Section 3 now affords only to the Attorney General" and that the term "aggrieved person" means "any person injured by an act of discrimination," which can include both "an individual or an organization representing the interests of injured persons." S. Rep. No. 94-295, at 39-40 (1975); *see also id.* at 40 ("The Committee concludes that it is sound policy to authorize private remedies to assist the process of enforcing voting rights."). State-Appellants have no answer and entirely overlook this provision of the VRA. *See* State Br. 46-47. As explained above, Appellees are "aggrieved" both by direct harm from S.B.1's discriminatory laws and as organizations representing the interests of injured individuals.

The Supreme Court long ago concluded that this same provision, 52 U.S.C. §10302(a), provides a private right of action to enforce the VRA's prohibition on poll taxes. *Morse v. Republican Party of Virginia*, 517 U.S. 186, 233-34 (1996) ("Since § 10 is, by its terms, a statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments, Congress must have intended it to provide private

remedies.") (internal citation omitted). The same applies to Section 208. *E.g.*, *Fla. State Conf.*, 576 F. Supp. 3d at 990 ("[S]ection 208, by its terms, enforces disabled voters' Fourteenth Amendment rights …."); *see also League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 710 (N.D. Ohio 2024) (nonpartisan organization "may pursue this action under Section 208 directly" or "through a § 1983 claim"); *La Union del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 504, 556-57 (W.D. Tex. 2022) (same).[10]

State-Appellants' contend that the VRA "is enforced through other mechanisms," namely 52 U.S.C. §20104 and §20105. State Br. 46. That is incorrect. Section 20105 applies only to compliance "with this chapter [201]," i.e., Sections 20101-07 only, which does not include Section 208 of the VRA, 52 U.S.C. §10508. And Section 20106 is explicit that "[t]his chapter [201] shall not be construed to impair any right guaranteed by the [VRA]." 52 U.S.C. §20106. Thus, the enforcement scheme in Chapter 201 (titled the "Voting Accessibility for the Elderly and Handicapped Act") is in addition to, and not instead of, the enforcement mechanism in VRA Section 3.

For the same reason, State-Appellants' argument that Chapter 201 precludes enforcement of Section 208 through 42 U.S.C. §1983, State Br. 46, is equally baseless.

---

[10]     *See also Democracy N.C. v. N.C. State Bd. of Elections*, 590 F.Supp.3d 850, 871 (M.D. N.C. 2022) (allowing plaintiff to proceed with Section 208 claim); *Ark. United v. Thurston*, 517 F.Supp.3d 777, 790 (W.D. Ark. 2021) (holding that Section 208 "creates a private right of action to enforce the VRA" and that "the VRA clearly permits … 'an aggrieved person' to … to enforce the statute's requirements").

In any event, as the Supreme Court has explained, "§ 1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 172 (2023)).  Appellants' claims, which seek to enforce the federal individual right to an assistor of the voter's choice guaranteed by Section 208, are enforceable via Section 1983.

### D. The District Court's Injunction as to Nonparty County and Local Prosecutors Is Proper

Defendant-Appellant the Harris County District Attorney (the "DA") alone challenges the scope of the injunction entered by the district court and only in part.[11]  DA Br. 26-32.  Specifically, the DA challenges the portions of the district court's order stating that "all county and local prosecutors are permanently enjoined from deputizing the Attorney General, appointing him *pro tem*, or seeking his appointment *pro tem* from or by a district judge to prosecute alleged violations of the [the Challenged Provisions] that occur within their jurisdictions." ROA.37778-82.  According to the DA, prosecutors cannot be bound by the injunction as nonparties.  DA Br. 26-32.  Not so.

---

[11]  A brief was submitted by the Harris County District Attorney's Office, but the *Office* is not a party to this case.  *See* ROA.6267.

As the DA acknowledges, injunctions may bind not only (A) "parties" and (B) their "officers, agents, servants, employees, and attorneys" but also (C) "other persons who are in active concert or participation with" the foregoing. DA Br. 26; Fed. R. Civ. P. 65(d)(2). This Court has explained that Rule 65(d)(2)(C) encompasses nonparties that aid or abet violations of an injunction. *Texas v. Dep't of Lab.*, 929 F.3d 205, 211 (5th Cir. 2019). In other words, "all county and local prosecutors" are necessarily bound by the terms of the injunction and prohibited from aiding and abetting a violation by, or being in active concert or participation with, the Attorney General— even if not specifically named in the order. The district court's injunction simply makes this general rule clearer.

The DA's assertion that the "district court's description of Texas prosecutors 'deputizing the Attorney General' is inconsistent with Texas law," DA Br. 29, inexplicably ignores Texas law, including the Texas Supreme Court's decision in *Stephens*, in which the Court specifically described the formal act through which local district attorneys consent to the Attorney General prosecuting election crimes as "*a deputization order.*" 663 S.W.3d 45, 56 (Tex. Crim App. 2021) (emphasis added); *see also id.* ("By requiring *deputization* ….") (emphasis added); *see* also Tex. Gov't Code. § 402.028(b) ("A district attorney … may appoint *and deputize* an assistant attorney general ….") (emphasis added).

The DA also hypothesizes that the district court overstepped if, by calling district attorney's "agents of the State," the court really meant "'agents' of other state officials." DA Br. 28-29. But district attorneys in Texas undoubtedly prosecute individuals on behalf of the State, and there is no reason to believe the court meant anything other than what it said.

Similarly, even if an "attorney *pro tem*" is a term of art for appointment by a judge (and not a district attorney), DA Br. 30, the district court did not use that term of art in its injunction. *E.g.*, ROA.37778. The Latin modifier "*pro tem*" or "*pro tempore*" means "for the time being" or temporarily, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/pro%20tempore, and assistant prosecuting attorneys can be retained as "permanent or temporary" staff members, *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994). As discussed above, the district court did not exceed its authority by enjoining district attorneys from temporarily appointing the Attorney General to prosecute election crimes as an end-run around the injunction.

Nor did the district court overstep by enjoining district attorneys from asking courts to do the same. DA Br. 31. Indeed, contrary to the implication in the DA's brief, this portion of the district court's injunction *recognizes* that the Attorney General's staff may also be appointed *pro tem* by judges and simply prohibits district attorneys from aiding and abetting a violation of the injunction by the Attorney General

by affirmatively "seeking [the Attorney General's] appointment *pro tem* from or by a district judge." *E.g.*, ROA.37778. The district court's injunction is thus entirely valid.

## CONCLUSION

For the foregoing reasons, the district court's order on Appellees' Section 208 claims should be affirmed in full.

March 26, 2025

Respectfully submitted,

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

/s/ Nina Perales

Nina Perales
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org

Aaron J. Curtis
Charles Gehnrich
Natalie Howard
Augustus Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8901

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 589-8000

Sean Morales-Doyle
Jasleen K. Singh
Patrick A. Berry
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(212) 463-7308

*Counsel for La Unión del Pueblo
Entero; Southwest Voter Registration
Education Project; Mexican
American Bar Association of Texas;
Texas Hispanics Organized for
Political Action; JOLT Action;
William C. Velasquez Institute; FIEL
Houston, Inc.*

Leah J. Tulin
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
1140 Connecticut Avenue NW,
Suite 1150
Washington, DC 20036
(202) 650-6397
*Counsel for Friendship-West Baptist
Church; Texas Impact; James Lewin*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Nina Perales*

Nina Perales

March 26, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 12,163 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman font in 14-point size.

*/s/ Nina Perales*
Nina Perales

March 26, 2025