## No. 24-50826

In the United States Court of Appeals

for the Fifth Circuit

_____

LA UNIÓN DEL PUEBLO ENTERO; SOUTHWEST VOTER REGISTRATION
EDUCATION PROJECT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS;
TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT
ACTION; WILLIAM C. VELASQUEZ INSTITUTE; FIEL HOUSTON,
INCORPORATED; FRIENDSHIP-WEST BAPTIST CHURCH; TEXAS IMPACT;
JAMES LEWIN; MI FAMILIA VOTA,

*Plaintiffs-Appellees,*

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS;
WARREN K. PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL
OF TEXAS; STATE OF TEXAS; JANE NELSON, IN HER OFFICIAL CAPACITY AS
TEXAS SECRETARY OF STATE; HARRIS COUNTY REPUBLICAN PARTY;
DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN
SENATORIAL COMMITTEE; SEAN TEARE, HARRIS COUNTY DISTRICT
ATTORNEY,

*Defendants-Appellants,*

REPUBLICAN NATIONAL COMMITTEE,

*Movant-Appellant.*

_____

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS,

*Plaintiffs-Appellees,*

*v.*

KEN PAXTON, TEXAS ATTORNEY GENERAL,

*Defendant-Appellant.*

_____

LULAC TEXAS; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT;
VOTE LATINO,

*Plaintiffs-Appellees,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY
GENERAL,

*Defendant-Appellant.*

_____

DELTA SIGMA THETA SORORITY, INCORPORATED; THE ARC OF TEXAS,
*Plaintiffs-Appellees,*

*v.*

GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS THE GOVERNOR
OF TEXAS; WARREN KENNETH PAXTON, JR., IN HIS OFFICIAL CAPACITY AS
THE ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants.*

**On Appeal from the United States District Court for the
Western District of Texas, San Antonio Division
No. 5:21-cv-844 (Rodriguez, J.)**

**INTERVENOR-DEFENDANTS-APPELLANTS'
REPLY BRIEF**

John M. Gore
E. Stewart Crosland
Louis J. Capozzi, III
Benjamin P. Daus
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
bdaus@jonesday.com

Counsel for Intervenor-Appellants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 5

    I.    APPELLEES LACK STANDING TO CHALLENGE THE OATH AND
        DISCLOSURE PROVISIONS ........................................................... 5

        A.    Appellees Lack Associational Standing ............................ 5

        B.    Appellees Lack Organizational Standing. ..................... 10

    II.   APPELLEES' CLAIMS FAIL ON THE MERITS ................................... 12

        A.    The Challenged Provisions Do Not Implicate Section
              208. ................................................................................. 14

        B.    The Challenged Provisions Do Not Violate Section
              208. ................................................................................. 24

CONCLUSION ...................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. State Conf. of NAACP v. Marshall,*
No. 2:24-cv-00420, 2024 WL 4448841 (N.D. Ala. Oct. 4, 2024) ...................................................................................19

*Altria Grp., Inc. v. Good,*
555 U.S. 70 (2008) ................................................................14

*Ark. United v. Thurston,*
626 F. Supp. 3d 1064 (W.D. Ark. 2022) ................................19

*Bates v. City of Little Rock,*
361 U.S. 516 (1960) .............................................................. 7

*Bd. of Trs. of the Univ. of Ala. v. Garrett,*
531 U.S. 356 (2001) ....................................................... 20, 21

*Buckley v. Valeo,*
424 U.S. 1 (1976) ................................................................ 29

*California v. Texas,*
593 U.S. 659 (2021) .............................................................. 8

*Carey v. Wis. Elections Comm'n,*
624 F. Supp. 3d 1020 (W.D. Wis. 2022) ................................19

*Cascabel Cattle Co. v. United States,*
955 F.3d 445 (5th Cir. 2020) ...............................................15

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ...........................................20, 21, 22, 23

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985) .............................................................21

*Clapper v. Amnesty Int'l,*
    568 U.S. 398 (2013)................................................................ 6

*Coal. for Educ. in Dist. One v. Bd. of Elecs.,*
    370 F. Supp. 42 (S.D.N.Y. 1974) ......................................... 23

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019) ............................................................... 7

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ....................................................*passim*

*Gilmore v. Greene Cnty. Democratic Party Exec. Comm.,*
    435 F.2d 487 (5th Cir. 1970).............................................. 23

*Harris v. Siegelman,*
    695 F. Supp. 517 (M.D. Ala. 1988)..................................... 23

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) .............................................................12

*In re Bonvillian Marine Serv., Inc.,*
    19 F.4th 787 (5th Cir. 2021).................................................11

*In re Bourgeois,*
    902 F.3d 446 (5th Cir. 2018)...............................................16

*Justice v. Hosemann,*
    771 F.3d 285 (5th Cir. 2014) ................................................ 7

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.,*
    82 F.4th 345 (5th Cir. 2023)............................................... 10

*Lance v. Coffman,*
    549 U.S. 437 (2007)................................................................ 9

*League of Women Voters of Ohio v. LaRose,*
    741 F. Supp. 3d 694 (N.D. Ohio 2024) ..............................19

*League of Women Voters v. Fla. Sec'y of State,*
   66 F.4th 905 (11th Cir. 2023) ................................................................ 27

*N.C. State Conf. of NAACP v. McCrory,*
   831 F.3d 204 (4th Cir. 2016) ................................................................ 24

*NAACP v. Alabama,*
   357 U.S. 449 (1958) ............................................................................. 7

*Nick v. Bethel,*
   No. 3:07-cv-98, 2008 WL 11456134 (D. Alaska July 30, 2008) ............ 24

*OCA-Greater Hous. v. Texas,*
   867 F.3d 604 (5th Cir. 2017) ........................................................... 9, 18

*Oregon v. Mitchell,*
   400 U.S. 112 (1970) ............................................................................. 23

*P.R. Org. for Pol. Action v. Kusper,*
   490 F.2d 575 (7th Cir. 1973) ............................................................... 24

*Priorities USA v. Nessel,*
   628 F. Supp. 3d 716 (E.D. Mich. 2022) ................................................ 15

*Shelby County v. Holder,*
   570 U.S. 529 (2013) ...................................................................... 22, 23

*Shelton v. Tucker,*
   364 U.S. 479 (1960) ............................................................................. 7

*Shrimpers & Fishermen of the RGV v. Tex. Comm'n on Env't Quality,*
   968 F.3d 419 (5th Cir. 2020) ................................................................ 6

*Tennessee v. Lane,*
   541 U.S. 509 (2004) ............................................................................. 21

*Tex. State LULAC v. Elfant,*
   52 F.4th 248 (5th Cir. 2022) ............................................................ 6, 12

iv

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ................................................................5, 8, 9, 10

*United States v. Berks County,*
   277 F. Supp. 2d 570 (E.D. Pa. 2003) .................................................... 24

*United States v. Charleston County,*
   316 F. Supp. 2d 268 (D.S.C. 2003) ........................................................ 23

*United States v. Long County,*
   No. CV 206-40, 2006 WL 8458526 (S.D. Ga. Feb. 10, 2006) ................ 24

*Vote.Org v. Callanen,*
   89 F.4th 459 (5th Cir. 2023) ....................................................................31

*Yee v. City of Escondido,*
   503 U.S. 519 (1992) ................................................................................19

*Young Conservatives of Tex. Found. v. Smatresk,*
   73 F.4th 304 (5th Cir. 2023) ...................................................................14

## STATUTORY AND CONSTITUTIONAL AUTHORITES

18 U.S.C. § 610 ........................................................................................... 26

52 U.S.C. § 10508 .............................................................................*passim*

52 U.S.C. § 21083 ...................................................................................... 27

Tex. Elec. Code § 13.002 ........................................................................... 27

Tex. Elec. Code § 64.034 ...........................................................4, 25, 26, 27

Tex. Elec. Code § 64.0322 ........................................................................... 9

Tex. Elec. Code § 86.010 ............................................................................. 9

Tex. Elec. Code § 86.013 .............................................................................. 9

Tex. Elec. Code § 86.0105 ........................................................... 4, 8, 15, 15

Tex. Elec. Code § 276.015 ................................................................4, 8, 15, 29

**OTHER AUTHORITIES**

S. Rep. 97-417 (1982) .............................................................*passim*

**INTRODUCTION**

Appellees' briefs confirm that the District Court erred in striking down S.B. 1's sensible voter-assistance regulations. They also confirm that accepting Appellees' arguments and the District Court's legal conclusions would have radical and untenable implications.

On standing, Appellees' position reduces to the belief that *any* litigant has standing to bring a Section 208 suit merely by alleging that a state voting rule subjectively chills him from providing or requesting voter assistance. If allowed to stand, that theory would open the federal courthouse doors to *any* individual wishing to challenge a broad swath of commonplace and commonsense voting rules. It therefore would defeat the fundamental purpose of standing doctrine: to ensure that only those with concrete and particularized injuries can sue.

On the merits, Appellees actually concede their case away. Appellees first espouse a maximalist statutory reading, arguing that Section 208 prohibits States from "impos[ing] or apply[ing]" *any* "limitations" on a voter's choice of assistor beyond Section 208's prohibitions on assistance by an agent of the voter's employer or union. Delta Sigma Theta ("DST") Br. 37; LUPE Br. 16 ("no other circumstances"). LUPE Appellees go so far as to assert that Section 208 prohibits States from "ban[ning] convicted felons

from assisting voters," LUPE Br. 34, even though States can ban convicted felons from voting. That breathtaking assertion alone demonstrates that Appellees' reading is irreconcilable with the statutory text, the Fourteenth Amendment, and States' robust constitutional authority to regulate elections. Principal Br. 36-45.

Appellees' maximalist reading, moreover, posits that Section 208 preempts any rule that "deters" anyone from providing or requesting voter assistance, or makes anyone "unwilling" to do so. DST Br. 43, 46, 48, 50, 55, 57; LUPE Br. 1, 11, 25, 28-29, 39. Yet Appellees do not consistently embrace this position—and their selective embrace gives the game away. On the one hand, Appellees argue that States may not enact any laws regulating voter assistance beyond Section 208's two limitations, even when such laws are generally applicable to all assistors and voters. DST Br. 37; LUPE Br. 16, 34. Yet on the other hand, Appellees concede that assistors "remain subject to" other "generally applicable laws" that are applicable but not limited to assistors, DST Br. 43, such as "electioneering" bans, LUPE Br. 35, even when those laws affect an individual's "willing[ness] to assist" a voter, DST Br. 43.

*Nothing* in Section 208's text, legislative history, or logic supports Appellees' proposed distinction between generally applicable assistance regulations and generally applicable regulations that reach assistance and

non-assistance activities.  Not only is the line between assistance and non-assistance regulations often blurry, but it also collapses under the weight of Appellees' own concessions.  Indeed, as Appellees acknowledge, individuals may be as readily "unwilling" to provide or request assistance due to a generally applicable non-assistance regulation—such as a ban on electioneering or firearms in a polling place—as due to a generally applicable assistance regulation.  DST Br. 43; LUPE Br. 35; *see* Principal Br. 36-37.

Thus, Section 208's preemptive sweep cannot turn on whether the rule is a voter-assistance regulation that makes individuals "unwilling" to provide or request assistance.  And even if it did, that would not save all of Appellees' Section 208 claims.  After all, Section 7.04's vote-harvesting ban does not even *apply* to voter assistance; it is instead a generally applicable non-assistance regulation of electioneering in the physical presence of a mail ballot.  *See* LUPE Br. 35 ("electioneering" bans do not violate Section 208).

All of this underscores what Intervenor-Appellants have said all along.  Instead of preempting voting laws that subjectively "chill" providing or requesting assistance, Section 208 serves an important and narrow purpose.  It prohibits States from restricting *who* voters may use as assistors to State-approved individuals.  Because S.B. 1 does *not* restrict *who* may serve as an assistor, it does not even implicate, let alone violate, Section 208.

If more were somehow needed, Appellees make yet another concession that rules out their proposed construction of Section 208. Appellees acknowledge that Congress intended to preserve States' authority to enact "voter assistance procedures, including measures to assure privacy for the voter and the secrecy of his vote." DST Br. 43 (quoting S. Rep. 97-417, at 62-63 (1982)). Such "procedures" obviously go beyond States merely parroting Section 208's bans on assistance by the voter's employer or union. *Cf. id.* at 37; LUPE Br. 16, 34.

The challenged S.B. 1 provisions implement precisely the type of "voter assistance procedures" that Congress preserved States' authority to enact. S. Rep. 97-417, at 62-63. The Oath Provision merely communicates *preexisting* legal obligations to assistors. Tex. Elec. Code § 64.034. The Disclosure Provisions help Texas monitor for abuse in voter assistance and enforce Section 208's prohibition on assistance by the voter's employer or union. *Id.* §§ 64.0322, 86.010(e)(2)-(3), 86.013(b)(2)-(3). And the Offense Provisions reduce the risk of coercion or pressure by preventing organizations from paying people to hunt for and solicit strangers to accept voter assistance. *Id.* §§ 86.0105, 276.015. Thus, S.B. 1 ensures that every *voter*, rather than paid partisans, makes the "choice" of who assists him, 52 U.S.C. § 10508, and that

his ballot reflects "*his* vote," not someone else's vote secured through undue influence, coercion, or pressure, S. Rep. No. 97-417, at 63 (emphasis added).

For all these reasons and more, the Court should decline Appellees' invitation to cripple the Legislature's ability to provide free and fair elections for all Texans. It should reverse.

## ARGUMENT

### I. APPELLEES LACK STANDING TO CHALLENGE THE OATH AND DISCLOSURE PROVISIONS.

The Court should dismiss Appellees' challenges to the Oath and Disclosure Provisions because Appellees lack standing. Principal Br. 24-35.

### A. Appellees Lack Associational Standing.

Appellees lack associational standing to challenge the Oath and Disclosure Provisions. Principal Br. 26-33. Even now, their briefs identify no cognizable harm from those provisions and fail to establish redressability on Appellees' challenge to the Oath Provision.

In fact, Appellees have abandoned two of their three original theories of injury. They (correctly) concede that these provisions' requirement to complete a form does not constitute an injury. LUPE Br. 39; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (plaintiff must show injury has common-law analogue). They also abandon their claim of injury from an alleged increased risk of an assistor's clerical error. *See* DST Br. 22-36; LUPE

Br. 36-45; Principal Br. 27-28; *Shrimpers & Fishermen of the RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424-25 (5th Cir. 2020) (increased risk of injury too speculative for standing).

Instead, Appellees fall back on their argument that these provisions harm members by deterring them from providing or obtaining assistance. DST Br. 22-30; LUPE Br. 37-42. They also assert new arguments that the provisions delay the assistance they provide to voters, LUPE Br. 29, 45, and that they have standing because these provisions directly regulate their members, DST Br. 28. Appellees' deterrence argument fares no better this time around, and their two new arguments lack merit.

1.　"[A]llegations of a subjective 'chill' are not . . . adequate" for standing, *Clapper v. Amnesty Int'l*, 568 U.S. 398, 418 (2013), but that is all Appellees offer on their deterrence theory. Appellees assert that the Oath and Disclosure Provisions made their members unwilling to provide or request assistance. *See* DST Br. 25, 27; LUPE Br. 38-39. But Appellees never connect the dots to explain *why*, as Intervenor-Appellants previewed. *See* Principal Br. 29; *Tex. State LULAC v. Elfant*, 52 F.4th 248, 257 (5th Cir. 2022) (rejecting a nearly identical deterrence theory resting on a "highly attenuated chain of possibilities").

Appellees still do not identify anyone who intends to violate these provisions. DST Br. 22-36; LUPE Br. 36-45. Nor do they cite any evidence that such a violation would be observed, reported, or prosecuted. DST Br. 22-36; LUPE Br. 36-45. Appellees even admit that their "members' injury is . . . not the fear of prosecution." DST Br. 25. That is a fatal concession because they never explain *what* is allegedly deterring their members if not a (subjective and unfounded) fear of prosecution. *Id.* at 22-36; LUPE Br. 36-45. Without a fear of prosecution—which Appellees concede they cannot prove—the causal chain connecting their alleged injuries to the Oath and Disclosure Provisions is broken, thus eliminating this basis for standing. *See* Principal Br. 29.

Appellees next insist that subjective chill alone can sometimes establish standing. DST Br. 27, 53; LUPE Br. 29-30. Their cases are inapt. Most involve the First Amendment, where special rules against chilling associational freedoms attach. *See Shelton v. Tucker*, 364 U.S. 479, 490 (1960); *Bates v. City of Little Rock*, 361 U.S. 516, 522-23 (1960); *NAACP v. Alabama*, 357 U.S. 449, 458-60 (1958); *Justice v. Hosemann*, 771 F.3d 285, 287-89, 291 (5th Cir. 2014). Appellees' other case involved loss-of-funding injuries to States shown through comprehensive studies, *Dep't of Com. v. New York*, 588 U.S. 752 (2019) (DST Br. 53), not mere "speculation" or a

"highly attenuated chain of possibilities," *California v. Texas*, 593 U.S. 659, 678 (2021) (cleaned up) (narrowly interpreting *Department of Commerce*). Appellees' anecdotal witness testimony, *see* ROA 37701-37728, does not show anything beyond a "highly attenuated chain of possibilities," *California*, 593 U.S. at 678. Concluding otherwise would permit *any* plaintiff to manufacture standing merely by producing a single idiosyncratic witness willing to testify to subjective chill. Principal Br. 28-33.

Appellees also resort to muddying the waters, complaining that S.B. 1 prohibits their members from receiving help from paid assistors. LUPE Br. 40. But the provisions that bar such assistance are the *Offense* Provisions, not the Oath or Disclosure Provisions. *See* Tex. Elec. Code §§ 86.0105, 276.015. Intervenor-Appellants have not contested Appellees' standing to challenge the Offense Provisions. Principal Br. 25-35. And because "standing is not dispensed in gross," *TransUnion*, 594 U.S. at 431, Appellees cannot rely on harms they attribute to the Offense Provisions to sustain their attack on the Oath or Disclosure Provisions.

2. Appellees next assert that delays caused by complying with the Oath or Disclosure Provisions deprived voters of their "choice of assistor," but the record does not support this assertion. LUPE Br. 29, 45. Appellees' only record citation concerns a LUPE employee's testimony that she intended to

assist a particular voter, but by the time she completed her disclosures, the voter was receiving assistance from someone else. *Id.*; *see* ROA 37717.

This anecdote does not establish standing for three reasons. *First*, the asserted harm—being deprived an assistor of the voter's choice—belongs to the *voter*, not the LUPE employee, *see* 52 U.S.C. § 10508, and there is no evidence the voter was a LUPE member, LUPE Br. 29, 45. *Second*, nothing in the record indicates the voter *preferred* assistance from the LUPE employee over the individual who provided assistance. *See* ROA 37717. *Third*, in all events, a voter having to wait a few moments while an assistor completes forms is not a cognizable injury. *See* Principal Br. 26-27; *TransUnion*, 594 U.S. at 424.

3.  Appellees next observe that the Oath and Disclosure Provisions directly regulate their members. DST Br. 28.[1] But that is a generalized grievance, not a basis for standing, because these provisions regulate *every* member of the public. Tex. Elec. Code §§ 64.034, 64.0322, 86.010(e)(2)-(3), 86.013(b)(2)-(3); *see Lance v. Coffman*, 549 U.S. 437, 439-40 (2007)

---

[1] Although Appellees present this as an organizational-standing argument, their brief describes the Oath and Disclosure Provisions as regulating their members rather than Appellees as organizations. DST Br. 27-28. This argument therefore is better understood as an associational-standing argument. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). It fails regardless. *See infra* I.B.

(federal courts are not a "forum for generalized grievances"); *TransUnion*, 594 U.S. at 423-24 (harms must be "particularized" to plaintiff, not common to the public).

4.  Finally, in all events, Appellees lack standing to challenge the Oath Provision because their alleged harm from that provision is not redressable. Principal Br. 32.  Appellees offer no response to this point.  DST Br. 22-36; LUPE Br. 36-45.

## B.    Appellees Lack Organizational Standing.

Appellees also fail to demonstrate organizational standing.  Appellees allege they have struggled in recruiting members to assist voters, but they fail to show that this trouble flows from their members harboring credible fears of prosecution traceable to the Oath or Disclosure Provisions.  *See* LUPE Br. 42; *supra* I.A.1; Principal Br. 28-32, 33-35.

Nor do Appellees show any "perceptible impair[ment]" to their mission. *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 353 (5th Cir. 2023) (cleaned up).  They point to their expenditure of money to educate voters about S.B. 1, but "providing voting-rights education and counseling" *is* Appellees' core mission, not a *frustration* of it.  DST Br. 27; *see* LUPE Br. 23; Principal Br. 34-35; *see also FDA v. All. for Hippocratic*

*Med.*, 602 U.S. 367, 394 (2024) (plaintiffs "cannot spend [their] way into standing").

Appellees' various responses are unpersuasive.

*First*, Appellees insist that these provisions interfere with their core activities. DST Br. 26-30; LUPE Br. 42-45. But completing a form or swearing an oath does not constitute cognizable harm or plausibly impinge on any organization's mission. *See supra* I.A. And while DST Appellees say they must now expend resources to "quell members' fears," DST Br. 27, those fears—and, thus, any derivative spending to "quell" them—are not traceable to these provisions and cannot confer standing, *see supra* I.A.1.

*Second*, Appellees argue that *OCA-Greater Houston v. Texas* mandates that being "forced to dedicate resources" to educate members about challenged laws suffices for standing. DST Br. 28 (citing 867 F.3d at 610). But the Supreme Court's intervening clarification that "divert[ing] . . . resources in response to a defendant's actions" does not establish standing, *All. for Hippocratic Med.*, 602 U.S. at 395, now controls, *see In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). And as the Supreme Court explained, the resource-diversion theory espoused by Appellees fails because it would permit every "organization[] in

America [to] have standing to challenge almost every federal policy that they dislike." *All. for Hippocratic Med.*, 602 U.S. at 395.

Nor, as Appellees contend, does the Supreme Court's earlier decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), offer a way around this recent clarification. *See* DST Br. 27; LUPE Br. 44. The *Havens* plaintiff had standing because the defendant interfered with its counseling services by providing false information—an act akin to a manufacturer "selling defective goods to [a] retailer." *All. for Hippocratic Med.*, 602 U.S. at 395. Appellees make no analogous showing here.

*Finally*, Appellees' rehashing of their deterrence argument, *see* DST Br. 27-28; LUPE Br. 42-43, is just as doomed for organizational standing as it is for associational standing, *see supra* I.A.1; *Tex. State LULAC*, 52 F.4th at 257. The Court should dismiss Appellees' challenges to the Oath and Disclosure Provisions.

## II.    APPELLEES' CLAIMS FAIL ON THE MERITS.

Congress enacted Section 208 for an important purpose: to stop States from forcing voters "who require[] assistance to vote by reason of blindness, disability, or inability to read or write" to use a State-approved individual for assistance. 52 U.S.C. § 10508; Principal Br. 3-4, 36-45. *None* of the S.B. 1 provisions Appellees challenge so much as address, let alone dictate, *who*

may serve as an assistor.  The Oath, Disclosure, and Offense Provisions do not require any voter to use a State-approved individual for assistance.  They therefore do not even implicate, let alone violate, Section 208.  Principal Br. 45-46.

Appellees' competing construction of Section 208 is radical—so radical, in fact, that they do not consistently embrace it.  Appellees first stake out a maximalist position, arguing that Section 208 preempts all voter-assistance regulations that make an individual subjectively "unwilling" to provide or request assistance, other than rules that merely reiterate Section 208's employer and union bans.  DST Br. 36, 42-43; LUPE Br. 16, 34-35.  But they readily concede that assistors "remain subject to" other "generally applicable laws" that apply to (but are not limited to) voter assistance, DST Br. 43, such as "electioneering" bans, LUPE Br. 35, even when those laws make a would-be assistor no longer "willing . . . to assist," DST Br. 43.  And they acknowledge Congress's intent to preserve States' authority to enact "'voter assistance procedures, including measures to assure privacy for the voter and the secrecy of his vote.'"  *Id.* (quoting S. Rep. 97-417, at 62-63).

These concessions are correct—and dispose of Appellees' Section 208 claims.  Indeed, the Oath, Disclosure, and Offense Provisions are precisely the kind of generally applicable "voter assistance procedures" that States

retain the authority to enact.   Principal Br. 45-46.   Appellees' various attempts to transform Section 208 to preempt the challenged S.B. 1 provisions rest upon a misreading of the statutory text, selective rewriting of the legislative history, inapposite and unpersuasive case-law, and disregard for the Fourteenth Amendment.  The Court should reverse.

## A.    The Challenged Provisions Do Not Implicate Section 208.

This Court presumes "that Congress did not intend to displace state law," and Section 208 does not displace the challenged S.B. 1 provisions. *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (cleaned up); *see Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). Those provisions do not even implicate, let alone violate, Section 208 because they do not require any voter to use a State-approved individual for assistance.  Principal Br. 36-46.

Appellees' efforts to expand Section 208's preemptive sweep uniformly fail.

1. Appellees' proposed construction of Section 208 contravenes the statutory text.  *First*, Appellees suggest that Section 208's reference to "a person of the voter's choice," 52 U.S.C. § 10508, means "any" person the voter may wish to select, DST Br. 38-40; LUPE Br. 20-21.  Thus, they argue, Section 208 preempts every state law that might make a person unwilling to

provide or request assistance, as any such law may result in the voter not receiving assistance from "any" person they wish.  DST Br. 38-40, 42-43; LUPE Br. 20-21, 35.

Appellees, however, cannot square this reading with Section 208's text. Congress's use of "a person" in the same sentence as "[a]ny voter," 52 U.S.C. § 10508, means that "a" in Section 208 has a "different meaning[]" than "any," *Cascabel Cattle Co. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). Thus, while "a" may be synonymous with "any" in some contexts, *see* DST Br. 38-40 (citing several cases); LUPE Br. 20-21 (same), it cannot be here. Rather, Section 208's plain meaning is that voters may "select 'a person' to assist them," but not necessarily "*the* person of their choice." *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 733 (E.D. Mich. 2022) (cleaned up); Principal Br. 37-39.

*Second*, Appellees contend that because Section 208 excepts two categories of people from serving as assistors—agents of the voter's employer or union—States may not except more.  *See* DST Br. 40-42; LUPE Br. 18-21, 34 (States may not "ban convicted felons from assisting voters").  But this Court need not resolve that question because the challenged provisions do not except *anyone* from serving as an assistor.  Tex. Elec. Code §§ 64.0322, 64.034, 86.010(e)(2)-(3), 86.0105, 86.013(b)(2)-(3), 276.015.  They instead

establish neutral, generally applicable rules that apply to *all* assistors (and, in the case of Section 7.04, to all persons).  That some individuals may choose not to serve as assistors rather than comply with these rules does not convert the rules into "exceptions" on *who* may serve as assistors.  If that were true, then States could not apply "generally applicable laws" or "voter assistance procedures" that affect whether a would-be assistor is "willing . . . to assist." DST Br. 43; LUPE Br. 35.  But even Appellees concede that States may do so. DST Br. 43; LUPE Br. 35.

Appellees' concession thus defeats their invocation of the *expressio unius* canon.  *See* DST Br. 40-42;  LUPE Br. 19-21.  That canon is not an inexorable command, and courts must carefully consider statutory context before applying it.  *In re Bourgeois*, 902 F.3d 446, 447-48 (5th Cir. 2018). As previously explained, Section 208's categorical exclusion of employers and unions merely imposes a federal *floor* for voter-assistance regulations; it does not set a *ceiling* for States.  Principal Br. 47-49.

*Third*, Appellees argue that Intervenor-Appellants' statutory construction drains the phrase "of a voter's choice" of meaning.  DST Br. 39. Not so.  That phrase does the lion's share of Section 208's work in guaranteeing voters the right to choose an assistor rather than being compelled to accept a State-approved assistor.  Principal Br. 20-21; S. Rep.

97-417, at 62 & n.207.  Intervenor-Appellants' interpretation thus gives the phrase "of a voter's choice" a clear and important meaning—one that is far more plausible than Appellees' sweeping alternative.

2.  Appellees next attempt to recast the legislative record, but they regrettably resort to revisionist history.  DST Br. 41-42.  For example, Appellees are unsatisfied with Congress's finding that "having assistance provided by election officials discriminates against those voters who need such aid," which drives home that Section 208 bans only requirements to use State-approved individuals for assistance.  S. Rep. 97-417, at 62 n.207.  Appellees therefore attempt to sneak their own finding into the record, saying that "'having assistance provided by election officials'—**or anyone other than chosen assistors**—'discriminates against those voters who need such aid.'"  DST Br. 41 (quoting S. Rep. 97-417, at 62 n.207) (emphasis added).

Appellees also cite inapposite congressional findings of *racial* discrimination concerning a prosecution of a man who engaged in unauthorized voter registration and the harassment of another who aided voters some unspecified distance from the polling place.  *Id.* at 42 (citing H.R. Rep. No. 97-227, at 14-15 (1981)).  But these findings obviously have nothing to do with Section 208:  Instead, they come from a House report on the

extension of Section 2 and its prohibition against racial discrimination. *See id.*

Appellees also strategically omit Congress's recognition—in the Senate Report actually discussing Section 208—of "the legitimate right of any state to establish election procedures." S. Rep. 97-417, at 62-63. And they never square their assault on S.B. 1 with their acknowledgement that Congress preserved States' authority to adopt "'voter assistance procedures.'" DST Br. 43 (quoting S. Rep. 97-417, at 62-63).

3. Appellees' resort to case-law fares no better. *OCA-Greater Houston* does not "bind[]" the Court to Appellees' reading, DST Br. 2; *see id.* at 12, 36; LUPE Br. 19, because it had nothing to do with the meaning of "a person of the voter's choice," *see* 867 F.3d at 614; DST Br. 12, 36. Instead, it addressed Section 208's definition of "vote" and the scope of assistance voters may receive. *OCA-Greater Hous.*, 867 F.3d at 614. In other words, it did not consider whether Section 208 preempts neutral, generally applicable voter-assistance regulations, and any language Appellees cite is dicta. *Id.* at 608-09, 614.

Other than *OCA-Greater Houston*, Appellees cite *zero* appellate cases and instead invoke a smattering of district court opinions. *See* DST Br. 13, 37, 39-40. Those opinions are of no moment. One *upheld* a provision

requiring poll workers to collect assistor names and addresses. *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1088 (W.D. Ark. 2022). One unpublished decision invalidated a prohibition on paying assistors without providing any reasoning. *See Ala. State Conf. of NAACP v. Marshall*, No. 2:24-cv-00420, 2024 WL 4448841, at *5 (N.D. Ala. Oct. 4, 2024). And to the extent the remainder invalidated state laws, those laws prohibited assistance from classes of individuals rather than merely regulating assistance. *See id.*; *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1032-33 (W.D. Wis. 2022); *League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 704 (N.D. Ohio 2024); *Ark. United*, 626 F. Supp. 3d at 1085.

4. Finally, Appellees fail to evade the constitutional problems that their proposed construction creates. *See* DST Br. 14-17; LUPE Br. 33 n.4. They first seek to dodge, asserting that Intervenor-Appellants have forfeited any constitutional avoidance argument. DST Br. 15. But this is at most a new argument in support of the sensible interpretation of Section 208 Intervenor-Appellants advanced below, and may therefore be raised now. *See Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992). And prudence favors reviewing it because, if the Court ignores this issue and adopts Appellees' sweeping interpretation, it will need to confront the constitutional problem in the next case.

When actually addressing the constitutional question, Appellees miss the point. They suggest that Congress enacted Section 208 under the Fifteenth Amendment, DST Br. 15, but the Fifteenth Amendment prohibits denial or abridgement of the right to vote "on account of race, color, or previous condition of servitude," U.S. Const., amend. XV § 1. Congress therefore could not have used its Fifteenth Amendment enforcement authority to enact Section 208's protection of voters with "blindness, disability, or inability to read or write." 52 U.S.C. § 10508.

Congress instead enacted Section 208 under the Fourteenth Amendment, as Appellees appear to concede eventually. DST Br. 17. Importantly, laws enacted under Congress's Fourteenth Amendment enforcement authority must be "congruen[t] and proportional[]" to legislative findings of unconstitutional behavior. *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997); *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001). The Fourteenth Amendment, in turn, does not require States "to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Garrett*, 531 U.S. at 367. Accordingly, short of "a pattern of irrational state discrimination" against voters with disabilities in the congressional record, *id.* at 368, Congress

cannot enact a wholesale preemption of voter-assistance laws under the congruence-and-proportionality test, *see Boerne*, 521 U.S. at 520.

Section 208 may be congruent and proportional—if at all—only to the extent it prohibits requiring voters to use a State-approved individual for assistance. Principal Br. 43-44. Indeed, the *only* problem that Congress considered in enacting Section 208 was that requirements of that kind chilled voters with disabilities, blindness, or illiteracy in exercising their voting rights. *See* S. Rep. 97-417, at 62. Even then, however, Congress did *not* assert that those requirements violate the Constitution. *Id.* at 62-63. Indeed, any such assertion would be dubious at best, since the Constitution forbids only arbitrary or irrational treatment of individuals with disabilities. *See, e.g.*, *Tennessee v. Lane*, 541 U.S. 509, 522 (2004); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 446 (1985). In any event, Congress assembled no meaningful evidence of unconstitutional discrimination—let alone of "a pattern of irrational state discrimination," *Garrett*, 531 U.S. at 368—against voters with disabilities when it passed Section 208, *see* Principal Br. 20-21; *cf Tennessee*, 541 U.S. at 524-28 (upholding provisions of Americans with Disabilities Act because of the "sheer volume of evidence" in the congressional record describing "the nature and extent of

unconstitutional discrimination against persons with disabilities") (DST Br. 17).

The Court need not resolve whether Section 208 is a congruent and proportional exercise of Congress's Fourteenth Amendment authority. For present purposes, it suffices for the Court to *avoid* that question by construing Section 208—consistent with its plain text and history—to preempt only mandates to use State-approved individuals as assistors. *See* Principal Br. 43-44. That construction requires upholding the challenged S.B. 1 provisions and reversing. *See id.*

Appellees dispute the applicability of *Boerne*'s congruence-and-proportionality test, insisting that Section 208 need only be "'rational.'" DST Br. 15 (quoting *Shelby County v. Holder*, 570 U.S. 529, 550 (2013)). But the Supreme Court specifically *rejected* that standard in *Boerne*. 521 U.S. at 527-28, 530-33. Nor, contrary to Appellees' suggestion, did *Shelby County* displace *Boerne*'s test. DST Br. 15. There, the Court struck down the Voting Rights Act's preclearance coverage formula, and it reaffirmed that "Congress must ensure that the legislation it passes to remedy [any constitutional] problem [under the Fourteenth and Fifteenth Amendments] speaks to current conditions." *Shelby County*, 570 U.S. at 557. So not only must Congress assemble a record of constitutional violations to justify

enforcement statutes, *see Boerne*, 521 U.S. at 527-28, 530-33, it must *maintain* a current record justifying its law, *see Shelby County*, 570 U.S. at 557. *Shelby County*, if anything, *tightened* the standard for upholding remedial laws—and, thus, underscores that the Court should reject Appellees' overbroad reading of Section 208.

Unable to point to past or current congressional findings about unconstitutional treatment of voters with disabilities, Appellees offer an irrelevant discussion of Fifteenth Amendment cases and Jim Crow anti-voting devices like literacy tests used "to discriminate against Black and language-minority voters." DST Br. 15. But Congress banned literacy tests *over a decade* before Section 208's enactment, *see Oregon v. Mitchell*, 400 U.S. 112, 131 (1970), so, unsurprisingly, Appellees cite precisely nothing in the congressional record linking Section 208 to that ban, *see* DST Br. 15-16.

Finally, none of the nine cases in Appellees' lengthy string cite, *see id.* at 16, suggests that their maximalist construction of Section 208 is constitutional. Seven involved racial discrimination, not disability or illiteracy discrimination. *See, e.g.*, *Gilmore v. Greene Cnty. Democratic Party Exec. Comm.*, 435 F.2d 487 (5th Cir. 1970); *Coal. for Educ. in Dist. One v. Bd. of Elecs.*, 370 F. Supp. 42 (S.D.N.Y. 1974); *Harris v. Siegelman*, 695 F. Supp. 517 (M.D. Ala. 1988); *United States v. Charleston County*, 316

F. Supp. 2d 268 (D.S.C. 2003); *United States v. Long County*, No. CV 206-40, 2006 WL 8458526 (S.D. Ga. Feb. 10, 2006); *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016).  Two involved the Voting Rights Act's special protections for U.S. citizens from Puerto Rico.  *See P.R. Org. for Pol. Action v. Kusper*, 490 F.2d 575 (7th Cir. 1973); *United States v. Berks County*, 277 F. Supp. 2d 570 (E.D. Pa. 2003).  The final case involved the Voting Right Act's protections for language minorities.  *See Nick v. Bethel*, No. 3:07-cv-98, 2008 WL 11456134 (D. Alaska July 30, 2008).

These cases thus offer no support for extending Section 208 to cover and invalidate the challenged S.B. 1 provisions.  The Court should reverse.

## B. The Challenged Provisions Do Not Violate Section 208.

Even if Section 208 did apply to laws other than those requiring use of State-approved individuals as assistors, the challenged S.B. 1 provisions would comply with it.  Principal Br. 53-59.  Indeed, those provisions are neutral, "generally applicable" regulations that spell out Texas's "voter assistance procedures."  DST Br. 43; *see also* Principal Br. 53-59.  Appellees have *conceded* that such laws are consistent with Section 208.  DST Br. 43; LUPE Br. 35.  Thus, Appellees' challenges to the Oath, Disclosure, and Offense Provisions fail.

1. *The Oath Provision*.    Appellees take issue with three of the Oath Provision's revisions to the assistor oath, but they do not identify any Section 208 violation.

*First*, Appellees object to the Oath Provision's disclosure that assistors take the oath under "penalty of perjury," Tex. Elec. Code § 64.034, claiming it makes their members "wary about providing assistance," DST Br. 51-52. But assistors have *always* sworn the oath subject to the penalty of perjury; the Oath Provision simply notifies them of that fact.    Principal Br. 54-55. Section 208 did not strip States of authority to inform citizens of preexisting, unchallenged legal obligations.    *See id.*

Nor is the fact that the oath does not "include any scienter requirement," DST Br. 52, of any consequence.    The oath does not spell out *any* of the elements of perjury—and nothing in Section 208 requires that Texas do so. In any event, Appellees acknowledge that perjury requires a "knowing[]" or "intentional[]" false statement, and can certainly inform their members of that fact. *Id.*

*Second*, Appellees take aim at the Oath Provision's insertion of the language that "the voter . . . represent[] to [the assistor] they are eligible to receive assistance."    Tex. Elec. Code § 64.034; DST Br. 46-49; LUPE Br. 26. Appellees express concern that this language provides no "definition of what

'eligible' means." DST Br. 46. But, of course, Section 208 supplies that definition. 52 U.S.C. § 10508. Appellees also suggest that this language requires assistors to "delve[] into sensitive topics and personal information" to confirm the voter's eligibility. LUPE Br. 26. Not so: All the Oath Provision requires is that the voter "represent[]" his eligibility, Tex. Elec. Code § 64.034, which he necessarily does by requesting assistance, Principal Br. 55. And Appellees' assertion that assistors "cannot reasonably rely on the voter's representation of their own eligibility," DST Br. 47 (cleaned up), is wrong because, as Appellees elsewhere acknowledge, the Oath Provision criminalizes only "knowing" violations, *id.* at 48. The voter's representation of eligibility is *all* the Oath Provision requires, *and* it protects the assistor against liability.

*Third*, the Oath Provision's language that the assistor did not "pressure or coerce the voter into choosing [the assistor] to provide assistance," Tex. Elec. Code § 64.034, implements Section 208's requirement that the assistor be "of *the voter's* choice," 52 U.S.C. § 10508 (emphasis added); Principal Br. 56. Appellees nonetheless object that the Oath Provision does not define "pressure" or "coerce" and leaves those terms "vague enough." DST Br. 50 (cleaned up); *see* LUPE Br. 28. But there is nothing vague about them: Both terms have ordinary meanings and are commonly used in law. *See, e.g.*, 18

U.S.C. § 610 (making it unlawful to "coerce, or attempt to . . . coerce[] any employee of the Federal Government . . . to engage in, or not to engage in, any political activity").   In fact, LUPE Appellees themselves admit the meaning of "coercion" as used elsewhere in the Texas Election Code is sufficiently clear to obviate any need for the Disclosure Provisions (although they are wrong about the need for the Disclosure Provisions).  LUPE Br. 30 ("coercion was illegal before S.B. 1").

Moreover, *League of Women Voters v. Florida Secretary of State*, 66 F.4th 905 (11th Cir. 2023) (DST Br. 50), undercuts Appellees' position.  That decision upheld a prohibition on "engaging in any activity with the intent to influence . . . a voter."  *Id.* at 946 (cleaned up).  The Oath Provision is a similar law, merely requiring the assistor to attest to something completely within the attestor's control: that *he* did not pressure or coerce the voter.  Tex. Elec. Code § 64.034.

2.  *The Disclosure Provisions.*  Disclosure requirements are part and parcel of government oversight of elections.  *See* 52 U.S.C. § 21083(b) (registering to vote by mail); Tex. Elec. Code § 13.002 (registering to vote).  S.B. 1's Disclosure Provisions merely require assistors to disclose their identity, address, relationship to the voter, and whether they received compensation for providing assistance.   Tex. Elec. Code §§ 64.0322,

86.010(e)(2)-(3), 86.013(b)(2)-(3).  They therefore help Texas monitor voter assistance for fraud and abuse, enforce Section 208's ban on agents of the voter's employer or union providing assistance, and enforce the Offense Provisions' prohibitions on compensated voter assistance and vote harvesting.  Principal Br. 56-57.

Appellees note that "coercion was illegal before S.B. 1."  LUPE Br. 30.  But that is a reason *for* the Disclosure Provisions, not *against* them, because the Disclosure Provisions help election officials monitor for coercion.  Appellees also point out that "the pre-S.B. 1 oath already screened for the categories proscribed by Section 208," *id.*, but additional disclosures of the assistor's identity and relationship to the voter help monitor for other violations or abuses.  Moreover, disclosure of whether the assistor received compensation helps enforce the Offense Provisions and protect voters from paid electioneering, which even Appellees acknowledge the State may do.  *See id.* at 35.  Thus, contrary to Appellees' suggestion, there is ample "evidence of the[] need to add the challenged disclosures to the existing oath."  *Id.* at 30.

Appellees next contend that disclosure requirements improperly "chill the activity about which disclosures are required."  DST Br. 53.  But the First Amendment and loss-of-funding cases they cite, *see id.*, are inapposite for

the reasons already explained, *see supra* I.A.1. Furthermore, disclosure requirements may be constitutional even in the First Amendment speech and association context, which implicates robust constitutional protections absent from the Section 208 and voter-assistance context. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 66-69 (1976) (upholding campaign-finance disclosures). Thus, at bottom, Appellees' allegations that the Disclosure Provisions "deter" voter assistance, DST Br. 53, do not establish a Section 208 violation, Principal Br. 56-57.

3. *The Offense Provisions*. The Offense Provisions sensibly advance Texas's interests in preventing fraud and undue influence in voting and do not violate Section 208. Principal Br. 57-59.

In fact, on Appellees' apparent distinction between generally applicable assistance regulations and generally applicable non-assistance regulations, *see supra* II, Section 7.04 does not even implicate Section 208. Section 7.04 is not limited to voter assistance or assistors but, instead, applies to *all* individuals in Texas. Tex. Elec. Code § 276.015. Indeed, Section 7.04 does not regulate voter assistance *at all* because it applies only to "activity that is . . . designed to deliver votes for or against a specific candidate or measure." *Id.* § 276.015(2)(e)(5). It is instead an electioneering

29

ban for mail ballots.  *Cf.* LUPE Br. 35 (Section 208 does not preempt electioneering bans).

As for Section 6.06, Appellees seemingly suggest that voters with disabilities will be unable to obtain assistance if compensated strangers cannot venture out and offer assistance.  LUPE Br. 22-24.  However, Appellees overstate Section 6.06's reach in two important ways.  *First*, the State has confirmed that S.B. 1 does not "prevent individuals from being reimbursed for their expenses . . . or individuals with paid jobs, such as canvassing, from assisting voters in due course."  State Br. 44.  That is consistent with Section 6.06's text, which prohibits only compensating someone specifically "*for* assisting voters."  Tex. Elec. Code § 86.0105 (emphasis added).  Section 6.06 thus does not apply to much of what Appellees say they wish to do.

*Second*, Section 6.06 does not prohibit individuals previously known to the voter from providing assistance.  *Id.* § 86.0105(f); State Br. 44. Common sense suggests that, the vast majority of the time, a voter needing assistance will seek help from a caregiver, family member, or friend—not a random stranger soliciting them outside the polling place.  And indeed, *all* of Appellees' specific record examples—where individuals claimed they were unable to obtain assistance—concern voters who previously used, and

wanted to use again, people they already knew. *See* DST Br. 50-51 (Jennifer Miller, who assists daughter); *id.* at 51, 57 (Jodi Nunez Landry, discussing her "primary caregiver"); *id.* at 51 (Toby Cole, discussing "caregiver"); *id.* at 57-58 (Laura Halvorson, discussing "personal attendant"). Section 6.06 permitted *all* those individuals to use their preferred assistors. Appellees' own evidence thus *reaffirms* that Section 6.06 will not meaningfully or unreasonably limit the availability of assistance. And to the extent Appellees disagree with the Texas Legislature's policy decision to prohibit paid strangers from seeking out vulnerable voters to offer assistance, the Court must defer to the Legislature—not declare its policy choices violative of federal law. *Vote.Org v. Callanen*, 89 F.4th 459, 481 (5th Cir. 2023).

## CONCLUSION

This Court should reverse with instructions to dismiss.

April 17, 2025                    Respectfully submitted,

                                            *s/John M. Gore*

                                            John M. Gore
                                              *Counsel of Record*
                                            E. Stewart Crosland
                                            Louis J. Capozzi, III
                                            Benjamin P. Daus
                                            JONES DAY
                                            51 Louisiana Ave., N.W.
                                            Washington, DC  20001
                                            (202) 879-3939
                                            jmgore@jonesday.com
                                            scrosland@jonesday.com
                                            lcapozzi@jonesday.com
                                            bdaus@jonesday.com

                     *Counsel for Intervenor-Defendant-Appellants*

**CERTIFICATES OF COMPLIANCE AND SERVICE**

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(5)-(a)(6), (a)(7)(B), (c)(1), and Fifth Circuit Rule 32.1-32.2. Excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the brief contains 6,491 words and has been prepared using Microsoft Word in Times New Roman 14-point font.

I certify that on April 17, 2025, I caused a copy of the foregoing to be served on all counsel of record via CM/ECF.

April 17, 2025

*s/John M. Gore*
John Gore
*Counsel for Intervenor-Appellants*

33